IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS<br>2588 Garden Street<br>Bellmore, NY 11710,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES CAPITOL POLICE<br>119 D Street, N.E.<br>Washington, DC 20510,<br><br>    Defendant.<br><br>Serve:<br><br>UNITED STATES ATTORNEY'S OFFICE<br>FOR THE DISTRICT OF COLUMBIA<br>Attn: Civil Process Clerk<br>United States Attorney's Office<br>555 4th Street, NW<br>Washington, DC 20530<br>-*Via Certified Mail*<br><br>UNITED STATES ATTORNEY GENERAL<br>10th & Pennsylvania Avenue, NW<br>Washington, DC 20530<br>-*Via Certified Mail*<br><br>THE UNITED STATES CAPITOL POLICE<br>119 D Street, N.E.<br>Washington, DC 20510<br>-*Via Certified Mail* | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR EQUITABLE AND
<u>MONETARY RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Chrisavgi Sourgoutsis (Sourgoutsis) brings this suit against Defendant The

United States Capitol Police (USCP) for violating Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e-2000e-17 (2006), as incorporated with respect to agencies of Congress by the Congressional Accountability Act (CAA), 2 U.S.C. §§ 1301-1438 (2006), when it discriminated against and terminated Sourgoutsis.

## PARTIES

1.  Plaintiff Chrisavgi Sourgoutsis is domiciled in Nassau County, New York and was employed by USCP as an Officer. She is an "employee" as defined by 42 U.S.C. § 2000e (Title VII) and a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(c).

2.  Defendant USCP is a federal law enforcement agency with headquarters located at 119 D Street, NE, Washington, D.C. 20510. USCP is an "employer" as defined by 42 U.S.C. § 2000e (Title VII) and an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D), and is a proper defendant in this action under 2 U.S.C. 1408(b).

## JURISDICTION AND VENUE

3.  This Court has personal jurisdiction over USCP because USCP conducts regular business in the District of Columbia and because it maintains regular and systematic contacts with the District of Columbia.

4.  This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of United States, specifically Title VII and the CAA.

5.  Venue in this district is proper under 28 U.S.C. § 1391(b) because it is the judicial district where the unlawful employment practices are alleged to have been committed and because USCP may be found in this district.

6.  Sourgoutsis has exhausted the administrative remedies available to her.

## FACTUAL ALLEGATIONS

7. Sourgoutsis is a 31-year-old female residing in Bellmore, New York.

8. Prior to joining the USCP, Sourgoutsis earned two Bachelor degrees from Boston University and an M.B.A. from Hult International Business School.

9. Sourgoutsis was appointed to the United States Capitol Police (USCP) on May 11, 2014 and began training as a U.S. Capitol Recruit Officer at the Federal Law Enforcement Training Center (FLETC).

10. Sourgoutsis began experiencing gender discrimination during her training period with the USCP.

11. Sourgoutsis was continually harassed by two male supervisors at the training academy in an attempt to get her to quit during training.

12. Sourgoutsis was singled out for unfair treatment, even within the group of eight women trainees, because of her gender, demeanor, confidence, and high education level.

13. Sourgoutsis' male supervisors constantly and disproportionately focused on what she did and wore.

14. During the first month of training, Sourgoutsis' male supervisors issued three disciplinary actions for minor incidents that never led to discipline for male trainees.

15. The first disciplinary incident occurred when Sourgoutsis wore the wrong color socks (purple instead of black) one day with her uniform.

16. The second disciplinary incident occurred when Sourgoutsis said "asshole" during a private conversation and a male trainee reported her for cursing.

17. The third disciplinary incident occurred when Sourgoutsis used her mobile telephone indoors.

18. Male trainees commonly committed the latter two violations and were not disciplined.

19. The day after Sourgoutsis was disciplined for "cursing," a male trainee was simply told to be "reasonable" in his choice of language after making a profane statement.

20. During a role playing exercise, Sourgoutsis and another trainee were given a script involving a female visitor going through a metal detector.

21. The woman playing the role of the visitor was white, and she spoke in a rambling and disjointed manner about a wide range of topics, from the weather to the fact that the president is African-American.

22. Sourgoutsis told her training colleague, "I think she's MO ["mental observation"]. I think she's crazy."

23. This was an appropriate and professional response to the training scenario – identifying and working with visitors with mental illness.

24. Sourgoutsis was issued a CP-550 disciplinary form by an adjunct instructor who claimed she had been "prejudiced" during the role playing exercise.

25. During training, Sourgoutsis experienced differential treatment, was held to different standards than male trainees, constantly belittled and berated, and disciplined for minor violations that male trainees committed without consequences.

26. Nevertheless, Sourgoutsis received high test scores and performed well as a shooter and in other skill areas.

27. In November 2014, Sourgoutsis successfully completed training and graduated from the training academy.

28. Following successful completion of training, Sourgoutsis became a probationary USCP Officer whose probationary period was scheduled to end on November 15, 2015.

29. As a probationary officer, USCP assigned Sourgoutsis to work under a series of Field Training Officers for one month.

30. Throughout 2015, Sourgoutsis worked extremely hard and effectively to learn all aspects of her position as a USCP officer.

31. Sourgoutsis regularly worked double shifts.

32. Sourgoutsis was punctual, reliable, demonstrated excellent work ethic and always completed all assigned duties.

33. During her probationary period, Sourgoutsis was issued two CP-534 disciplinary forms for two minor incidents which occurred.

34. The first disciplinary incident occurred on May 10, 2015 when Sourgoutsis removed her uniform shirt to work in a white t-shirt and ballistic vest alongside a veteran officer who did the same.

35. Sourgoutsis was working a second consecutive eight-hour shift (from 11 p.m. to 7 a.m.) at the Capitol Division Dome Trailer in a construction area and was assigned to screen construction workers coming through the trailer.

36. Sourgoutsis' colleague, Nancy Thomas, a veteran officer with more than 10 years of service with USCP, removed her outer shirt and worked in a T-shirt and vest.

37. Sourgoutsis adopted the same attire because she was following the veteran colleague's example, and because she had seen multiple male officers in the Dome Trailer without their outer shirts on this particularly unique post.

38. At approximately 3:00 a.m., Sergeant Danny McElroy appeared and told both Sourgoutsis and Thomas to put their outer shirts back on.

39. Sourgoutsis immediately complied; said, "Yes, sir" repeatedly and offered no resistance.

40. Subsequently, on May 19, 2015, Sgt. McElroy issued a CP-534 that said, in part, the following:

> On Sunday May 10, 2015, at approximately 0530 hours, this reporting official observed Officer Sourgoutis not wearing the appropriate short-sleeve navy blue shirt. Officer Sourgoutis was observed wearing only her issued protective body armor over a white tee shirt. Officer Sourgoutis was assigned as a screening officer at the Capitol Division Dome Trailer. . . .
>
> Officer Sourgoutis was not in the appropriate uniform as specified in the above Directive [Operational Directive UNF 1.1 Uniforms, Equipment, and Personal Grooming].

41. The second disciplinary incident occurred the following day, on May 11, 2015, when Sourgoutsis was issued a CP-534 for briefly sitting down on a retaining wall while monitoring maintenance work.

42. On May 11, 2015, Sourgoutsis worked a double shift, from 8 a.m. to 11 p.m.

43. Sourgoutsis' supervisor, Sergeant Tyrone Vias, assigned her to watch a door (outside the North Mezzanine of the Capitol Visitors Center (CVC)) that was being sprayed with lacquer by two Architect of the Capitol (AOC) employees.

44. Sgt. Vias instructed Sourgoutsis to "Make sure no one walks through the door."

45. During this assignment, Sourgoutsis sat down on a retaining wall for no more than five minutes due to the summer heat, the effects of the smell of paint/lacquer, and a lack of water.

46. A male officer took a picture of Sourgoutsis sitting on the retaining wall and sent the picture to the Capitol Detail.

47. USCP officers routinely sit while on duty.

48. If a supervisor sees an officer sitting, the supervisor will tell the officer to stand up.

49. USCP officers are rarely, if ever, formally disciplined for sitting while on duty.

50. Subsequently, Sergeant Joseph Moroziewicki issued a CP-534 that said, in part, the following:

> On Monday May 11, 2015, at approximately 1650 hours, this reporting official was provided with photo documentation of Officer Sourgoutsis sitting on a garden retaining wall of the North Mezzanine area of the CVC having a conversation with a civilian [actually, an employee of the Architect of the Capitol who was working in the area]. Officer Sourgoutsis was given an assignment to open an egress door in that area to provide AOC [Architect of the Capitol] personnel an opportunity to complete their work. Office Sourgoutsis was seen with her attention diverted away from the open door.
>
> Officer Sourgoutsis was not in a tactical position to visually inspect individuals approaching the open door, to determine authorization by ensuring proper credentials, or to observe for weapons, explosive devices, and other suspicious or prohibited weapons.
>
> . . . Officer Sourgoutsis failed to devote her full time and attention to her duties.

51. While Sourgoutsis sat briefly on the retaining wall, her attention was not diverted from her duties; she devoted her full time and attention to her duties.

52. No one walked through the door at any point while Sourgoutsis was on duty.

53. On June 2, 2015, Sgt. Vias told Sourgoutsis to report to a disciplinary meeting.

54. Sourgoutsis requested and was denied an opportunity to call her Union Representative, Gus Papathanasiou.

55. Sourgoutsis attempted to call Papathanasiou but Sgt. Vias said, "Chica, come on. We gotta go."

56. Sgt. Vias announced that Officer Lacey, who Sourgoutsis had never spoken to, was her Union Representative at the meeting.

57. The June 2, 2015 meeting was attended by Sourgoutsis, Officer Lacey, and Captain Bollinger.

58. During the meeting, Capt. Bollinger degraded and belittled Sourgoutsis.

59. Capt. Bollinger said, "You have a history of not being fully prepared," specifically discussing the one time at the training academy when Sourgoutsis wore purple socks.

60. Capt. Bollinger also said, "Your work performance fails to meet anyone's expectations here."

61. Sourgoutsis responded, "Sir, none of my Sergeants has ever told me that."

62. Capt. Bollinger's comments contradicted comments Sourgoutsis regularly received from other supervisors, including Sergeant Gupton, who said Sourgoutsis was his most improved recruit; Sergeant Dick and Lieutenant Vann, who told Sourgoutsis that she had an excellent work ethic; and Sergeant Butler, who told Sourgoutsis that she was a hard worker.

63. Capt. Bollinger presented Sourgoutsis with the two CP-534 forms referenced above.

64. This was the first time Sourgoutsis learned of the two CP-534s.

65. Sourgoutsis received a warning for the May 10, 2015 incident and was ordered to forfeit sixteen (16) hours of pay for the May 11, 2015 incident.

66. Sourgoutsis appealed the pay forfeiture and it was reduced to eight (8) hours when she met with Assistant Chief Verderosa.

67. During the meeting, Assistant Chief Verderosa encouraged Sourgoutsis to move forward with her USCP career and Sourgoutsis considered the incidents of May 10 and May 11, 2015 addressed and closed.

68. On August 15, 2015, Sourgoutsis was summoned to the Investigations Division and interviewed as a witness regarding allegations of sexual harassment made by other female officers against her supervisor, Sgt. Vias.

69. Ten female officers supervised by Sgt. Vias, including Sourgoutsis, were interviewed and asked to provide statements regarding complaints about Sgt. Vias' behavior.

70. During the interview, Sourgoutsis reported to the investigator, Sergeant Mark Shutters, the following:

71. Sgt. Vias regularly called Sourgoutsis and other women "Chica" and "Señorita."

72. Sgt. Vias made obscene pelvic gestures more than once in front of Sourgoutsis and other officers.

73. Sgt. Vias "checked out" women's bodies and made "weird and inappropriate" comments to and about women.

74. Sgt. Vias complimented Sourgoutsis' Facebook profile picture and said that she should wear make-up more often.

75. Sgt. Vias told Sourgoutsis that she was "pretty" in a manner that made her feel disgusted that he would act that way towards a married woman.

76. When Sgt. Shutters asked Sourgoutsis why she had not complained about Sgt. Vias' behavior, Sourgoutsis responded, "This is not a woman-oriented department."

77. Sourgoutsis later learned that Sgt. McElroy, who had written the CP-534 report regarding the May 10, 2015 uniform incident, had made offensive and sexual comments about her.

78. In October 2015, Officer Clarence Laster, a colleague and training classmate, informed Sourgoutsis that Sgt. McElroy asked, in reference to Sourgoutsis, "Come on, Laster, be honest – have you ever played with those big 'ole white titties?"

79. On October 29, 2015, approximately two weeks prior to the end of her probationary period, Sourgoutsis was summoned to a meeting with Sgt. Shutters, Deputy Chief Thomas and Inspector Waldow of Capitol Division.

80. During this meeting, Deputy Chief Thomas informed Sourgoutsis that USCP Human Resources was recommending her termination.

81. The CP-534s from May 10 and 11, 2015 were not mentioned during the meeting.

82. Sourgoutsis was not told why she was being terminated at any point.

83. Sgt. Shutters said he was present "to facilitate the collecting of USCP property."

84. Sourgoutsis was asked to turn in her gun, badge, and identification card; and she complied.

85. Sourgoutsis was placed on administrative leave without an opportunity to speak to her Union Representative, Gus Papathanasiou, or anyone else.

86. On November 3, 2015, USCP Union Attorney Megan Mechak appealed Sourgoutsis' termination by letter to the Chief of Police, Kim C. Dine.

87. The appeal stated that USCP, in terminating Sourgoutsis, violated a number of its own policies including the following:

88. USCP failed to provide Sourgoutsis with a 30 day evaluation period following the recommended termination.

89. USCP failed to create a career development plan for Sourgoutsis.

90. USCP failed to provide Sourgoutsis an opportunity to review her personnel file despite multiple requests.

91. USCP failed to provide Sourgoutsis with performance evaluations.

92. USCP failed to provide Sourgoutsis with counseling or guidance.

93. Directive 2052.004, USCP's policy relating to probationary periods, contains specific requirements for the supervision and evaluation of new officers such as Sourgoutsis.

94. Pursuant to Directive 2052.004, USCP must "[e]stablish the employee's PECS performance plan and communicate EPP evaluations and how they relate to the employee's duties and responsibilities, both in writing and orally, within 30 days of appointment."

95. USCP failed to comply with this policy as Sourgoutsis' performance was not evaluated regularly, and no USCP official (except Assistant Chief Verderosa) ever discussed any purported deficiencies in her work performance until the Office of Human Resources recommended her termination.

96. Sourgoutsis never received remediation counseling, verbally or in writing, for the minor incidents of May 10 and 11, 2015.

97. Chief Dine refused to meet with Sourgoutsis as requested in her appeal.

98. In a letter dated November 13, 2015, Chief Dine summarily denied the appeal and recommended termination to the Capitol Police Board.

99. According to Chief Dine's letter, the only basis for the recommended termination is the two CP-534 violations Sourgoutsis received during her probationary period.

100. Sourgoutsis is aware of male Probationary Officers who committed far more egregious violations, on and off duty, who were not terminated.

101. At least two of those male Probationary Officers received extensions of their probationary periods.

102. Another male Probationary Officer received two CP-534s during the probationary period and was not terminated.

103. Sourgoutsis' termination was recommended approximately two months after she made statements, protected under Title VII, regarding Sgt. Vias's offensive behavior towards women at the USCP.

**COUNT I**
**Discrimination Based on Gender**
**Congressional Accountability Act of 1995**
**2 U.S.C. § 1311**

104. Sourgoutsis hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

105. Sourgoutsis is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

106. Sourgoutsis is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(c).

107. USCP is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

108. USCP is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D).

109. USCP violated Title VII, as incorporated with respect to USCP by the CAA, by discriminating against Sourgoutsis, based on her sex, when, in 2014, it issued a CP-550 disciplinary form for the minor infractions that occurred during her training period.

110. USCP violated Title VII, as incorporated with respect to USCP by the CAA, by discriminating against Sourgoutsis, based on her sex, when, on June 2, 2015, it issued two CP-534 disciplinary forms for the minor infractions that occurred on May 10 and May 11, 2015 during her probationary period.

111. USCP violated Title VII, as incorporated with respect to USCP by the CAA, by discriminating against Sourgoutsis, based on her sex, when, on October 29, 2015, it recommended her termination and, on November 13, 2015, when it upheld the termination.

112. USCP's stated reasons for issuing the CP-550, CP-534s and terminating Sourgoutsis are pretext for its unlawful gender discrimination.

113. Sourgoutsis has exhausted her administrative remedies.

114. Sourgoutsis sustained substantial monetary and non-monetary damages as the result of USCP's conduct.

## COUNT II
### Retaliation
### Congressional Accountability Act of 1995
### 2 U.S.C. § 1311

115. Sourgoutsis hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

116. Sourgoutsis is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

117. Sourgoutsis is a "covered employee" pursuant to the CAA.

118. USCP is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

119. USCP is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D).

120. Sourgoutsis engaged in protected activity under Title VII when she cooperated in the investigation of her supervisor, Sgt. Vias.

121.   USCP violated Title VII, as incorporated with respect to USCP by the Congressional Accountability Act (CAA), by retaliating against Sourgoutsis, based in part on her prior protected activity of reporting sexual harassment by her supervisor, when it terminated her.

122.   USCP's stated reasons for terminating Sourgoutsis are pretext for its unlawful retaliation.

123.   Sourgoutsis has exhausted her administrative remedies.

124.   Sourgoutsis sustained substantial monetary and non-monetary damages as the result of USCP's conduct.

## PRAYER FOR RELIEF

Based on the foregoing, Sourgoutsis respectfully requests that she be awarded the following relief against USCP:

a.   Reinstatement or, in lieu thereof, full front pay, stock options and benefits;

b.   Economic damages for lost compensation and damages to Sourgoutsis' career, reputation, and earning capacity in an amount to be determined at trial but in excess of $10,000;

c.   Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d.   Reasonable costs and experts' and attorneys' fees; and

e.   Any other such relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

    Respectfully submitted,

    */s/ John T. Harrington*
    R. Scott Oswald
    DC Bar # 458859
    John T. Harrington
    DC Bar # 987659
    The Employment Law Group, P.C.
    888 17th Street, NW, 9th Floor
    Washington, DC  20006
    (202) 261-2830
    (202) 261-2835 (facsimile)
    soswald@employmentlawgroup.com
    tharrington@employmentlawgroup.com
    *Counsel for Plaintiff Chrisavgi Sourgoutsis*

Dated: June 13, 2016