# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CAPITOL POLICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:16-CV-01096-KBJ-RMM

### DECLARATION OF KIM DINE

I, Kim Dine, have personal knowledge of the following facts and will testify to them, if called to do so:

1.    I was the eighth Chief of Police for the United States Capitol Police ("USCP" or the "Department") from December 2012 through March 2016.  I have more than forty years of distinguished service in the field of law enforcement, including serving as the District 1 Commander of the Metropolitan Police Department, Assistant Chief of Police in charge of Professional Responsibility with the Metropolitan Police Department, and Police Chief for the City of Frederick Police Department.

2.    As the Chief of Police of the USCP, I was the head of the agency and oversaw the entire Department.  During my tenure, the Department employed approximately 2100 sworn police officers and civilian employees.

3.    My record as Chief of Police was one of recruiting, supporting, and promoting the best and the brightest sworn and civilian employees.  I emphasized the importance of diversity at all levels of the organization, including by ensuring that the Department supported and developed women and minority employees at all levels, which is supported by my proven record in this regard.

1

4.      The USCP is a law enforcement agency whose mission is to protect the Congress, its Members, employees, visitors, and facilities so that Congress can fulfill its constitutional and legislative responsibilities in a safe, secure, and open environment.  As the police agency responsible for protecting the legislative branch of government, the USCP's operations are also highly visible to the public.  Millions of tourists travel to the U.S. Capitol each year and USCP police officers are typically the first and last officials with whom they interact when they come to Capitol Hill.  Due to its high visibility, the Department is considered a role model for law enforcement across the United States and the world.  Given its unique standing as "America's Police Department," the high visibility of its operations, its role in enforcing laws, and the need for society to have ultimate trust and faith in the Department, the Department holds itself and its officers to the highest standards of professionalism, security, honesty, and integrity.

5.      I first met Plaintiff Chrisavgi Sourgoutsis when she was applying to become a police officer with the Department.  Under my tenure, the Department began having weekend assessment centers in which potential recruits who were interested in becoming police officers would have an opportunity to travel to Washington, DC, meet with Department officials, and get an overview of the Department's mission and the role of police officers within the Department. It was also an opportunity for the Department to promote itself to a wider, more diverse audience, which was an important goal for me as Chief of Police.  I attended the assessment center, along with then Assistant Chief of Police Daniel Malloy, and Chief Administrative Officer Richard Braddock.

6.      I recall meeting Plaintiff Sourgoutsis at the event.  I recall being impressed with her outgoing personality, educational background, and interest in the Department.

2

7.      I had no further contact with Plaintiff Sourgoutsis until November 2014 when she graduated from the USCP Academy. I recall Plaintiff Sourgoutsis introducing me to her parents after the graduation.

8.      On or about October 2015, I received a memorandum from Deputy Chief Chad Thomas recommending the termination of Plaintiff Sourgoutsis. I received the memorandum through the chain-of-command. Then Assistant Chief of Police Matthew Verderosa had concurred with the recommendation.

9.      I take the retention of employees very seriously. I recall that after receiving the memorandum I met with Assistant Chief Verderosa and Deputy Chief Thomas. I intensely questioned Deputy Chief Thomas for an explanation as to why he believed termination was the appropriate step. I recall that Deputy Chief Thomas was very concerned by Plaintiff Sourgoutsis' entire record and, in particular, the last incident concerning Plaintiff Sourgoutsis that led to discipline.

10.     Plaintiff Sourgoutsis received Command Discipline ("CP-534") for a violation of Directive 2053.013, Rules of Conduct, Category B - Performance of Duty, Rule B10: Neglect of Duty. The discipline arose after an incident in May 2015, in which Plaintiff Sourgoutsis was photographed sitting on a wall outside of the Capitol Visitors Center ("CVC") with her back towards an exterior access point that she was supposed to be securing and talking to an Architect of the Capitol Employee. Deputy Chief Thomas was concerned with the severity of the infraction and Plaintiff Sourgoutsis' apparent unwillingness to accept responsibility in total for the infraction. I recall (then) Assistant Chief Verderosa expressing the same concerns.

11.     Plaintiff Sourgoutsis also received a CP-534 in May 2015 for not wearing her uniform shirt on duty. My recollection is that Plaintiff Sourgoutsis was at her assigned post

3

screening individuals entering the secured areas of the U.S. Capitol, but she was not wearing a badge or any insignia identifying her as a USCP officer. It is highly unusual that a uniformed police officer would be working without a badge or basic components of her uniform. Wearing a uniform with appropriate credentials while working is a foundational requirement of performing police work.

12.      In addition, Plaintiff Sourgoutsis had received numerous performance notes during her time at the training academy for a variety of infractions. Deputy Chief Thomas conveyed that Plaintiff Sourgoutsis had received two CP-534s during her probationary period and that Plaintiff Sourgoutsis' overall record demonstrated a pattern of not following the rules and not taking responsibility and he believed the last infraction showed an escalation of that pattern.

13.      After questioning Deputy Chief Thomas I reviewed Plaintiff Sourgoutsis' file. I recall that in addition to the two Command Discipline reports she received in the field in May 2015, the file contained some positive comments about her work performance, but it also contained some troubling information relating to her time at the Academy. Plaintiff Sourgoutsis received numerous performance notes documenting a wide array of infractions and there was supporting documents from Plaintiff Sourgoutsis' classmates describing some of the issues they had to address with her.

14.      Ultimately, my decision to concur in the recommendation was based on three factors. First, although Plaintiff Sourgoutsis sometimes admitted to wrongdoing, she often made excuses for her actions and blamed others for the choices she made. For example, as to the CP-534 she received for neglect of duty, Plaintiff Sourgoutsis shifted some of the blame for her

behavior to the Sergeant who assigned her to that post. An inability or unwillingness to take full responsibility for her actions was a major concern for me.

15.     Second, the incident concerning her being in neglect of duty particularly concerned me. It appeared that Plaintiff Sourgoutsis did not fully understand the severity of the issue. She was the sole officer assigned to an unsecured, high traffic, exterior access point. She was not being attentive to her post. This situation easily could have placed Plaintiff Sourgoutsis or persons inside the CVC in harms way. Moreover, the Department is a security based law enforcement agency. Securing access points to the Capitol grounds is not a collateral duty — it is the essence of the Department's mission.

16.     Finally, Plaintiff Sourgoutsis was a probationary employee who received two CP-534s during her probationary period and had been cited for multiple infractions while at the Police Academy. The purpose of the probationary status is to determine whether the employee and the Department are a good fit in a quasi-military, security policing environment. Based on her record, it appeared that Plaintiff Sourgoutsis was not a good fit for the Department in this type of quasi-military, security policing environment which is strictly structured and accountability is paramount.

17.     Plaintiff Sourgoutsis was notified of the Department's decision to recommend her termination and given an opportunity to appeal to me, which she did. I received an appeal from the FOP/USCP Labor Committee on behalf of Plaintiff Sourgoutsis on November 3, 2015. A true and correct copy of the appeal is attached hereto as Ex. A (names of officers have been redacted to protect their identities).

18.     I specifically recall the appeal alleged that Plaintiff Sourgoutsis was treated differently than certain male probationary officers who had incurred various infractions during

5

their probationary period and were not terminated. Each of the officer's probationary period ended years before my tenure began at the USCP and, thus, I would not have personal knowledge into the circumstances relating to their retention and I would not have been the decision maker in those matters.

19.    I also recall that the appeal alleged that the Department was retaliating against Plaintiff Sourgoutsis because she was a witness in an Office of Professional Responsibility ("OPR") investigation concerning a complaint alleging that a Sergeant on CD-3 had engaged in inappropriate conduct toward female officers.  I was not aware until I read the union's appeal that Plaintiff Sourgoutsis was a witness in any investigation and, thus, her alleged involvement could not have been a consideration in my decision to approve the termination recommendation. Moreover, the Department encourages officers to report any instances of discrimination or harassment to OPR and strictly prohibits any personnel from retaliating against any person who reports such misconduct.  Thus, I would not have considered Plaintiff Sourgoutsis' alleged participation in an OPR investigation in determining whether termination was appropriate here.

20.    I responded to Plaintiff Sourgoutsis' appeal on November 13, 2015.  In my response, I informed Plaintiff Sourgoutsis that I was denying the appeal and that I would be recommending her termination to the U.S. Capitol Police Board who has final decision-making authority as to termination of USCP employees.  A true and correct copy of my appeal response is attached hereto as Ex. B.

21.    I briefed the U.S. Capitol Police Board on the recommendation and provided them with supporting documents.  The U.S. Capitol Police Board approved the termination.  A true and correct copy of the U.S. Capitol Police Board's decision approving the termination is attached as Ex. C.

22.     I do not recall receiving recommendations for the termination of any other probationary employee during my tenure.  My recollection is that recommendations for the extension of probationary periods would not come to the Chief of Police.  The Bureau Commander makes the decision as to whether to extend an employee's probationary period.

23.     The challenge for any agency head in determining whether to terminate an employee is that you want to attract and keep top-notch talent, but you must be fair, consistent, and hold your employees accountable.  As an agency head in a paramilitary organization protecting one of, if not the top threat targets of terrorists in the world, I also had to take into account the message it would send if I did not approve the Deputy Chief and Assistant Chief's termination recommendation.  We cannot have officers doing whatever they want and not hold them accountable.  Like all paramilitary organizations, good order and discipline is critical for setting the conditions for mission success.

*     *     *     *     *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24ᵗʰ day of October 2017.

_Kim C. Dine_

Kim C. Dine

# EXHIBIT A

OEC 16-6-4

LAW OFFICES

# WOODLEY & McGILLIVARY LLP

1101 VERMONT AVENUE, N.W.

SUITE 1000

WASHINGTON, D.C. 20005

TELEPHONE: (202) 833-8855

FAX: (202) 452-1090

E-MAIL: INFO@WMLABORLAW.COM

THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DOUGLAS L. STEELE
MOLLY A. ELKIN
BALDWIN ROBERTSON
DAVID RICKSECKER
MEGAN K. MECHAK
SARA L. FAULMAN
CHRISTOPHER M. FRANZONI
DIANA J. NOBILE
REID COPLOFF
MICHAEL R. WILLATS
SARA A. CONRATH
ROBIN L.S. BURROUGHS
DONNA K. McKINNON

EDWARD J. HICKEY, JR.
(1912-2000)

November 3, 2015

**VIA FACSIMILE TO (202) 228-2592
AND ELECTRONIC MAIL TO
KIM.DINE@USCP.GOV**
Kim Dine
Chief of Police
United States Capitol Police
119 D Street, NE
Washington, DC 20510

      Re:    Officer Chrisavgi Sourgoutsis Proposed Termination Appeal

Dear Chief Dine:

      Pursuant to the letter from Jacqueline Whitaker dated October 29, 2015, and received by Officer Chrisavgi Sourgoutsis on the same day, Officer Sourgoutsis hereby appeals her proposed termination from the United States Capitol Police ("Department").

      As discussed in greater detail below, Officer Sourgoutsis maintains that the letter notifying her of her proposed termination denied her the due process rights that she is afforded pursuant to the collective bargaining agreement between the Department and FOP/U.S. Capitol Police Labor Committee ("Union"). The recommendation of termination is also in violation of the Department's own policy regarding probationary periods. For these reasons, Officer Sourgoutsis respectfully requests that the termination recommendation be rescinded and she be returned to full duty immediately.

**I.    Pertinent Facts and Background**

      Officer Sourgoutsis was appointed to the Department on May 11, 2014. She successfully completed her training and graduated from the training academy in November 2014. Pursuant to Department Directive 2052.004, Officer Sourgoutsis' probationary period is scheduled to expire on November 15, 2015.

USCP000527

Chief Kim C. Dine
November 3, 2015
Page 2 of 7

On June 2, 2015, Captain Andrew Bollinger issued two (2) CP-534s to Officer
Sourgoutsis. The first, filed with a warning, alleged a violation of Directive 2053.013, Rules of
Conduct, Category B: Performance of Duty, Rule B2: Personal Appearance. On May 10, 2015,
Officer Sourgoutsis was assigned to the Captiol Dome Trailer post on C-1. At approximately
3:30 a.m., Officer Sourgoutsis (who was nearing the end of a double tour of duty) became hot
and, because she found her uniform shirt constricting, removed it. She continued to work her
post wearing her Department-issued ballistics vest and a t-shirt. Sergeant McElroy notified her
that her attire was inappropriate, and she immediately put her uniform shirt back on. Officer
Sourgoutsis accepted responsibility for her actions on May 10, 2015, and did not appeal the
discipline.

The same day, Captain Bollinger also issued a CP-534 (forfeiting sixteen (16) hours of
time/pay) to Officer Sourgoutsis contending that she failed to fulfill her duties when assigned to
the door outside the North Mezzanine of the Capitol Visitors Center ("CVC") on May 11, 2015.
That day, Officer Sourgoutsis worked additional duty on C-2. As she prepared to report for her
regularly scheduled C-3 shift, Sergeant Vias assigned her to ensure that no one entered the door,
which was being sprayed with lacquer by two Architect of the Capitol employees. As a result of
the temperature, the fact that Officer Sourgoutsis was not provided with any water, and the smell
of the paint, after standing the post for approximately two hours, she momentarily sat down.[1]
Another Department employee photographed Officer Sourgoutsis. While she was seated, she
notified Sergeant Vias, via cell phone as he instructed, that she had not been relieved.

During her meeting with Captain Bollinger, he informed her "[y]our work performance
fails to meet anyone's expectations around here," but failed to provide any examples of her
alleged deficiencies. Likewise, Captain Bollinger did not provide any guidance to Officer
Sourgoutsis about how she could improve her work performance. Captain Bollinger's comments
contradicted comments she regularly received from other supervisors, including Sergeant
Gupton, who said she was his most improved recruit, Sergeant Dick and Lieutenant Vann who
told her she had an excellent work ethic, and Sergeant Butler who informed her that she was a
hard worker. They also contracted your own assessment that Officer Sourgoutsis impressed you
from the start of her career.

Officer Sourgoutsis grieved the CP-535 forfeiting sixteen (16) hours, and Assistant Chief
Verderosa mitigated the penalty by eight hours. When Officer Sourgoutsis met with Chief
Verderosa, he encouraged her to move forward with her career in the Department and she
believed that the disciplinary matters were closed. Other than the two CP-534s detailed above,
Officer Sourgoutsis has not been disciplined while working for the Department.

Since she has been employed by the Department, Officer Sourgoutsis has been subjected
to harassing behavior by her officials. For example, when Officer Sourgoutsis was notified that

---

[1]    The Command Discipline Report indicated that the picture showed Officer
Sourgoutsis speaking to a citizen. Officer Sourgoutsis was speaking to an AOC employee.

Chief Kim C. Dine
November 3, 2015
Page 3 of 7

she needed to meet with Captain Bollinger on June 2, 2015, Sergeant ▮▮ referred to her as "Chica," and not by her name or title.[2]

Similarly, in July 2015, Officer Sourgoutsis requested a short so she could leave the area to visit family in New York. Sergeant ▮▮ called Officer Sourgoutsis on post and told her that the short was denied. During the conversation, he made inappropriate comments about her appearance, stating that he had viewed her Facebook profile picture and she was "pretty" in the picture because she was wearing makeup and her hair was down.

Officer Sourgoutsis participated in an Office of Professional Responsibility investigation into Sergeant ▮▮ by providing verbal and written statements in August 2015. Officer Sourgoutsis informed OPR that she believed Sergeant ▮▮ played "favorites," and treated her less favorably than his "favorites."

## II.    The Department Failed to Follow Proper Procedure in Monitoring Officer Sourgoutsis' Work Performance During her Probation.

The Department's policy relating to probationary periods, Directive 2052.004, contains specific requirements for the supervision and evaluation of new employees like Officer Sourgoutsis. The Department failed to comply with this policy because her work performance was not evaluated regularly, and no Department official (except for Chief Verderosa) discussed deficiencies in her work performance with her until the Office of Human Resources recommended her termination.[3]

Specifically, pursuant to Directive 2052.004, the Department must "[e]stablish the employee's PECS performance plan and communicate EPP evaluations and how they relate to the employee's duties and responsibilities, both in writing and orally, within 30 days of appointment." Directive 2052.004 at 3. The Department failed to comply with this requirement.

The Department is also required to "[c]reat[e] a career development plan for each employee." Directive 2052.004 at 3. No such plan was developed for Officer Sourgoutsis, who has obtained multiple college degrees (including two bachelor degrees from Boston University and an M.B.A. from Hult International Business School). Officer Sourgoutsis speaks three languages fluently, and has studied and lived in China. These pre-Department experiences provide her with unique skills that the Department could have developed to its own benefit.

---

[2]    Sergeant ▮▮ has also referred to Officer Sourgoutsis as "Senorita" on multiple occasions. Sergeant ▮▮ also denied Officer Sourgoutsis the opportunity to request a Union representative during the meeting with Captain Bollinger, although the Department supplied the Union representative of its choice, who was not assigned to Officer Sourgoutsis' Section for the meeting.

[3]    Officer Sourgoutsis requested an opportunity to review her personnel file multiple times in the last six months, but was denied each time.

USCP000529

Chief Kim C. Dine
November 3, 2015
Page 4 of 7

The Department must also "[p]rovid[e] opportunities to assess performance and/or
conduct." Directive 2052.004 at 3. These include "[p]rovid[ing] enough information to help the
employee understand how he/she is performing below satisfactory levels and how he/she might
improve." Directive 2052.004 at 4. Similarly, the Department must "[t]ak[e] timely action to
correct performance and/or conduct deficiencies," including "[p]rovid[ing] oral counseling
and/or written guidance to correct performance deficiencies and/or lesser instances of
misconduct during the probationary period" and "[e]nsur[ing] the employee understands that
failure to correct performance deficiencies and/or misconduct can result in termination during the
EPP." Directive 2052.004 at 4. During the eleven months since Officer Sourgoutsis completed
her training, no official has discussed her work performance with her (other than Captain
Bollinger when he disciplined her in June 2015). Likewise, the Department failed to evaluate
Officer Sourgoutsis' work performance on a quarterly basis, as required by Directive 2052.004.
Directive 2052.004 at 4.

Pursuant to Directive 2052.004, "[t]ermination should be proposed when continued
efforts regarding the probationary employee's performance and/or conduct fails to improve to the
level desired for permanent employment." Directive 2052.004 at 6.

As a result of the Department's failure, Officer Sourgoutsis was not aware of the
"documented history of unacceptable conduct and behavior" to which the Office of Human
Resources refers in its termination recommendation and cannot respond to that allegation.
Likewise, Officer Sourgoutsis has not been given an opportunity to address these alleged
deficiencies in her conduct and has not been given an opportunity to improve her work
performance to the Department's desired level.

III.    **The Termination Recommendation Issued to Officer Sourgoutsis Does Not Comply
with Department Directive 2050.004, and Violates Officer Sourgoutsis' Due Process
Rights**

Pursuant to Directive 2052.004, a probationary employee who has been proposed for
termination is entitled to written notice of the recommendation. Directive 2052.004 at 6. That
written notice *must* include "[a] summary of the specific performance or conduct deficiency
which serves as the basis of the termination." *Id.* In this case, the Department's notice does not
meet this standard because it references only Officer Sourgoutsis' "prior sustained disciplinary
actions and documented history of unacceptable conduct and behavior." This information does
not provide any specifics to Officer Sourgoutsis.

Not only is the termination recommendation so vague that it is impossible for Officer
Sourgoutsis to respond to it, but it violates her constitutional rights. According to the Supreme
Court, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a
meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)
(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *See, e.g., Alford v. Dep't of Defense*,
2012 MSPB 110 ¶ 6 (September 21, 2012) ("Due process under the Constitution requires that a
tenured federal employee be provided 'written notice of the charges against him, an explanation
of the employer's evidence, and an opportunity to present his side of the story.' *Cleveland Board*

USCP000530

Chief Kim C. Dine
November 3, 2015
Page 5 of 7

*of Education v. Loudermill*, 470 U.S. 532, 546 (1985)). The Court has described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' *Id*. at 542 (emphasis in original). This requires a 'meaningful opportunity to invoke the discretion of the decisionmaker' before the personnel action is effected. *Id*. at 543. 'The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.' *Id*. at 546.").

The vague notice issued in this case does not allow Officer Sourgoutsis to respond to the termination recommendation in a meaningful manner.

**IV.    The Department Retaliated Against Officer Sourgoutsis because She Participated in an OPR Investigation into Sergeant ▇▇▇ Misconduct and Complained about her Field Training Officer**

Once Officer Sourgoutsis completed her field training, she met with her field training sergeant, Sergeant Jodi Breiterman. Sergeant Breiterman inquired about Officer Sourgoutsis' experience with Field Training Officer Amy Thompson. Officer Sourgoutsis revealed that she felt the experience was lacking because FTO Thompson had not provided her with experiences across Capitol Hill, such as visiting Prisoner Processing, the firing range, or Property. FTO Thompson is a close friend of Captain Andrew Bollinger, who is in Officer Sourgoutsis' chain of command as it relates to the termination recommendation, and issued both disciplinary actions to her.

Additionally, shortly after Officer Sourgoutsis met with Chief Verderosa and he encouraged her to move forward from the discipline issued to her in June 2015, she participated in an OPR interview related to complaints of sexual harassment against Sergeant▇▇▇ Sergeant ▇▇▇ is the sergeant in Officer Sourgoutsis' section responsible for administrative responsibilities.

After she met with Chief Verderosa in July 2015, no Department official brought any further misconduct or "documented history of unacceptable conduct and behavior" to Officer Sourgoutsis' attention. She did not receive any information that her work performance was deficient. The timing of the termination recommendation – shortly after she spoke out against Sergeant ▇▇▇ inappropriate behavior – demonstrates that this action may have been initiated in retaliation for Officer Sourgoutsis' participation in protected activity.

Furthering the likelihood that Sergeant▇▇▇participated in this process in bad faith, he has already given away all of Officer Sourgoutsis' overtime shifts, and notified her co-workers that she will not be returning to duty due to a "change in personnel."

Based on the foregoing, there is evidence that Officer Sourgoutsis' termination was recommended not because of her work performance, but because she complained about her field training experience and because she participated in OPR's investigation into Sergeant ▇▇▇

Chief Kim C. Dine
November 3, 2015
Page 6 of 7

**V.    The Department Treated Officer Sourgoutsis More Harshly than Male Employees who were Disciplined During their Probationary Period**

Officer Sourgoutsis is not the first probationary employee to be disciplined. However, she has been treated more harshly than male employees who engaged in far more serious misconduct than behavior described in her relatively minor disciplinary actions.

Specifically, the Union is aware of male employees who received more serious violations than Officer Sourgoutsis but were not terminated. For example, the employee in OPR-12-042 received a CP-535, with fourteen-day suspension, after he was detained until his identification could be confirmed because he was "sitting in suspicious vehicle outside [the] house of [a] suspected drug dealer" and made "evasive, deceptive and untruthful statements to local police officers."

The Union is also aware of probationary employees who were charged with alcohol-related offenses, and received CP-535s, but were not terminated, including Officers ▇▇▇▇▇▇▇▇▇▇. The Union is also aware of officers who received multiple disciplinary actions during their probationary periods (and even had those probationary periods extended) who were not terminated such as Officers ▇▇▇▇▇. Additionally, multiple officers have received disciplinary actions for conduct unbecoming during their probationary period, but were not terminated, such as Officers ▇▇▇▇▇▇▇▇▇.

All of these officers are male. Based on this information, Officer Sourgoutsis – a female – has been treated less favorably than other probationary employees with similar – and far more serious – disciplinary records.

**VI.    Conclusion.**

Officer Sourgoutsis has consistently worked to meet the Department's expectations. Because the Department failed to evaluate her work as required by Directive 2052.004, she was unaware that her work performance was not acceptable. She has consistently taken responsibility for her actions – including her mistakes – and has conducted herself professionally during the term of her employment.

For the foregoing reasons, Officer Sourgoutsis respectfully requests that the Department rescind her proposed termination and reinstate her to full duty. Officer Sourgoutsis requests an opportunity to discuss this matter with you, and is available at 2:00 p.m. on Thursday, November 5, 2015.

Chief Kim C. Dine
November 3, 2015
Page 7 of 7

Sincerely,

WOODLEY & McGILLIVARY LLP

Megan K. Mechak

cc:    Thomas A. DiBiase, Deputy General Counsel, U.S. Capitol Police (via electronic mail)
       Dominic Storelli, Labor Relations Manager, U.S. Capitol Police (via electronic mail)
       James Konczos, Chairman, U.S. Capitol Police Labor Committee (via electronic mail)
       Chrisavgi Sourgoutsis (via electronic mail)

USCP000533

# EXHIBIT B



PHONE 202-224-9806

# UNITED STATES CAPITOL POLICE
### OFFICE OF THE CHIEF
### 119 D STREET, NE
### WASHINGTON, DC 20510-7218

November 13, 2015

Megan Mechak
Woodley & McGillivary
1101 Vermont Ave., NW
Washington, D.C. 20005

Re:   Appeal of Proposed Termination:  Officer Chrisavgi Sourgoutsis

Dear Ms. Mechak:

I am in receipt of your appeal filed on behalf of Officer Chrisavgi Sourgoutsis regarding her proposed termination of employment.  In the appeal you allege Officer Sourgoutsis: 1) was not given due process regarding the basis for the termination; 2) was treated more harshly than male probationary employees; and, 3) was retaliated against when she participated in an Office of Professional Responsibility (OPR) investigation into Sergeant Vias' conduct.  I have reviewed the file in this matter and respond as follows.

I do not agree that Officer Sourgoutsis was not provided due process.  The letter dated October 29, 2015, from Jacqueline J. Whitaker, Director of the Office of Human Resources (OHR), identifies "prior sustained disciplinary actions" for Officer Sourgoutsis.  Your appeal response recognizes that Officer Sourgoutsis was aware of the two CP-534s she had received.  In Directive 2052.004, a determination of unsatisfactory performance is applicable when a "more than one sustained Command Discipline Report (CP-534) violation" exists.

As you are aware and reference in the appeal, on May 10, 2015, Officer Sourgoutsis was issued a CP-534 with warning for a violation of the Rules of Conduct, Category B: Performance of Duty: Rule B2: Personal Appearance when she was wearing her ballistic body armor over a white t-shirt.  On June 15, 2015, Officer Sourgoutsis was issued discipline resulting in a CP-534 with a loss of 16 hours of leave (8 hours held in abeyance) for a violation of the Rules of Conduct, Category B: Performance of Duty: Rule B10: Neglect of Duty when an official discovered that Officer Sourgoutsis had diverted her attention away from her post in order to sit down on a retaining wall.  Thus, Officer Sourgoutsis was aware of the basis for the termination recommendation and due process was given, though not required for a probationary employee in the legislative branch of government.

You allege that Officer Sourgoutsis was treated more harshly than several male employees.  I have looked into the matters you raised and noticed, importantly, that none of the cases you referenced occurred during my tenure as Chief of Police.  As such, none of those officers were subjected to Directive 2052.004, in its current form.

**Page 1 of 2**

Sourgoutsis0000036

Notwithstanding that fact, I have looked into the facts of those cited cases. One officer referenced had only one CP-534 in his probationary year. One officer had a sustained CP-535 outside of his probationary year. One officer had one CP-534 in his probationary year and one outside of the probationary year, and the probationary year had not been extended to include both CP-534s. One officer had no record of disciplinary action during the probationary year. One officer had two CP-534s, however, that officer's CP-534s were not brought to OHR or the Chief's attention during the probationary year. Finally, one officer had two CP-534s, however, former Chief Morse determined that given that the two CP-534s stemmed from the same incident of off-duty conduct, there was sufficient basis to extend the probationary period and the employee performed successfully during that time period.

Officer Sourgoutsis' case is distinguishable as both CP-534s were given as a result of her on-duty performance and given for unrelated instances of misconduct. I have carefully read Assistant Chief Verderosa's assessment of the second CP-534, which included several instances of inappropriate conduct while at the Training Academy. I do not take this decision lightly and have to consider the totality of facts and circumstances presented in this case; however, I also am aware that the objective standard for the Department where an officer has two sustained CP-534s during their probationary year is considered unsatisfactory performance.

Finally, I have considered your allegation that Officer Sourgoutsis was retaliated against for her participation in an OPR investigation against Sergeant Vias. I do find this argument unavailing for two reasons. First, the discipline received by Officer Sourgoutsis was not received from Sergeant Vias but was observed by other Department officials. Second, the discipline was received in May and June 2015. Officer Sourgoutsis was not interviewed as a witness in OPR until August 15, 2015, well after the discipline had been imposed. Moreover, the recommendation of termination of employment came from the Director of OHR who has no knowledge of the investigative matters regarding Officer Vias or Officer Sourgoutsis' participation as a witness.

Based on the Department's Directive and the facts of this matter, I am denying the appeal and recommending termination of employment to the Capitol Police Board. Your probationary period will be extended until such time as the Board makes a final decision or 45 days whichever is later. Officer Sourgoutsis may, of course, opt to resign at any time prior to final approval by the Capitol Police Board.

Very respectfully,

Kim C. Dine
Chief of Police

cc:   Officer Sourgoutsis
      Office of Human Resources

**Page 2 of 2**

Sourgoutsis0000037

# EXHIBIT C



# UNITED STATES CAPITOL POLICE

OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

December 14, 2015

COP 151431

## MEMORANDUM

**TO:**      The Honorable Frank J. Larkin
Chairman, Capitol Police Board

The Honorable Paul D. Irving
Member, Capitol Police Board

The Honorable Stephen T. Ayers, FAIA, LEED AP
Member, Capitol Police Board

**FROM:**   Chief Kim C. Dine

**SUBJECT:**   Termination Recommendation for Private with Training Chrisavgi Sourgoutsis

I am requesting that you approve the employment termination of Officer Chrisavgi Sourgoutsis. Officer Sourgoutsis was appointed to the United States Capitol Police (USCP) on May 11, 2014. On November 15, 2014, Officer Sourgoutsis was promoted to the rank of Private with Training and began her one-year probationary period as a sworn officer.

On May 10, 2015, contrary to policy, Officer Sourgoutsis was not wearing her USCP short-sleeve navy blue uniform shirt while on post; she was wearing only her ballistic body armor over a white t-shirt. Officer Sourgoutsis was issued a CP-534, Command Discipline Report with Warning for a violation of the Rules of Conduct, Category B: Performance of Duty, Rule B2, Personal Appearance.

On May 11, 2015, Officer Sourgoutsis left her post and was seen diverting her attention away from her assigned post (open door) while sitting on a retaining wall and involved in a conversation with a citizen. This action presented a security vulnerability at the United States Capitol as her neglect could have resulted in a security breach of the Capitol. Officer Sourgoutsis was issued a CP-534, Command Discipline Report with a loss of 16 hours of leave (8 hours held in abeyance) for a violation of the Rules of Conduct: Category B: Performance of Duty: Rule B10: Neglect of Duty.

Further, Officer Sourgoutsis has received multiple parking violation citations from Senate Parking Operations during her probationary period and has required multiple counseling sessions while in recruit officer training necessitated by her conduct during training.

*Nationally Accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc*

Termination Recommendation for Private with Training Chrisavgi Sourgoutsis

On October 29, 2015, Jacqueline J. Whitaker, Director, Office of Human Resources, recommended that the employment of probationary employee Officer Sourgoutsis be terminated for reasons of repeated sustained misconduct and violations of USCP Directive 2053.013, Rules of Conduct during her probationary period.

On November 3, 2015, Officer Sourgoutsis timely appealed the recommended termination of her employment with the Department. On November 13, 2015, I denied her appeal and upheld the termination recommendation made by the Office of Human Resources. Consistent with the guidelines established by USCP Directive 2052.004, Probationary Periods, Officer Sourgoutsis' prior sustained disciplinary actions and documented history of unacceptable conduct and behavior demonstrate that she does not meet the standards for retention as a sworn employee of the USCP.

Should the Board concur with my recommendation, Officer Sourgoutsis' termination will be effectuated upon Board approval.

Very respectfully,

Kim C. Dine
Chief of Police

APPROVED:

Frank J. Larkin
Chairman
Capitol Police Board

Paul D. Irving
Member
Capitol Police Board

Stephen T. Ayers, FAIA, LEED AP
Member
Capitol Police Board

Date: DECEMBER 17, 2015