# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-1096-KBJ-RMM |
| | ) |
| UNITED STATES CAPITOL POLICE, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF ERIC C. WALDOW

I, Eric C. Waldow, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I began working with the United States Capitol Police on March 10, 1993, as a Security Aide. On July 12, 1994, I became a sworn police officer.

2. In approximately March 2014, I was promoted to Inspector. I was assigned as the Commander of the Training Services Bureau from approximately March 2014 through September 2014. In September 2014, I was assigned to the Capitol Division as the Commander. I currently hold this assignment. I report to the Deputy Chief of the Uniformed Services Bureau ("USB"). During Plaintiff's tenure, Deputy Chief Chad Thomas was the Commander of USB.

3. I am aware that Plaintiff graduated from the USCP Training Academy on November 14, 2014, and was assigned to Capitol Division, Shift 3 ("CD-3"). I had no role in determining Plaintiff's assignment.

4. The chain-of-command in CD-3 for the majority of Plaintiff's tenure was as follows: the field supervisors were Sergeant Tyrone Vias, Sergeant Joseph Moroziewicki, and Sergeant Maria Willis; the Section Commander was Lieutenant James Leonard; Assistant

Division Commanders were Captain Andrew Bolinger, Captain Sean Gallagher, and Captain Yogananda Pittman.

5. I had little interaction with Plaintiff during her tenure at the Department. As an Inspector, I generally do not work directly with officers in the field on a day-to-day basis. I am responsible for managing the overall operations of the Capitol Division.

6. In accordance with Directive 2052.004, Probationary Periods, probationary employees are to have quarterly evaluations completed by their first line supervisor. I am aware that three out of four quarterly evaluations were not completed for Plaintiff. I have reviewed the probationary period quarterly evaluations completed for officers in recruit officer classes ("ROC") 176, 177, and 178 who also were assigned to the Capitol Division. Based upon my review, I have concluded that no Capitol Division officer in these classes have had all quarterly evaluations completed. Additionally, for Capitol Division officers in ROC 177, only final probationary reports were completed.

7. Plaintiff had numerous CP-534s and a significant record of noncompliance. In my view, based on this record, Plaintiff presented a significant risk to the Department as a police officer. Plaintiff was unable to follow directions as simple as uniform requirements and she was unable to maintain the correct security posture for maintaining access control for a secure environment. For this reason, I determined that separation before the end of her probationary period would be appropriate.

8. In or about mid-July 2015, I began discussions with Office of Human Resources about what steps would need to be taken in the event the Division were to recommend Plaintiff's termination. I began these discussions because I was aware that Plaintiff had recently received two CP-534s and I also was aware of Plaintiff's history of noncompliance at the USCP Training

2

Academy.

9. I drafted the recommendation to terminate Plaintiff in this case. The reason I wrote the recommendation is that Deputy Chief Thomas forwarded an August 14, 2015, memorandum to me on August 28, 2015, from (then) Assistant Chief of Police Matthew Verderosa inquiring about Plaintiff's probationary period evaluations and whether a final evaluation had been completed. The August 14, 2015, memorandum from Assistant Chief Verderosa also advised the Division to look at whether to extend or retain Plaintiff based on her record. The instruction I received from Deputy Chief Thomas was to get the final evaluation completed and to make a determination as to whether or not to retain or extend Plaintiff's probationary period. Deputy Chief Thomas directed that I respond by September 4, 2015. True and correct copies of the documents I received from Deputy Chief Thomas on August 28, 2015 are attached as Ex. A.

10. I determined to complete Plaintiff's final evaluation and the termination recommendation myself because time was of the essence, since I had to get a response to Deputy Chief Thomas and Assistant Chief Verderosa. Additionally, the basis for Plaintiff's termination was an overall pattern or practice of noncompliance with Department rules and policies. Although field supervisors have oversight over the day-to-day performance of an individual officer, they generally would not have insight as to the big picture concerns Plaintiff's ongoing noncompliance with rules raised. On September 4, 2015, I forwarded to Deputy Chief Thomas a decision paper recommending Plaintiff's termination. A true and correct copy of that decision paper is attached hereto as Ex. B.

11. On August 27, 2015, I received a telephone call from Inspector Patrick Herrle, Commander of Office of Professional Responsibility ("OPR"), advising me that an anonymous

3

complaint had been received alleging that a Sergeant in my chain-of-command was calling female officers "chica" or "senorita." Inspector Herrle explained that OPR would be investigating the matter. Inspector Herrle did not provide me with information on any additional allegations or potential witnesses. Inspector Herrle requested that I counsel the Sergeant-Respondent about the way he addresses officers. This was the first time I became aware that the Sergeant-Respondent had a complaint filed against him and that OPR was investigating the complaint.

12. That same day, I met with the Sergeant-Respondent. I advised him that OPR had received a complaint that alleged he addressed female officers in an informal manner. I ordered him to immediately stop referring to women officers as "chica" or any other informal term and that he should address all officers as "Officer [Last Name]." I further advised the Sergeant-Respondent that over the next six months his behavior will be monitored to determine if he was complying with my instruction. I documented this counseling on a CP-550, Personnel Performance Note. A true and correct copy of the CP-550 is attached as Ex. C.

13. I am aware that on or about September 30, 2015, OPR sent me a notification letter informing me of the investigation concerning the complaint against the Sergeant-Respondent.

14. I never had any conversations with anyone regarding the OPR investigation between August 27, 2015, and the date I received the completed Report of Investigation ("ROI"). At no point during this time period was I made aware of who the complainant was or who the witnesses were.

15. On January 20, 2016, I received an email from Scharon Ball, Senior Counsel, Office of General Counsel, in her capacity as Disciplinary Review Officer. The email indicated that the matter concerning the Sergeant-Respondent did not warrant a CP-535 and that it would

be referred to the Division to determine the penalty assessment. A true and correct copy of the email is attached as Ex. D.

16. On or about January 20, 2016, I received the ROI for review to determine the appropriate remedy in this matter. Upon review of the ROI, I became aware that many officers and sergeants in CD-3, including Plaintiff, were witnesses in the investigation. This was the first time I became aware of that information.

\*   \*   \*   \*   \*

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26 day of October 2017.

_____
Eric C. Waldow

# EXHIBIT A

FP-01 (2-16)

**UNITED STATES CAPITOL POLICE**

FILE COPY

From: D/C THOMAS

| To: | Thru: | Date: 8/28/15 |
|---|---|---|
| ☐ | ☐ | Chief of Police |
| ☐ | ☐ | Chief of Staff |
| ☐ | ☐ | Chief of Operations |
| ☐ | ☐ | Chief Administrative Officer |
| ☐ | ☐ | Commander, Operational Services Bureau |
| ☐ | ☐ | Commander, Protective Services Bureau |
| ☐ | ☐ | Commander, Training Services Bureau |
| ☐ | ☐ | Commander, Uniformed Services Bureau |
| ☐ | ☐ | Director, Office of Employment Counsel |
| ☐ | ☐ | Director, Office of Financial Management |
| ☐ | ☐ | Director, Office of the General Counsel |
| ☐ | ☐ | Director, Office of Human Resources |
| ☐ | ☐ | Director, Office of Information Services |
| ☐ | ☐ | Director, Office of Logistics |
| ☐ | ☐ | Director, Plans, Operations & Homeland Security |
| ☐ | ☐ | Director, Security Services Bureau |
| ☑ | ☐ | INSP. WALDOW (CO) |

| | | | |
|---|---|---|---|
| ☐ | Approved | ☐ | Recommendation |
| ☐ | Call Me | ☑ | Respond No Later Than 9/4/15 |
| ☐ | Consideration | | |
| ☐ | Expedite | ☐ | Review |
| ☐ | File | ☐ | Revise |
| ☐ | Handle | ☐ | See Me |
| ☐ | Information | ☐ | Signature |
| ☐ | Investigate & Report | ☑ | See Note on Back |
| ☐ | Per Your Request | ☐ | |
| ☐ | Prepare Reply | ☐ | |

USB# 16354

USCPSOURGOUTSIS001022

Inspector Waldow,

Per the ACOP's direction, review this matter and initiate the appropriate evaluations to determine if an extension of probation is warranted.

Respond to my attention no later than Friday, 9/4/15

CBJ



PHONE 202-224-5151

03-14-15A09:28 RCV

### UNITED STATES CAPITOL POLICE
WASHINGTON, DC 20510-7218
August 14, 2015

**MEMORANDUM**

**TO:**       Deputy Chief Chad Thomas

**FROM:**     Assistant Chief Matthew R. Verderosa

**SUBJECT:**  Probationary Status of Officer Sourgoutsis

    I have had the opportunity to adjudicate a penalty grievance for a probationary employee, Officer Chrisavgi Sourgoutsis. Officer Sourgoutsis's probationary period ends on November 14, 2015. She has recently received two CP-534s, Command Discipline Reports which I have sustained and adjudicated.

    In reviewing this officer's record, I found a troubling pattern of conduct exhibited by repeated failure to follow Department rules. In addition, based on my review of her personnel folder and Office of Human Resources records, it appears there has been a lack of documentation in terms of evaluations. Probationary periods as defined in Directive 2052.004, Probationary Periods, indicates that the FTO Program runs concurrently with the first quarterly probationary period evaluation cycle using form CP-1387, and operates in conjunction with the probationary period. Form CP-1387, Quarterly Probationary Performance and Conduct Report should be initiated during the FTO or PTO training period and continue throughout that period.

    The probationary period for newly appointed employees is the final step that completes the employment process. Close evaluation of a new employee's performance capabilities and suitability for continued employment ensures the Department's ability to achieve its mission and goals. During the designated probationary period, the employee's supervisor evaluates both performance and conduct to ensure that the employee possesses the requisite qualifications, capabilities, and suitability to fully and successfully perform the duties of the position on a continuing basis.

    Please have your subordinate officials review this matter, initiate the appropriate evaluations, determine and recommend whether this employee is to be retained upon completion of the probationary period, or alternatively, determine whether there needs to be an extension of the probationary period if additional time is needed to determine whether or not the employee is retained.

    Please contact me if you should have any questions.

Matthew R. Verderosa
Assistant Chief of Police

Nationally Accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc.

USB #16354

**USCPSOURGOUTSIS001024**

# EXHIBIT B

**UNITED STATES CAPITOL POLICE**
WASHINGTON, DC 20510-7218

Phone 224-5151

September 4, 2015

# MEMORANDUM

**TO:** Deputy Chief Chad B. Thomas
USB Commander

**FROM:** Inspector Eric C. Waldow
Capitol Division

**SUBJECT:** Termination of Probationary Employee: Officer Chrisavgi Sourgoutsis

1. This is a Decision Paper.

2. PURPOSE. To identify areas of unsatisfactory performance/conduct to support a recommendation of termination for Officer Sourgoutsis.

3. DISCUSSION:

   A. Officer Sourgoutsis date of appointment is May 11, 2014. Her performance period for probationary period is scheduled to conclude on November 15, 2015 (ROC 177).

   B. Officer Sourgoutsis has demonstrated a pattern of unsatisfactory conduct, deficiencies in performance of duties, and the lack of cooperativeness to maintain compliance with general policy and procedure. This unsatisfactory pattern has been established during her recruit officer training and has continued through her probationary period as a sworn law enforcement officer.

   C. The following are documented instances to support the termination recommendation:

      - May 15, 2014: CP-550 documenting a violation of Reporting for Duty ROC B4 when she reported for duty without her issued uniform of the day.

      - June 20, 2014: CP-550 documenting a violation of Compliance with Directives ROC A3 (Academy Rules; Uniform, Equipment and Personal Appearance) when she reported for duty wearing purple socks with her Chorofram shoes in her issued uniform of the day.

Termination Recommendation                                                                 Page 1

**USCPSOURGOUTSIS001351**

- June 23, 2014, CP-550 documenting a Federal Law Enforcement Training Center (FLETC, Ga) privacy policy violation. Recruit Officer Sourgoutsis was observed skyping in the cafeteria against the FLETC privacy policy.

- June 24, 2014, CP-550 documenting use of profanity directed at another student in her recruit class while in the presence of additional classmates. ROC B9 Courtesy and USCP Academy Rules General Rules (#15).

- June 26, 2014, CP-550 documenting her failure to report for duty at the time and location required to complete a class photo project. ROC B4 Reporting for Duty

- June 24, 2014, Memorandum dated June 24, 2014 from Lt. Brogan (TSB FLETC, GA) to Officer Sourgoutsis advising her she was on disciplinary probation based on the amount of documented unsatisfactory performance instances. The was advised additional violations would result in a recommendation for removal from training.

- August 21, 2014; CP-550 documenting her failure to comply with USCP Academy Rules regarding chewing gum in the classroom.

- September 23, 2014, CP-550 documenting a courtesy violation when she referred to a role player as "crazy." ROC B9 Courtesy

- May 4, 2015; CP-550 documenting POV parking violations noted by the USCP Office of Facilities and Logistics. She was reported to have violated parking restrictions on three (3) occasions between April 28-May 4, 2015.

- May 10, 2015, CP-534W documenting a violation of ROC Rule B2 Personal Appearance when she was on post and out of uniform. Officer Sourgoutsis was wearing her issued ballistic vest over a white tee-shirt and was not wearing a uniform shirt.

- June 2, 2015; CP-534 16hrs documenting a violation of ROC Rule B10 Neglect of Duty. On May 11, 2015, Officer Sourgoutsis was observed seated on a garden retaining wall engaged in a conversation with a citizen. This action prevented her from devoting full time and attention to her duties which included ensuring an egress door that was under-going construction was not breeched.

    D. Based on the listed serious violations Officer Sourgoutsis will not successfully complete her probationary period.

    E. Officer Sourgoutsis final ratings for the CP-1388 Final Probationary Summary Report for Newly Appointed Employees ranked the following evaluation guidelines as unsatisfactory; Quality of Work, Self-Development, Initiative, Productivity, Dependability, Adaptability to Changing Situations, and General Deportment. She has received two (2) command discipline reports and demonstrates the inability to conform to general rules and regulations since her time as a recruit officer continuing through her probationary period.

    F. Based on Officer Sourgoutsis inability to conform to the basic rules and regulations outlined in Department policy it is recommended that her employment be terminated for unsatisfactory performance.

    G. Officer Sourgoutsis work history as documented in her personnel jacket identifies multiple instances of performance/conduct deficiencies and undesirable suitability characteristics as evidenced by her demonstrated conduct/performance on duty.

    H. Officer Sourgoutsis has received multiple coaching and counseling sessions which have been documented since her time as a recruit officer continuing through her probationary period. On each instance she was apprised of the expected conduct and expected performance. However, the pattern of unsatisfactory performance/conduct has continued despite repeated coaching/counseling.

    I. It is recommended that Officer Sourgoutsis employment be terminated based on unsatisfactory performance/conduct, a continued pattern of uncooperativeness and undesirable suitability characteristics.

4. Conclusion: At the direction of the USB commander we will initiate appropriate actions to include suspension pending termination to execute in coordination with OHR.

                                  Inspector Eric C. Waldow
                                  Capitol Division

USCPSOURGOUTSIS001353

# EXHIBIT C



UNITED STATES CAPITOL POLICE
PERSONNEL PERFORMANCE NOTES

CP-550
(10/11)

*(Please Type or Print Legibly)*

| 1. EMPLOYEE NAME (Last, First, MI) | 2. BUREAU/OFFICE/DIVISION | 3. RATING PERIOD |
|---|---|---|
| ▇▇▇▇▇▇ | USB/CD | 2015 |

| 4. DATE | 5. EVENT/INCIDENT/EXPLANATION | 6. SUPERVISOR |
|---|---|---|
| Aug. 2015 | On August 27, 2015, this official met with ▇▇▇▇▇ to discuss a complaint received by OPR. ▇▇▇▇▇ was advised part of the complaint included addressing female officers as "chica's" as compared to their male counter-parts who he is reported to address formally as Officer "x." <br><br> ▇▇▇▇▇ is advised to address subordinate employees in an appropriate manner such as Officer and not to address in an informal manner as reported/alleged. <br><br> OPR will contact you in the near future to continue the investigation. <br><br> Date:_____ | Insp. Waldow |

USCPSOURGOUTSIS001520

# EXHIBIT D

From: Ball, Scharon L.
Sent: Wednesday, January 20, 2016 11:15 AM
To: Herrle, Patrick J. <Patrick.Herrle@uscp.gov>
Cc: DiBiase, Thomas A. <Thomas.DiBiase@uscp.gov>; Breme, Chris C. <Chris.Breme@uscp.gov>; Waldow, Eric C. <Eric.Waldow@uscp.gov>; Johnson, Monique <Monique.Johnson@uscp.gov>
Subject: OPR-15-093 (                              ;)

Good Morning Inspector Herrle:

As you know in this case several allegations were made but only one Improper Remarks charge was sustained based on          referring to female officers as "senorita," "chica" or calling them by their first names. I noticed in the ROI that this specific conduct was previously brought to the attention of the Division and Inspector Waldow counseled          and issued a CP-550 on August 27, 2015. I spoke to Inspector Waldow this morning and he indicated that since his counseling of          he has not received any additional complaints or information that          has repeated the conduct.

In light of the fact that the matter has been addressed and the conduct has ceased, I would suggest that we refer this matter back to the Division and have Inspector Waldow determine whether he believes that the August 2015 CP-550 is sufficient or whether it should be followed up with command discipline. In either event, since the Division has already addressed the conduct, I don't think that a penalty recommendation from this office would be helpful.

Please let me know if you would like to discuss. Thanks.

1

Scharon L. Ball
Senior Counsel
Office of the General Counsel
United States Capitol Police
Phone: 202-593-3627
Fax: 202-593-4477

**THE INFORMATION CONTAINED IN THIS MESSAGE MAY BE LEGALLY PRIVILEGED AND CONFIDENTIAL**
Please immediately notify the USCP OGC by telephone at 202-593-3619 if you have received this document in error and delete it from your system.