# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES CAPITOL POLICE, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:16-CV-01096-KBJ-RMM |

### DECLARATION OF MARK S. SHUTTERS

I, Mark S. Shutters, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I began working for the United States Capitol Police ("USCP" or the "Department") in June 1988. I am currently a Sergeant in the Training Services Bureau, Physical Skills Division. Before working in my current assignment, I was a Sergeant in the Office of Professional Responsibility ("OPR"). I was an investigator in OPR from April 2008 through December 2015.

2. While in OPR, I conducted an administrative investigation into a complaint filed on July 27, 2015, against Respondent, a first-line supervisor in the Uniformed Services Bureau ("USB"), Capitol Division, Shift Three. The Case Number for the complaint was OPR #15-093.

3. Generally, an OPR Investigator will notify the respondent and the respondent's Division Commander at the start of an administrative investigation that an investigation is being conducted.

4. In OPR #15-093, notification of the investigation was not issued to Respondent or Respondent's Division Commander, Inspector Eric Waldow, until October 1, 2015. I issued form letters dated September 30, 2015 that stated only that OPR was conducting an investigation

1

concerning Respondent. True and correct copies of those letters are attached hereto as Ex. A (Respondent's name has been redacted).

5. The form letters do not provide any information concerning the allegations against Respondent, the name of the complainant, or any of the witnesses in the investigation.

6. I determined to issue the form letters two months after the start of the investigation because of the nature of this case. In August 2015, I interviewed numerous officers assigned to Respondent's shift as part of the investigation and I did not want Respondent to become aware of the breadth and scope of the investigation.

7. Before issuing the form letters to Respondent and Inspector Waldow, I had no discussion with Respondent or Inspector Waldow regarding the existence of an investigation concerning Respondent, any of the allegations in the complaint, or any witnesses I interviewed.

8. I interviewed Plaintiff Sourgoutsis as part of my investigation into the complaint in OPR # 15-093. As is consistent with our practices in OPR, I audio recorded Plaintiff Sourgoutsis' interview. At the conclusion of the interview, I requested that Plaintiff Sourgoutsis provide a written statement summarizing the interview, which she did. True and correct copies of Plaintiff Sourgoutsis' written statement and recorded interview are attached hereto as Ex. B and C.

9. During the interview, Plaintiff Sourgoutsis stated that Respondent referred to her as "chica" or "senorita" on several occasions. Plaintiff Sourgoutsis indicated that chica means girl and senorita means single, unmarried woman in Spanish. She found this terminology inappropriate as it applied to her because Respondent understood that she was married.

10. Plaintiff Sourgoutsis also stated that Respondent assigns female officers to the detail panel because she believes he wants "something pretty to look at."

2

11. Plaintiff Sourgoutsis also stated that about 1½ months before she was interviewed, she put in for a 2130 hours short so she could catch a 2210 hours Amtrak train to New York to visit family. Plaintiff Sourgoutsis stated that while she was in the Senate Subway, she telephoned Respondent who denied her short request because of a manpower need. Plaintiff Sourgoutsis stated that Respondent then told her he saw her picture on Facebook, noted that her hair was down, that she wore makeup, and told her she looked good/nice.

12. Plaintiff Sourgoutsis also stated that Respondent gives female officers he likes whatever they want, such as shorts and upfronts. Plaintiff Sourgoutsis provided no examples of when this occurred.

13. Plaintiff Sourgoutsis also stated Respondent stands with his hips thrust out "all the time," including in roll call. According to Plaintiff Sourgoutsis, Respondent stands this way around male and female officers and officials. Plaintiff Sourgoutsis attempted to demonstrate Respondent's posture. I recall Plaintiff Sourgoutsis stood and stepped forward, hooked her thumbs at about her waistline as if at her belt loop, and rolled her hips as if she were trying to hold up a hoola hoop, except the motion was slow and much less exaggerated. Plaintiff Sourgoutsis stated she does not know whether Respondent's posture was a nervous thing or a tick.

14. Plaintiff Sourgoutsis also described Respondent as having "darty dodgy eyes." She stated that she doesn't wear her uniform to work, and alleged that Respondent once looked at her in a dress like he likes to look at his pretty officers.

15. Plaintiff Sourgoutsis also stated that Respondent never made any sexual advances towards her.

3

16. The remainder of Plaintiff Sourgoutsis' knowledge about Respondent's alleged conduct as it related to the complaint in OPR #15-093 was not information she gained from first-hand experience, but, instead, was information told to her by others or general rumors.

17. I asked whether Plaintiff Sourgoutsis felt that Respondent's alleged conduct created a hostile work environment for her and she stated that it did not anymore because she simply ignores Respondent.

18. The investigation into the complaint in OPR #15-093 was extremely thorough. I interviewed eighteen witnesses, including Respondent, and reviewed schedules and text messages. The investigation began around July 27, 2015 and was completed December 8, 2015. The breadth and scope of the investigation and its findings are described in the Report of Investigation ("ROI") I wrote. A true and correct copy of the ROI is attached hereto as Ex. D.

19. Based on the information Plaintiff Sourgoutsis and other witness provided, I concluded that Respondent engaged in improper remarks when he called women chica, senorita, or by the first names.

20. I concluded that the other allegations Plaintiff Sourgoutsis made either were unsubstantiated or were not a violation of any Department policies. For example, no evidence was presented showing that Respondent assigned female officers to more favorable posts or to posts at which he could isolate them (such as the fire panel). I requested and received copies of the schedule for Capitol Division, Shift Three over a ninety-day period. I was unable to discern any pattern showing that female officers were assigned to more favorable posts or to the fire panel.

21. I also was not provided any evidence showing that Respondent awarded shorts or upfronts unfairly to certain female officers.

22. As to the allegation concerning the way in which Respondent stands, the descriptions provided by witnesses did not support that Respondent violated any Department policy as the descriptions did not indicate that there was anything improper or sexually inappropriate in Respondent's posture. Further, Respondent explained that he did not thrust his groin or pelvic area, but that he did stand and rock on his heels to keep his back limber.

23. As to Plaintiff Sourgoutsis' allegation that Respondent commented on her Facebook picture once and looked at her when she was in her civilian clothes once, these also did not support that Respondent violated any Department policy.

\* \* \* \* \*

Executed on this 23 day of October 2017.

*[signature]*

Mark S. Shutters

# EXHIBIT A



Phone: 202-224-9806

**UNITED STATES CAPITOL POLICE**
OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

September 30, 2015

**MEMORANDUM**

**TO:** Inspector Eric C. Waldow
Commander
Capitol Division

**FROM:** Inspector Patrick J. Herrle
Commander
Office of Professional Responsibility

**SUBJECT:** Office of Professional Responsibility Investigation

    This memorandum is to inform you of an investigation being conducted by the Office of Professional Responsibility (OPR) regarding Sergeant ███████, Capitol Division, Section Three.

    Sergeant Mark S. Shutters is the assigned investigator in this case. Please feel free to contact him at (202)512-2170 with any questions or details regarding this investigation.

Inspector Patrick J. Herrle
Commander
Office of Professional Responsibility

PJH:mss

Cc: OPR #15-093
Deputy Chief Chad B. Thomas



PHONE 202 224 9806

**UNITED STATES CAPITOL POLICE**
OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

September 30, 2015

### MEMORANDUM

**TO:**       Sergeant █████████
              Capitol Division
              Section Three

**FROM:**    Inspector Patrick J. Herrle
              Commander
              Office of Professional Responsibility

**SUBJECT:** Respondent Notification

    It has been alleged you violated United States Capitol Police Directive 2053.013, Rules of Conduct. An investigation has been initiated, and a charge or charges will be identified, if warranted.

    To ensure the investigation is not adversely affected, you are hereby directed not to discuss any particulars of this complaint with anyone other than the assigned investigator or the Office of Professional Responsibility (OPR).

    In the event you have questions, or require additional information, please contact Sergeant Mark S. Shutters, OPR, at (202)512-2170.

Inspector Patrick J. Herrle
Commander
Office of Professional Responsibility

PJH:mss

Cc:   OPR Case #15-093

# EXHIBIT B

# Chrisavgi Sourgoutsis
# Written Statement
# OPR 15-093
# Filed Under Seal

# EXHIBIT C

# AUDIO RECORDING
# C. SOURGOUTSIS
# FILED UNDER
# SEAL

# EXHIBIT D

# Report of Investigation
# OPR 15-093
# Filed Under Seal