# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES CAPITOL POLICE, ) <br> ) <br> Defendant. ) | Case No. 1:16-CV-01096-KBJ-RMM |

## DECLARATION OF THOMAS A. DIBIASE

I, Thomas A. DiBiase, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I provided testimony in the above-listed matter as a designated agent of the United States Capitol Police ("USCP" or the "Department") under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

2. I am an attorney that has worked for the United States Capitol Police since April 2010. I am the Deputy General Counsel, in the Office of the General Counsel. I am also the supervisor of the Disciplinary Review Officers, attorneys within the Department responsible for reviewing Office of Professional Responsibility ("OPR") Reports of Investigation ("ROI") involving a sustained charge(s) of a violation of USCP policy and making a penalty recommendation. In my capacity as supervisor of the Disciplinary Review Officers, I have access to the disciplinary histories of Department employees.

3. I am aware that Plaintiff has identified male probationary officers that she alleges engaged in misconduct similar to or worse than the conduct in which she engaged and whom the Department retained as employees. I have reviewed the disciplinary histories of the officers she

identified.

4. PVT 7 was appointed to the United States Capitol Police on August 1, 2011. PVT 7 graduated from Recruit Officer Class ("ROC") 171 on January 20, 2012. PVT's probationary period began on August 1, 2011, and initially was to end on January 20, 2013.

5. During his probationary period, PVT 7 received a CP-534 on November 30, 2012 for violating Rule B10: Neglect of Duty when he was observed sleeping in the Check Point 3 kiosk on November 27, 2012.

6. During his probationary period, PVT 7 received a CP-550 on August 4, 2011 for violating Academy Rules, Uniform, Equipment and Personal appearance when he failed to report training without his issued USCP ball cap. This was documented as his first academy rules violation.

7. During his probationary period, PVT 7 received a CP-550 on November 5, 2011 for violating Academy Rules, Violation of FLETC Rules and Regulations when he was stopped for exceeding the posted speed limit. This was documented as his second academy rules violation.

8. During his probationary period, PVT 7 also received a corrective CP-550 on September 5, 2012, for failing to adhere to the Department's grooming standards as it relates to beard length and an information CP-550 on the same date indicating that he was provided the policy as to this issue. PVT 7 also was tardy in July 2012 and September 2012.

9. During his probationary period, PVT 7 also received the FLETC Director's Training Award, a recognition given to a student who most exemplifies the core values of a federal law enforcement officer.

10. On January 16, 2013, Inspector Matthew Perkins, Commander of the House

Division, recommended that PVT 7's probationary period be extended for six months in light of deficiencies documented during PVT 7's probationary period.

11. Deputy Chief Yancey Garner approved Inspector Perkins's extension recommendation.

12. PVT 8 was appointed to the United States Capitol Police on August 1, 2011. PVT 8 graduated from Recruit Training Class ("ROC") 171 on January 20, 2012. PVT 8's probationary period began on August 11, 2011, and initially was to end on January 20, 2013.

13. During his probationary period, PVT 8 received a CP-534 on November 20, 2012 for violating Rule A3: Compliance with Directives when on April 28, 2012, PVT 8 observed that a truck/trailer had not been stopped by the Interdiction officer and failed to stop the vehicle from proceeding through the checkpoint or radio Communications about the breach. Assistant Chief Reynolds dismissed the CP-534 concerning the April 28, 2012, incident on appeal. PVT 8 also received a CP-534 on November 29, 2012, for violating Rule B10: Neglect of Duty when PVT 8 was observed asleep while on post at the Rayburn Subway on November 26, 2012.

14. PVT 8 was also tardy twice during his probationary period and used unscheduled leave on two occasions. Use of unscheduled leave is not a violation of USCP policy, but is monitored and tracked by supervisors.

15. On January 6, 2013, Inspector Perkins recommended that PVT 8's probationary period be extended for six months as a result of these documented incidents. Deputy Chief Garner approved the extension recommendation.

16. Recommendations to extend a probationary employee's probationary period for discipline or performance is a matter that is handled at the Bureau level. The recommendation for extension by the Division Commander. The Bureau Commander has final decision-making

authority as to approval or denial of the recommendation.

17. By contrast, recommendations to terminate a probationary employee come from the Division, must be approved by the Bureau Commander, the Assistant Chief of Police, the Chief of Police, and, finally, the U.S. Capitol Police Board.

18. Comparators PVT 7 and PVT 8 probationary periods were both probationary employees in the House Division of the Uniformed Services Bureau ("USB"). As to both employees, the Bureau commander had final decision-making authority as to extension of their probationary periods.

* * * * *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of October 2017.

Thomas A. DiBiase