# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-1096 (KBJ/RMM) |
| | ) |
| UNITED STATES CAPITOL POLICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Pending before the Court is Movant Capitol Police Board's ("Movant" or "CPB") Motion to Quash and for a Protective Order ("Motion to Quash") [ECF No. 15], which seeks to quash two subpoenas served by Plaintiff Chrisavgi Sourgoutsis ("Plaintiff" or "Ms. Sourgoutsis") on non-parties Fay Ropella, Inspector General of the United States Capitol Police ("USCP"), and the USCP Office of Inspector General ("OIG"). United States District Judge Ketanji Brown Jackson referred the Motion to Quash to the undersigned Magistrate Judge for resolution. *See* 6/12/17 Minute Order. Having considered the parties' submissions and attachments thereto,[1] the arguments presented at the motions hearing held August 4, 2017 ("Motions Hearing"), and after reviewing the CPB's *in camera* submissions, the Court GRANTS Movant's Motion to Quash and DENIES without prejudice Movant's Motion for Protective Order.

---

[1] The relevant filings are: Movant's Mot. to Quash, ECF No. 15; Pl.'s Opp'n, ECF No. 17; Movant's Reply, ECF No. 18; Movant's Response to Court Order, ECF No. 25; Pl.'s Response to Movant's Response to Court Order, ECF No. 26.

# BACKGROUND

## I. FACTUAL BACKGROUND[2]

Ms. Sourgoutsis alleges that the USCP discriminated against her on the basis of her gender and retaliated against her for engaging in protected activity in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* Ms. Sourgoutsis joined the USCP on May 11, 2014 and became a probationary USCP Officer after she completed training. *See* Compl. ¶¶ 9, 28, ECF No. 1. Ms. Sourgoutsis's probationary period was scheduled to end on November 15, 2015. *Id.* ¶ 28. During that period, Ms. Sourgoutsis was disciplined for the following alleged conduct: wearing socks that were not the mandated uniform color; cursing; using a mobile phone indoors; criticizing the role player in a role-playing exercise; failing to wear an appropriate uniform shirt; and sitting while on duty. *See id.* ¶¶ 15–17, 21–24, 40–41. Near the end of her probationary period, the USCP recommended that Ms. Sourgoutsis be terminated. *See id.* ¶¶ 80, 98. Ms. Sourgoutsis contends that the discipline and her termination were based on her gender. *See id.* ¶¶ 109–12. She further alleges that the USCP terminated her in retaliation for her participation as a witness in an interview regarding allegations that her supervisor had sexually harassed female officers. *See id.* ¶¶ 120–22.

## II. PROCEDURAL BACKGROUND

On June 13, 2016, Ms. Sourgoutsis filed a Complaint alleging gender discrimination and retaliation by the USCP in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq. See* Compl. The USCP filed an answer to Ms. Sourgoutsis's Complaint on September 6, 2016. *See* Def.'s Answer, ECF No. 7. Discovery commenced thereafter.

---

[2] Given the procedural posture of the case, the Court relies on the facts alleged in the Complaint.

The current discovery dispute arises from two subpoenas that Ms. Sourgoutsis served on Ms. Fay Ropella, Inspector General of the USCP, and OIG. *See* Movant's Mot. to Quash at 2, ECF No. 15-1; Pl.'s Opp'n at 3, ECF No. 17. The subpoenas seek production of certain documents and testimony regarding the USCP's disciplinary policies and practices, including a report reflecting OIG's evaluation of the USCP disciplinary process. Movant's Mot. to Quash, Ex. 1, ECF No. 15-2 (Subpoena to Fay Ropella) (hereinafter "Ropella Subpoena") and Ex. 2, ECF No. 15-3 (Subpoena to OIG, USCP) (hereinafter "OIG Subpoena"). The CPB,[3] a non-party to this action, moved to quash the Ropella and OIG Subpoenas, and alternatively sought a protective order if the Court does not quash the subpoenas. *See* Movant's Mot. to Quash, ECF No. 15.

By Minute Order dated July 31, 2017, the Court requested that the CPB submit for *in camera* review a copy of the OIG report at issue in the subpoenas. *See* 7/31/2017 Minute Order; *see also* Movant's Mot. to Quash, Ex. 3, ECF No. 15-4 (hereinafter "Privilege Log") (Doc. Number 31). On August 4, 2017, the undersigned held a Motions Hearing at which counsel for the Plaintiff and Movant were present. *See* 8/4/2017 Minute Entry. The undersigned heard argument and took the motion under advisement. After the Motions Hearing, the Court issued three Orders directing the CPB to submit additional documents for *in camera* review and to further supplement the record. *See* 8/15/2017 Minute Order; Order, ECF No. 24; 11/7/17 Minute Order. The CPB timely submitted the requested information.

---

[3] The Inspector General, to whom OIG reports, is appointed by and under the supervision of the CPB. 2 U.S.C. § 1909; *see also* Movant's Mot. to Quash at 5, ECF No. 15-1.

<u>**LEGAL STANDARD**</u>

**I.     MOTION TO QUASH**

Federal Rule of Civil Procedure 26 allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  As part of this discovery, Federal Rule of Civil Procedure 45 permits a party to issue a subpoena to a non-party to command attendance at a deposition or to produce or permit inspection of documents, information, or tangible things.  FED. R. CIV. P. 45(a)(1).  Rule 45 subpoenas may only be used to compel production of information that is discoverable under Rule 26.  *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).  Therefore, upon timely motion, a court must quash or modify a Rule 45 subpoena that "requires disclosure of privileged or other protected matter[s], if no exception or waiver applies; or subjects a person to undue burden." FED. R. CIV. P. 45(d)(3); *cf. In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 83 (D.D.C. 2010) (noting resolution of motion to quash governed by Rules 26 and 45 of the Federal Rules of Civil Procedure).  That standard "applies to both document and testimonial subpoenas." *Watts v. SEC*, 482 F.3d 501, 508–09 (D.C. Cir. 2007) (citation omitted).

The party moving for relief bears the burden of showing that the subpoena should be quashed or modified.  *See Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).  "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (citations omitted).  Accordingly, a "movant's burden is greater for a motion to quash than if [the movant] were seeking more limited protection." *Id.* (citing *Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 766 (D.C. Cir. 1965)); *see*

*also U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014).

## II.  MOTION FOR PROTECTIVE ORDER

Federal Rule of Civil Procedure 26 provides that "for good cause" a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The party requesting the protective order bears the burden of showing good cause "by demonstrating specific evidence of the harm that would result." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001); *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998); *see also Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C), *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005) (reconsidering a separate proposition). Protective orders may "deny discovery completely, limit the conditions, time, place, or topics of discovery, or limit the manner in which the confidential information is to be revealed." *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006).

## ANALYSIS

## I.  MOTION TO QUASH

The CPB moves to quash two subpoenas: one issued to Fay Ropella, current Inspector General of the USCP; and one issued to OIG. The subpoenas request both testimony and the production of documents, and overlap substantially. Both subpoenas seek production of the following documents:

- Any documents regarding U.S. Capitol Police's (USCP) disciplinary policies and practices, including but not limited to: any investigation or report by the Office of Inspector General (OIG) regarding USCP's disciplinary process, including but not limited to whether USCP consistently applied its disciplinary policies and practices.

- Any documents regarding recommendations the OIG made to Chief Matthew Verderosa or USCP or any USCP officials within the past five years related to USCP's disciplinary policies, practices, or processes.

- Any documents showing summaries, reports, or compilations regarding the volume and nature of disciplinary actions that the USCP took within the past five years.

Ropella Subpoena at Attach. A (Items #1–3) (footnote omitted); OIG Subpoena at Attach. A (Items #4–6).

In her subpoena to OIG, Ms. Sourgoutsis also requests that OIG designate one or more officers, directors, managing agents, or other persons to testify about:

- USCP's disciplinary policies and practices, including but not limited to: any investigation or report by the Office of Inspector General (OIG) regarding USCP's disciplinary process, including but not limited to whether USCP consistently applied its disciplinary policies and practices.

- Recommendations the OIG made to Chief Matthew Verderosa or USCP or any USCP officials within the past five years related to USCP's disciplinary policies, practices, or processes.

- The manner in which the OIG maintains summaries, reports, or compilations regarding the volume and nature of disciplinary actions that USCP took within the past five years.

OIG Subpoena at Attach. A (Items #1–3) (footnote omitted). Ms. Sourgoutsis's subpoena to Ms. Ropella also seeks testimony, but does not identify the topics to be addressed. *See* Ropella Subpoena at Attach. A. The CPB moves to quash both subpoenas. *See* Movant's Mot. to Quash, ECF No. 15.

### A. The Subpoenas for Production of Documents by OIG and Ms. Ropella[4]

#### 1. USCP's Disciplinary Policies and Practices

The Ropella and OIG Subpoenas both seek documents "regarding USCP's disciplinary policies and practices, including but not limited to: any investigation or report by the Office of Inspector General (OIG) regarding USCP's disciplinary process . . . ." Ropella Subpoena at

---

[4] As both the Ropella and OIG subpoenas seek production of records covering the same topics, the following analysis addresses those subpoenas jointly.

Attach. A (Item #1); *see also* OIG Subpoena at Attach. A (Item #4).  Although the parties'

arguments primarily focus on the discoverability of a report reflecting an OIG review of the

USCP disciplinary process (hereinafter "OIG Report"), the scope of the subpoenas is broader and

also would encompass the documents used to prepare the OIG Report and any records

documenting the USCP's disciplinary policies.

### a.     *The OIG Report*

The parties contest the discoverability of the OIG Report.  The CPB raises relevance and

privilege arguments, asserting: (1) that the OIG Report is not relevant because it does not address

individual cases or the application of policy to an individual's case; and (2) that the deliberative

process privilege shields the OIG Report from disclosure.  Movant's Mot. to Quash at 6–12, ECF

No. 15-1.  Ms. Sourgoutsis contends that the OIG Report is not privileged and that it is relevant

to her discrimination claims to the extent it contains information about how the USCP has

disciplined others and the "USCP's failures to fairly and consistently impose discipline."  Pl.'s

Opp'n at 5.

### i.     *Relevance*

The Federal Rules of Civil Procedure allow for "broad access to relevant information at

the discovery stage."  *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30,

41 (D.D.C. 2007).  Relevance is "construed broadly to encompass any matter that bears on, or

that reasonably could lead to other matter that could bear on any party's claim or defense."

*United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer

Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted).  However,

the court must limit the extent of discovery that is, *inter alia*, unreasonably cumulative or

duplicative, outside the permitted scope of Rule 26(b)(1), or obtainable from another source that is more convenient, less burdensome, or less expensive. *See* FED. R. CIV. P. 26(b)(2)(C).

The OIG Report is not relevant to Ms. Sourgoutsis's claims. Ms. Sourgoutsis appears to believe that the OIG Report will provide useful comparator information and insight into how the USCP has treated other individuals similarly situated to her. But the OIG Report contains no such analysis. The Court's *in camera* review of the OIG Report confirms that the report does not address the discipline of individual USCP employees. *See* Movant's Reply, Attach. 1, Declaration of Fay F. Ropella ¶ 6, ECF No. 18-1 ("Ropella Decl."). The OIG Report also does not attempt to define the level of discipline that would comprise an appropriate response to the alleged conduct underlying Ms. Sourgoutsis's termination. Nor does the OIG Report compare the way that the USCP has applied discipline to its male and female officers. Instead, the OIG Report simply reflects OIG's evaluation of the USCP disciplinary process and its recommendations for how to improve or modify that process. Nothing in the OIG Report has any tendency to make the existence of any "fact [that] is of consequence" to the resolution of Ms. Sourgoutsis's claims more probable or less probable than it otherwise would be. FED. R. EVID. 401. Therefore, the OIG Report is not relevant.

### ii. *Deliberative Process Privilege*

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)) (internal quotation marks omitted). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each

remark is a potential item of discovery and front page news," and is designed to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9 (internal quotation marks and citations omitted).

To qualify for the privilege, documents must be both "predecisional" and "deliberative." *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017); *see also Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations and internal quotation marks omitted); *see also Judicial Watch, Inc. v. Dep't of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017); *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003). A document is "deliberative" if it "is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014).

Under the deliberative process privilege, "factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt." *Petroleum Info. Corp.,* 976 F.2d at 1434; *see In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The D.C. Circuit employs a "functional approach" to determine whether information is factual or embodies an opinion, and considers whether "the selection or organization of facts is part of an agency's deliberative process." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 164–65 (D.D.C. 2017) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)) (internal quotation marks omitted). The privilege shields factual information if it "is so inextricably intertwined with the deliberative sections of

documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737. "This is so because the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 136 (D.D.C. 2013). Moreover, the deliberative process privilege is qualified, and even documents that reflect agency officials' deliberative opinions may be disclosed if "the private need for disclosure outweighs the public interest in non-disclosure." *In re Anthem,* 236 F. Supp. 3d at 159 (citing *In Re Sealed Case*, 121 F.3d at 737).

Before determining whether the OIG Report is deliberative and predecisional, the Court must address whether the CPB has properly invoked the deliberative process privilege. *See* Pl.'s Opp'n at 6–8 (contending that CPB failed to provide a declaration of an authorized official invoking the privilege based on actual personal consideration). To assert the privilege, a party must include: (1) a formal claim of privilege by the head of the relevant department; (2) based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege was claimed and why it properly falls within the scope of the privilege. *Landry v. FDIC,* 204 F.3d 1125, 1135 (D.C. Cir. 2000) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984) for requirements of the deliberative process privilege) (other citation omitted). The CPB's motion did not contain all of the elements necessary to assert the deliberative process privilege. But parties may cure such deficiencies by supplementing the record. *Cobell*, 213 F.R.D. at 7. The CPB has done precisely that, by including with its Reply a declaration from Fay Ropella, the current Inspector General. In that declaration, Ms. Ropella formally asserted the privilege, based on her personal review of the relevant materials, and specified why the privilege was claimed for the disputed documents. *See*

Ropella Decl.; *see also Landry,* 204 F.3d at 1135. Accordingly, the CPB has properly invoked the deliberative process privilege.

The OIG Report is clearly predecisional. It does not constitute "the final Department policy." Ropella Decl. ¶ 4. Instead, it contains recommendations from OIG that had not been implemented at the time the Report was issued. *See id.* ¶¶ 4, 6. Although the USCP intended to issue a new discipline directive after the OIG Report was released, *see id.* ¶ 5, counsel for the CPB clarified at the Motions Hearing that the OIG Report was never implemented. Instead, the USCP responded to the OIG Report by providing its own opinions that differed in some respects from OIG's recommendations. Therefore, subsequent agency action did not deprive the report of its predecisonal status. *See Judicial Watch*, 847 F.3d at 739; *Horowitz v. Peace Corps.*, 428 F.3d 271, 276 (D.C. Cir. 2005) (observing that documents can lose their predecisional status if an agency expressly adopts them as official agency policy).

The OIG Report is also deliberative. The OIG Report is "an advisory opinion and recommendation from the Office of Inspector General (OIG) to the United States Capitol Police which assists the Department with improving its operations." Ropella Decl. ¶ 6. It reflects OIG's evaluation of the USCP disciplinary process and suggestions on how that process could be improved. As the report consists of OIG's "recommendations or opinions on legal or policy matters," it is "clearly deliberative in nature." *Hardy*, 243 F. Supp. 3d at 169 (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975)) (internal quotation marks omitted). Accordingly, the OIG Report is both deliberative and predecisional, and thus falls within the deliberative process privilege.

Although the deliberative process privilege is not absolute, Ms. Sourgoutsis has not articulated a need that would outweigh the public interest in protecting the internal deliberations

reflected in the OIG Report.  *See In re Anthem,* 236 F. Supp. 3d at 159 (noting that information

may be disclosed if the private need outweighs the public interest).  When making that

assessment, courts

> balance the competing interests on a flexible, case by case, ad hoc basis,
> considering such factors as the relevance of the evidence, the availability of
> alternate evidence, the seriousness of the litigation or investigation, the harm that
> could flow from disclosure, the possibility of future timidity by government
> employees [should the materials be disclosed], and whether there is reason to
> believe that the documents would shed light on government misconduct.

*Comm. on Oversight and Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 112–13 (D.D.C. 2016);

*see also In re Anthem*, 236 F. Supp. 3d at 159.  The party seeking the document bears the burden

of demonstrating that "the balance of interest tips in his or her favor."  *In re Anthem*, 236 F.

Supp. 3d at 159.

Ms. Sourgoutsis has not articulated a strong need to receive the OIG Report.  As

discussed above, the OIG Report is not relevant to Ms. Sourgoutsis's claims.  The report reflects

OIG's recommendations regarding how the discipline process optimally *should* work; however

what is relevant to Ms. Sourgoutsis is how the process worked at the time of her alleged

misconduct and how disciplinary policies have been applied to similarly situated USCP officers.

Further, to the extent that Ms. Sourgoutsis desires information about the USCP disciplinary

process, she can obtain it through discovery directed at the USCP and its officials.  Indeed, Ms.

Sourgoutsis already has explored this topic in written discovery and in depositions of USCP

officials.

Maintaining the confidentiality of the OIG Report would advance the public interest.  The

"OIG has a serious interest in maintaining the confidentiality of its procedures and methods so as

to insure [sic] the integrity of the OIG processes."  Ropella Decl. ¶ 17.  The OIG Report

references employees' candid critiques of the USCP disciplinary policies and practices, and it is

unlikely that USCP employees would have been willing to speak so openly absent an expectation of confidentiality. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency."). Thus disclosing the OIG Report likely would lead to "future timidity by government employees." *In re Sealed Case,* 121 F.3d at 738 (quoting *In re Subpoena Served upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992)). In sum, the OIG Report is protected by the deliberative process privilege, and Ms. Sourgoutsis's desire to review it does not overcome the privilege. Accordingly, the Court quashes the OIG and Ropella Subpoenas insofar as they seek the OIG Report.

        **b.**      <u>***Documents Used to Prepare the OIG Report***</u>

Ms. Sourgoutsis's subpoena also encompasses the documents prepared as part of OIG's evaluation of the USCP disciplinary process. The CPB has identified 31 documents that were used to prepare the OIG Report, and contends that those documents are protected by the deliberative process privilege. *See* Privilege Log; Movant's Mot. to Quash at 8–13, ECF No. 15-1. The CPB also raises a broad challenge to the relevance of the requested documents.

        **i.**      ***Deliberative Process Privilege***

The Court begins its analysis with the deliberative process privilege — the principal objection raised by the CPB to the production of these records. The 31 documents at issue consist of notes, drafts, working papers, and an email regarding the OIG Report. *See* Privilege Log; Ropella Decl. ¶¶ 8–15. The deliberative process privilege applies to each of those documents.

**<u>Interview Notes</u>**

Nineteen of the responsive documents[5] — Privilege Log Entries 6–24 — are "notes of interviews with Department officials, attorney, and bargaining unit representatives in preparation for the report." Ropella Decl. ¶ 9; *see* Movant's Mot. to Quash at 12, ECF No. 15-1. Although the deliberative process privilege typically does not extend to factual material, it protects interview notes that summarize facts "culled . . . from the much larger universe of facts presented to [the agency]" because such notes "reflect an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations." *Ancient Coin Collectors Guild*, 641 F.3d at 513 (citations and quotation marks omitted); *see also Hardy*, 243 F. Supp. 3d at 169– 70 (noting application of the deliberative process privilege to interview notes and summaries in the Freedom of Information Act's Exemption 5 context) (citing cases). The Court's *in camera* review confirmed that the interview notes at issue here are both predecisional and deliberative. They are predecisional because they predate the preparation of the OIG Report, and thus necessarily predate the adoption of any final agency policy. The interview notes are deliberative, although they contain factual information relayed by the interviewees, because they reflect OIG's assessment of which aspects of the interviewed employees' testimony would be most pertinent to OIG's evaluation of the USCP disciplinary practices, thereby implicating an "exercise of judgment." *See Mapother*, 3 F.3d at 1539; *see also Hardy*, 243 F. Supp. 3d at 170.

The CPB contends that the interview notes must remain confidential so as to ensure that employees will be honest and candid during their interviews. *See* Ropella Decl. ¶ 16 ("When

---

[5]   Although the Ropella Declaration cites Privilege Log Entry 26 when it discusses interview notes, the Privilege Log describes Entry 26 as a draft report. *See* Ropella Decl. ¶ 9; Privilege Log. To resolve that ambiguity, the Court reviewed the document *in camera*. That review revealed that this document summarizes the results of OIG's evaluation of the USCP disciplinary process, and thus is more aptly described as a draft.

interviewing Department employees for the evaluation, the OIG relies on honestly [sic] and candidness from the employees.  As such, release of interviews with employees will be harmful to the candid discussions and runs the risk of future timidity of employees coming forward or being frank in their discussions with the independent OIG.").  Although a significant public interest exists in ensuring that employees speak frankly with OIG, Ms. Sourgoutsis's need for documents pertinent to her discrimination claims may overcome that interest if her need outweighs the public interest in nondisclosure.  As noted, when weighing those interests, courts consider several factors including relevance, the role of the government, and the availability of alternate evidence.  *See Comm. on Oversight and Gov't Reform*, 156 F. Supp. 3d at 112–13.

Ms. Sourgoutsis has not identified a need that outweighs the public interest in protecting the confidentiality of the interview notes.  The interview notes neither discuss Ms. Sourgoutsis's case nor address any alleged gender discrepancy in the application of USCP disciplinary policies.  As the notes are not relevant to Ms. Sourgoutsis's discrimination claims, their disclosure would not benefit her.  Ms. Sourgoutsis can obtain alternate evidence from a first-hand source — the USCP employees who are familiar with the disciplinary policies and practices.  Therefore Ms. Sourgoutsis cannot overcome the public interest in protecting OIG's evaluative process.  *See* Ropella Decl. ¶ 16 (noting that "OIG relies on honestly [sic] and candidness from the employees.").

**Drafts**

Eight of the responsive documents are drafts — five drafts of the OIG Report and three drafts of disciplinary policies.  Privilege Log, Doc. Nos. 1, 2, 24, 25, 26, 28–30; *see also* Ropella Decl. ¶¶ 10–11; *supra* n.5.  The drafts are predecisional because they predate the preparation of the OIG Report, which itself precedes the development of revised disciplinary policies.  *See*

Ropella Decl. ¶¶ 7, 8, 10–11. Four drafts of the OIG Report (Privilege Log Entries 25, 28, 29, and 30) "include editing, indexing and referencing, and draft requests for extension," *id.* ¶ 11, and are deliberative because their disclosure "would divulge information regarding 'decisions to insert or delete material or to change [the] draft's focus or emphasis.'" *Hardy*, 243 F. Supp. 3d at 174 (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987)). The draft contained in Privilege Log Entry 26 provides a detailed overview of OIG's investigation and includes proposed changes to the disciplinary process; as such, it reflects OIG's impressions and tentative recommendations regarding agency policy and is deliberative. Drafts of the disciplinary policies (Privilege Log Entries 1, 2, and 24) also are deliberative; their status as drafts indicates that they were "intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463.

Ms. Sourgoutsis's desire to obtain the drafts does not outweigh the public interest in protecting them from disclosure. The drafts are a quintessential example of deliberative material. There is a significant public interest in allowing agency employees to develop policy recommendations without being inhibited by the risk that their preliminary thoughts will be publicly disclosed. *See In re Anthem*, 236 F. Supp. 3d at 165 (noting that disclosing deliberative materials "greatly risks thwarting employees' ability to freely communicate and exchange ideas"). The draft disciplinary policies are not relevant to Ms. Sourgoutsis's claims because they shed no light on how the existing policies were applied to Ms. Sourgoutsis's alleged conduct. The drafts of the OIG Report also are not relevant because OIG's evaluation of the disciplinary process neither advances nor undermines Ms. Sourgoutsis's sex discrimination or retaliation claims. As the drafts are not relevant, Ms. Sourgoutsis has no compelling need to obtain them, and the balance therefore favors nondisclosure. *See Comm. on Oversight and Gov't Reform*, 156

F. Supp. 3d at 112 (noting relevance of the evidence as a factor in balancing competing interests in disclosure).

**<u>Working Documents</u>**

The CPB also asserts the deliberative process privilege for two documents consisting of "OIG's working document regarding the flow chart of the USCP discipline process" — Privilege Log Entries 5 and 32. Ropella Decl. ¶ 13. The Privilege Log describes these documents as a "Disciplinary Process Outline" and "IG notes on USCP process and flow chart." *See* Privilege Log, Doc Nos. 5, 32. Both documents are predecisional because they were used to prepare the OIG Report, which itself is a predecisional document. *See* Ropella Decl. ¶ 8. These documents summarize facts gathered in the report and "reflect an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations" that ultimately were included in the OIG Report. *Ancient Coin Collectors Guild*, 641 F.3d at 513 (citations and quotation marks omitted). Accordingly they are deliberative for substantially the same reason as the drafts and interview notes. As neither document contains information that would advance or undermine Ms. Sourgoutsis's discrimination or retaliation claims, she has no compelling need that would outweigh the public interest in protecting the secrecy of OIG's deliberative process.

The CPB also asserts the deliberative process privilege for a 19-page email communication with OIG, and avers that the email is a "Department Response to Draft Report OIG-2017-01." Privilege Log, Doc. No. 3; Ropella Decl. ¶ 15. The email predates the finalization of the OIG Report, and therefore is predecisional. The document is also deliberative. It contains the USCP's response to OIG's evaluation and information that the USCP proposed be included in the OIG Report, and thus reflects the "give-and-take of the consultative process." *Petroleum Info. Corp.*, 976 F.2d at 1434; *In re Anthem*, 236 F. Supp. 3d at 164 (withholding

emails where they were "at their core, the back-and-forth deliberative process required for an agency to reach a decision.").

For the foregoing reasons, the Court quashes the Ropella and OIG subpoenas insofar as they seek the documents underlying the OIG Report.

### ii.    *Relevance*

The CPB appears to challenge the relevance of the documents underlying the OIG Report, but has not fully developed the relevance argument as to those documents. *See* Movant's Mot. to Quash at 6–8, ECF No. 15-1. As discussed above, the deliberative process privilege shields these documents from discovery. Therefore the Court will not reach the CPB's relevance arguments.

### c.    *Additional Records Regarding USCP Disciplinary Policies and Practices*

In addition to seeking the OIG Report and its underlying documents, the subpoenas also request all other records in the possession of OIG or Ms. Ropella regarding USCP disciplinary policies and practices. *See* Ropella Subpoena at Attach. A (Item #1); OIG Subpoena at Attach. A (Item #4). The CPB contends that Ms. Sourgoutsis has obtained any pertinent documents, except for the OIG Report and its underlying documents, through the USCP's discovery responses. *See* Movant's Mot. to Quash at 6–7, ECF No. 15-1; Movant's Reply at 2, ECF No. 18. Therefore the CPB contends that requiring OIG or Ms. Ropella to provide this information would be unduly burdensome and beyond the scope of permissible discovery.

As noted, Rule 26's limitations on the scope of discovery also apply to subpoenas issued pursuant to Rule 45. *See, e.g.*, *Coleman v. District of Columbia*, 275 F.R.D. 33, 36–37 (D.D.C. 2011) ("[I]t is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure"). Rule 26 directs courts to limit discovery that "is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." FED. R. CIV. P. 26(b)(2)(C)(i), (ii). Ms. Sourgoutsis has acknowledged, in her opposition and at the Motions Hearing, that the USCP's discovery responses included the disciplinary rules, policies, and guidelines that are germane to this matter. *See* Pl.'s Opp'n at 5. Given that Ms. Sourgoutsis already has received that information directly from the USCP, neither OIG nor Ms. Ropella should be required to produce the same materials. *See* FED. R. CIV. P. 26(b)(2)(C)(i), (ii). Therefore the Court quashes the OIG and Ropella Subpoenas insofar as they seek documents reflecting the USCP's disciplinary policies and practices.

### 2. Recommendations Made to Chief Verderosa and USCP Officials

The subpoenas also seek production of documents regarding "recommendations the OIG made to Chief Matthew Verderosa or USCP or any USCP officials within the past five years related to USCP's disciplinary policies, practices, or processes." OIG Subpoena at Attach. A (Item #5); Ropella Subpoena at Attach. A (Item #2) (footnote omitted). OIG has explained, in Ms. Ropella's supplemental declaration, that "[t]he OIG Report (OIG-2017-01) constitutes the only recommendation[] related to disciplinary policies, practices and processes the OIG has made to Chief Verderosa" and that "[t]he OIG did not make any other recommendations in any related documents." Movant's Response to Court Order, Supplemental Decl. of Fay F. Ropella ¶ 5, ECF No. 25-1 ("Ropella Supplemental Decl."). Accordingly, the OIG Report is the only document responsive to this portion of the OIG and Ropella Subpoenas. Given that the OIG Report is protected by the deliberative process privilege for the reasons discussed above, the

Court quashes the OIG and Ropella Subpoenas insofar as they seek recommendations made to Chief Verderosa and USCP officials.

### 3. Summaries, Reports, or Compilations Regarding the Volume and Nature of Disciplinary Actions

Finally, the subpoenas seek production of documents "showing summaries, reports, or compilations regarding the volume and nature of disciplinary actions that the USCP took within the past five years." Ropella Subpoena at Attach. A (Item #3); OIG Subpoena at Attach. A (Item #6). Requiring OIG or Ms. Ropella to produce these documents to Ms. Sourgoutsis would be contrary to Rule 26's proscription against discovery that is cumulative, duplicative, or available from another source. Plaintiff's counsel clarified at the Motions Hearing that Ms. Sourgoutsis primarily seeks the OIG Report and underlying documents, and has no interest in receiving records that the USCP already has produced. Ms. Sourgoutsis also has acknowledged that the USCP already has produced extensive written discovery regarding its disciplinary policies and practices. Any information that OIG could obtain regarding the volume and nature of disciplinary actions would originate from the USCP and would duplicate the material the USCP already has produced. Thus requiring OIG to produce this information would be duplicative of discovery already conducted, and would not benefit Ms. Sourgoutsis at all. The burden that OIG would incur by producing such records, while arguably minimal, outweighs the nonexistent benefit. Therefore the Court quashes the OIG and Ropella Subpoenas insofar as they seek records showing summaries, reports, or complications regarding the volume and nature of disciplinary actions taken by the USCP within the last five years. *See* Ropella Subpoena at Attach. A (Item #3); OIG Subpoena at Attach. A (Item #6).

B.  **Testimony**

1.  **Deposition of OIG**

Ms. Sourgoutsis also seeks testimony from OIG regarding: the USCP's disciplinary

policies and practices; recommendations from OIG to USCP officials regarding disciplinary

policies or practices; and the manner in which OIG maintains summaries, reports, or

compilations regarding USCP disciplinary actions in the last five years.  *See* OIG Subpoena at

Attach. A (Items #1–3).  Ms. Sourgoutsis argues that the first two categories of testimony will

help her identify comparators and gather "information about USCP's failures to fairly and

consistently impose discipline."  Pl.'s Opp'n at 5.  Ms. Sourgoutsis seeks the third category of

information to assess the burdensomeness of her proposed discovery.

Ms. Sourgoutsis's request for testimony regarding USCP disciplinary policies and

practices duplicates subjects addressed in the depositions of several USCP witnesses.  At the

Motions Hearing, the CPB contended, and Ms. Sourgoutsis did not refute, that Ms. Sourgoutsis

had deposed several USCP officials[6] who testified about the USCP disciplinary policies and

practices at a macro-level as well as the application of those policies to Ms. Sourgoutsis's

individual case.  OIG is not responsible for developing or implementing those policies and

practices, and thus would have no first-hand knowledge regarding them.  *See generally* Movant's

Reply at 7 ("Any information gathered from the OIG was obtained from Department

employees.").  In addition, no "OIG official participated in or ha[s] any personal knowledge

regarding the decision to discipline or terminate Plaintiff, Chrisavgi Sourgoutsis."  Ropella

Supplemental Decl. ¶ 6.  Thus although the disciplinary policies and practices would be

---

[6]  At the Motions Hearing, the CPB indicated that Ms. Sourgoutsis had deposed: Chief Matthew
R. Verderosa, Sergeant Mark Shutters, Deputy Chief Chad Thomas, Inspector Eric Waldow,
Captain Andrew Bolinger, and multiple other Sergeants.  *See also* Movant's Reply at 7.

appropriate topics to explore with the USCP, it would be unduly burdensome and duplicative of prior depositions to require OIG, a non-party, to produce witnesses to testify about the subject, based entirely on second-hand information from USCP witnesses.

Ms. Sourgoutsis's request for testimony regarding OIG's recommendations to the USCP seeks information that is protected by the deliberative process privilege. The CPB has established by unrebutted sworn testimony that the OIG Report comprises the "only recommendations related to disciplinary policies, practices and processes the OIG" made to the USCP and that "[t]he OIG did not make any other recommendations in any related documents." Ropella Supplemental Decl. ¶ 5. Thus any testimony from OIG witnesses regarding this deposition topic would necessarily be based upon the information gathered and conclusions reached during the development of the OIG Report. As discussed above, the deliberative process privilege protects the OIG Report and its underlying documents. Consequently, testimony about those documents "may violate the privilege" and would be protected from disclosure. *Broderick v. Shad*, 117 F.R.D. 306, 313 (D.D.C. 1987); *see Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 14 (D.D.C. 1993) (finding deliberative process privilege protected information sought by deposition subpoena); *cf. Watts*, 482 F.3d at 508–09 (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)) ("Rule 45's privilege and undue burden standard thus applies to both document and testimonial subpoenas").

Ms. Sourgoutsis's request for testimony regarding how "OIG maintains summaries, reports, or compilations regarding the volume and nature of disciplinary actions that USCP took within the past five years" seeks information that is no longer relevant. At the Motions Hearing, Plaintiff's counsel clarified that Ms. Sourgoutsis sought such information in order to determine how burdensome it would be for OIG to produce the information requested. The Privilege Log

identifies the reports, notes, and other records that OIG possesses regarding its recent evaluation of the USCP's disciplinary actions. Learning how OIG maintains those records would neither facilitate Ms. Sourgoutsis's ability to obtain those records through discovery nor advance Ms. Sourgoutsis's claims. By Plaintiff's counsel's own admission, the progression of discovery has rendered this information virtually useless. Therefore the Court quashes the subpoena insofar as it seeks testimony regarding this topic. *See generally Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (quashing subpoena where documents were "of no conceivable relevance" to the "context of the action now pending").

## 2. Deposition of Fay Ropella

The Ropella Subpoena also seeks deposition testimony but, unlike the OIG Subpoena, does not identify specific topics. Ms. Sourgtousis appears to wish to explore facts pertinent to her discrimination and retaliation claims, the preparation and the content of the OIG Report, OIG's reaction to USCP employees' criticism of USCP disciplinary practices, "information about how USCP disciplines employees, the policies USCP follows to discipline employees, and how USCP disciplines other employees." Pl.'s Opp'n at 11. The CPB contends that the subpoena should be quashed because: the OIG Report is subject to the deliberative process privilege; requiring Ms. Ropella to testify regarding any of the remaining topics would impose an undue burden on a high-ranking government official; and the requested information is duplicative of testimony from USCP witnesses and could be obtained directly from those witnesses. *See* Movant's Mot. to Quash at 1, 14–15, ECF No. 15-1; Movant's Reply at 6–8.

The deliberative process privilege provides a basis to quash the subpoena insofar as it seeks testimony regarding the OIG Report and its contents or the conclusions OIG reached in its evaluation of the USCP's disciplinary policies and practices. The Court has determined that the

report and the conclusions drawn therein are privileged. Those protections extend to deposition testimony as well as the privileged documents. *See Broderick*, 117 F.R.D. at 313; *Walker* 810 F. Supp. at 14 (finding deliberative process privilege protected information sought by deposition subpoena).

With respect to any other subjects Ms. Sourgoutsis may wish to explore in the Ropella deposition, the CPB asks the Court to quash the subpoena because Ms. Ropella is a high ranking government official who lacks personal knowledge of the relevant matters and the information is available from an alternate source. *See* Movant's Mot. to Quash at 14–15, ECF No. 15-1. "[H]igh ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI* (*Alexander I*), 186 F.R.D. 1, 4 (D.D.C. 1998) (citing cases) (emphasis in original); *see also Payne v. District of Columbia*, 859 F. Supp. 2d 125, 136 (D.D.C. 2012). This rule allows "high-level public servants to spend their valuable time performing their duties rather than preparing for and testifying in depositions, unless the individual has some relevant personal knowledge about the subject matter." *Kline v. Berry*, No. 10-1802 (RWR), 2012 WL 2376982, at *5 (D.D.C. June 25, 2012).

Ms. Sourgoutsis effectively concedes that Ms. Ropella, in her role as USCP Inspector General, qualifies as a high-ranking government official. Thus, although it is unclear whether Ms. Ropella's position has sufficient prominence to qualify for this exception to courts' general permissiveness regarding depositions, the Court will assume for purposes of resolving this motion that Ms. Ropella is a high-ranking government official.[7]

---

[7] Most cases applying this rule involve agency heads. *See Alexander I*, 186 F.R.D. at 4 (noting that most cases protect agency heads); *Byrd v. District of Columbia*, 259 F.R.D. 1, 6–7 (D.D.C.

As a high-ranking official, Ms. Ropella should not be deposed in this matter. Ms. Ropella has no personal knowledge regarding Ms. Sourgoutsis's disciplinary action or termination, and is unaware of any gender disparity or bias in the application of the USCP's disciplinary policies. *See* Ropella Supplemental Decl. ¶¶ 4, 6. Even if Ms. Ropella's review of the OIG Report and related documents imparted knowledge about USCP disciplinary policies and how the USCP disciplines other employees, that knowledge is second-hand; the USCP employees who provided that information to OIG are better equipped to answer any questions that Ms. Sourgoutsis may have. Thus Ms. Sourgoutsis has not made a sufficient showing that she is unable to obtain the information elsewhere. Accordingly, the Court quashes the deposition subpoena to Fay Ropella.

Even if Ms. Ropella were not a high-ranking official, the Court would quash the deposition subpoena because the proposed testimony subjects Ms. Ropella to an undue burden. In determining whether an undue burden exists that would warrant quashing a Rule 45 subpoena, "courts generally employ a balancing test, weighing the burdensomeness to the moving party against the deponent's need for, and the relevance of, the information being sought." *Flanagan*, 231 F.R.D. at 102; *see also Coleman*, 275 F.R.D. at 36–37. Similarly, Rule 26

> requires district courts in "[a]ll discovery" to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the

---

2009) (noting that the "Mayor of the District of Columbia, United States Senators, the General Counsel to United States House of Representatives, the Attorney General of the United States and certain high administrative heads are high-ranking officials for this purpose."); *Kline,* 2012 WL 2376982 at *4 (noting additional examples of "high-ranking" officials from other cases, including the Deputy Chief of Staff of the Environmental Protection Agency and close assistants to the United States President).

issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

*Watts*, 482 F.3d at 509 (quoting FED. R. CIV. P. 26(b)(1)–(2)).

To the extent that the Ropella Subpoena seeks testimony regarding the USCP's disciplinary practices and policies and their application to other employees, it imposes an undue burden upon Ms. Ropella. Like the related requests for production, the deposition subpoena seeks to retread topics that have been explored at depth with USCP witnesses. Ms. Sourgtousis already has had an opportunity to obtain that information from a first-hand source, by deposing a number of USCP officials familiar with the disciplinary process in general and Ms. Sourgoutsis's individual case. *See supra* n.6. Ms. Ropella and other OIG employees lack "first-hand knowledge of the enactment of the USCP's disciplinary policies." Movant's Reply at 7. Accordingly, there is no reason to believe that Ms. Ropella or any other OIG witness[8] would have personal knowledge of the relevant topics, or that the proposed testimony would add anything of benefit to the record Ms. Sourgoutsis already has developed. Therefore this proposed line of inquiry would subject Ms. Ropella or any other OIG witness to unreasonably cumulative and duplicative discovery.

## II.     MOTION FOR PROTECTIVE ORDER

The CPB also moves in the alternative for a protective order. Specifically, the CPB asks that the Court order that any documents that must be produced to Ms. Sourgoutsis be subject to a protective order requiring that the documents remain under seal and not be disclosed to any third

---

[8] The CPB has indicated that if the Court deems it appropriate to have a witness testify regarding the OIG Report, Michael Bolton would be better suited to do so than Ms. Ropella. *See* Movant's Mot. to Quash at 15, ECF No. 15-1. Ms. Sourgoutsis responded that if Mr. Bolton is more knowledgeable, she would be willing to reissue Ms. Ropella's subpoena to Mr. Bolton. *See* Pl.'s Opp'n at 11.

parties.  *See* Movant's Mot. to Quash — Proposed Order, ECF No. 15.  The Court has not

ordered the production of any documents and has quashed both subpoenas.  Therefore there is no

need for a protective order, and the Court DENIES without prejudice the CPB's request for a

protective order.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby GRANTS Movant's Motion to Quash [ECF

No. 15] and DENIES without prejudice Movant's Motion for a Protective Order [ECF No. 15].

A separate Order will accompany this Memorandum Opinion.


DATED: <u>November 21, 2017</u>                            _____
                                                                                    ROBIN M. MERIWEATHER
                                                                                    UNITED STATES MAGISTRATE JUDGE