**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISAVGI SOURGOUTSIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-CV-1096 (KBJ/RMM) |
| | ) |
| UNITED STATES CAPITOL POLICE, | ) |
| | ) |
| Defendant. | ) |

**JOINT PRETRIAL STATEMENT**

In accordance with Local Rule 16.5 of the rules of the United States District Court for the District of Columbia and the Court's July 17, 2019 Scheduling Order, Plaintiff Chrisavgi Sourgoutsis and Defendant United States Capitol Police hereby submit a joint pretrial statement.

# TABLE OF CONTENTS

I.     Neutral one-paragraph statement of the case ............................................................3

    A.   Plaintiff's Neutral One-Paragraph ...........................................................................3

    B.   Defendant's Neutral One-Paragraph ........................................................................3

II.   defendant's Proposed voir dire questions ...............................................................4

    A.   Introduction and *Voir Dire* (D.C. Std. Civ. Jury Instr. No. 1-1) ........................4

    B.   Standard Voir Dire Questions for Judge Ketanji Brown Jackson ........................5

    C.   Specific Voir Dire Questions ...................................................................................8

III.  Plaintiff's proposed voir dire ..................................................................................11

    A.   Introduction............................................................................................................12

    B.   General Background Questions...............................................................................12

    C.   Previous Legal Experience ....................................................................................15

    D.   Relationship with the Parties .................................................................................19

    E.   Discrimination Knowledge.....................................................................................19

    F.   Damages.................................................................................................................31

    G.   Specific Bias and Prejudice Questions ..................................................................32

IV.   Plaintiff's proposed jury instructions .....................................................................45

V.    Defendant's Proposed Jury Instructions .................................................................81

    A.   Jury Instructions At the Start Of Trial ("Pre-trial") .............................................81

    B.   Jury Instructions After Close Of Evidence ("Post Trial") ...................................88

VI.   Witnesses ................................................................................................................124

    A.   Plaintiff's Witnesses.............................................................................................124

    B.   Defendant's Witnesses..........................................................................................129

VII.  Exhibits ..................................................................................................................135

    A.   Plaintiff's Exhibits................................................................................................135

    B.   Defendant's Exhibits .............................................................................................168

VIII. stipulations ...........................................................................................................180

    A.   Undisputed Stipulations ........................................................................................180

    B.   Plaintiff's Proposed Stipulations (and Defendant's objections) .........................181

IX.   Deposition Designations .........................................................................................190

X.    proposed verdict form............................................................................................194

    A.   Plaintiff's Proposed Verdict Form........................................................................194

B.   Defendant's Proposed Verdict Form...........................................................................197

## I.   NEUTRAL ONE-PARAGRAPH STATEMENT OF THE CASE

### A.  <u>Plaintiff's Neutral One-Paragraph</u>

Chrisavgi Sourgoutsis is a former employee of the U.S. Capitol Police ("USCP").  Ms. Sourgoutsis alleges that USCP wrongfully terminated her because of her gender (Count I) and for retaliation in participating in a sexual harassment investigation (Count II).

### B.  <u>Defendant's Neutral One-Paragraph</u>

Plaintiff Chrisavgi Sourgoutsis began working for Defendant United States Capitol Police (the "Capitol Police") on May 12, 2014.  Ms. Sourgoutsis's employment with the Capitol Police was terminated while she was a probationary employee.  Ms. Sourgoutsis alleges that the Capitol Police terminated her because she is a woman.  Ms. Sourgoutsis also alleges that the Capitol Police terminated her because she was interviewed as a witness in an investigation against a Capitol Police official, who allegedly violated the Capitol Police's Anti-Discrimination and Anti-Harassment policy.  Ms. Sourgoutsis alleges the termination violates the Congressional Accountability Act (the "CAA"), a statute that prohibits legislative branch employers like the Capitol Police from discriminating based on sex or retaliating against an employee for engaging in certain protected activity.  The Capitol Police contends that the decision to terminate Ms. Sourgoutsis's employment was not made for discriminatory or retaliatory reasons.  The Capitol Police alleges that Ms. Sourgoutsis was terminated because of her pattern of violating Capitol Police rules.  The Capitol Police deny that they violated the CAA by terminating Ms. Sourgoutsis.

II.     **DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS**

A. **Introduction and *Voir Dire* (D.C. Std. Civ. Jury Instr. No. 1-1)**

Good [morning] [afternoon], ladies and gentlemen, and welcome. I am Judge Ketanji Brown-Jackson. You have been called to this courtroom for possible selection in a civil case.

Would you all please stand so that the courtroom clerk can swear you in, and then we will begin the jury selection process. [Give oath.]

The purpose of jury selection is to pick a jury whose members will be fair and impartial, who will keep an open mind, and who will decide the case on the facts and the law. From the people here in the courtroom, we are going to pick [insert number] jurors. I expect this process to take about [insert estimate of time].

You all should now have an [index card] [topic/question sheet] and a pen or pencil. Please look at your juror badge and write the last three digits from your badge in the upper right-hand corner of your [index card] [topic sheet]. I am now going to ask you a series of [give number] questions. They are all yes or no questions. There is no right or wrong answer to any of these questions. You must answer the questions candidly consistent with your promise to tell the truth. If your answer is yes, please [write] [circle] the number of the question on your [index card] [topic/question sheet]. If your answer is no, do not [circle the number] [write down the number of the question]. You do not have to explain your yes or no answer in writing.

After I have asked the questions, I will ask each of you one by one to come to the bench. I will take your [index card] [topic/question sheet] and you may be asked follow-up questions.

Because the answers to some questions may be personal, I will turn on a device when you come up to the bench that makes a noise that prevents people in the courtroom from hearing what is said at the bench.

**B.  Standard Voir Dire Questions for Judge Ketanji Brown Jackson**

1.      From what I have told you so far, does anyone believe that they have heard anything about this case?

2.      The Plaintiff in this case is Chrisavgi Sourgoutsis.  Do you know or have you heard of the Plaintiff?

3.      The Plaintiff in this case is represented by the Employment Law Group, specifically R. Scott Oswald, Tom Harrington, Anita Chambers, and Annie Wilson.  Do you know any of these individuals, either personally or professionally, or have any affiliation with the Employment Law Group.  If so, please stand.

4.      The Defendant in this case is represented by the Capitol Police Office of the General Counsel, specifically, Kelly Scindian, Rafique Anderson, April Rancier, and Aaron Wilensky.  Do you know any of these individuals, either personally or professionally, or have any affiliation with the Capitol Police Office of the General Counsel.  If so, please stand.

5.      You may hear testimony from or about a number of people during the course of this trial.  The following persons may testify in this matter.

- Vasiliki Sourgoutsis
- Dimitrios Sourgoutsis
- James Konczos
- Gus Papathanasiou
- Tyrone Vias
- Mark Shutters
- Thomas DiBiase
- Matthew Verderosa
- Glenn Brogan
- Eric Waldow
- Andrew Bolinger
- Jacqueline Whitaker
- Maria Willis
- Sara Smither
- Dr. Phillip Bussey
- Dr. Richard Edelman

- Jodi Breiterman
- Nancy Thompson
- James Gupton
- Chad Thomas
- Danny McElroy
- Joseph Moroziewicki
- Kim Dine
- Zachary Madera
- Solomon Smith
- Clarence Laster
- John Hersch
- Daniel Turner
- Julie Eldridge
- Helen McGroarty
- Dr. Laura Malowane

If you know any of these individuals, personally or professionally, please stand.

6.      Do you know or do you recognize any other member of the prospective jury

panel?

7.      Do you know anyone else who is in the courtroom today, such as any of the

courtroom clerks; the translator; the courtroom reporter; or me, the Judge?

8.      The lawyers predict that the presentation of evidence in this trial should last

approximately six days, and I think this is a fair estimate, but it could run shorter or longer.  The

jury will sit Monday through Friday from 9:30 a.m. to 4:30 p.m. for as long as it takes to hear the

evidence in this case.  The length of jury deliberations following the presentation of evidence at

trial will be determined by the jury itself.  Do you have an urgent or extremely important matter

to attend to, such that you could be faced with a hardship if selected for the jury in this case?

9.      Do you have any vision or hearing problems, or any other physical or medical

problems, that might interfere with your ability to hear or understand what the witnesses say in

this case or to give your full attention to the case?

10.     Do you have any other health problems which would interfere with your ability to sit as a juror in this case?

11.     Do you have any difficulty in reading, speaking, or understanding English?

12.     Have you, any members of your family, or any close friends ever studied law, had any legal training, or been employed by a lawyer or a law firm, worked in a courthouse, been a paralegal, served as a legal secretary, or performed legal investigative work?

13.     Do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

14.     Do you have any personal, cultural, or religious bias that would prevent you from treating the testimony of all individuals equally and fairly?

15.     If you have previously been a juror in a civil or criminal trial, was there anything about your experience that might affect your ability to serve fairly and impartially in this case?

16.     If you, any members of your family, or any close friends have been a plaintiff, defendant, or witness in a civil or criminal case, would that prevent you from fairly and impartially deciding the case based upon the evidence presented and the law as instructed by this Court?

17.     Have you, any members of your family, or any close friends been involved in a lawsuit or administrative action regarding your employment or separation from employment?

18.     Do you have any views that would prevent you from awarding monetary damages, subject to the law as instructed by this Court?

19.     Each juror must hear the evidence in this case and apply the law, as instructed by this Court, without being influenced in your decision by sympathy, passion, or prejudice for or

against the plaintiff or defendant, or by any preconceived notions about the law.  Will you have difficulty complying with this requirement?

20.     Is there anything else about the nature of this case or about the parties involved that would make it difficult for you to remain objective or to render a verdict based solely upon the evidence presented?

21.     Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?

### C.  Specific Voir Dire Questions

1.     The jury must reach a unanimous verdict; however, each juror must form their own opinion about which way to rule in the case.  Would you have difficulty expressing your opinion to your fellow jurors, even if it was in conflict with the majority of other juror opinions?

2.     Are you now or have you ever been an insurance claims adjuster or claims manager?

3.     Have you ever held a position in which you were required to investigate claims of discrimination or harassment?

4.     Do you or anyone in your immediate family work for a government agency tasked with enforcing workplace or worker protection laws?

5.     Have you ever been involved in a lawsuit against a police department or other law enforcement agency?

6.      Have you ever been involved in a lawsuit against the federal government?

7.      Have you ever filed a complaint of discrimination, harassment, or retaliation against your employer in any state or federal court, or before an administrative body such as the Equal Employment Opportunity Commission?

8

8.      Have you ever felt like you were being discriminated against at work because of your gender, age, sexual orientation, race, national origin, color, genetic information, or veteran's status?

9.      Have you ever had a complaint of discrimination, harassment, or retaliation levied against you by another employee or a subordinate?

10.     Have you ever supervised fellow employees at your workplace?

11.     Have you ever been a manager or executive at your place of employment?

12.     Has the organization you work for ever been subject to a complaint of discrimination on the basis of sex or retaliation?

13.     Have you ever been accused of treating a subordinate at work unfairly?

14.     Have you ever been disciplined or terminated from your employment based on accusations of sexual harassment?

15.     Have you ever been disciplined or terminated from your employment because you were alleged to have discriminated against another employee?

16.     Have you ever been disciplined or terminated from your employment because of tardiness?

17.     Have you ever been disciplined or terminated from your employment because you were alleged to have not been wearing proper work attire?

18.     Have you ever been disciplined or terminated from your employment because you were alleged to have not paid full time and attention on the job?

19.     Have you ever been disciplined or terminated from your employment because you were alleged to have been chewing gum on the job?

20.     Are or have you, any close friends, or any of your immediate family members ever been a police officer?

21.     Are or have you, any close friends, or any of your immediate family members ever been a member of the armed forces?

22.     Are you or any close friends, or family members now or ever been part of a labor union?

23.     Would you have any reason to not believe someone's testimony because they are a police officer?

24.     Do you have such strong feelings for or against the police that it could impact your decision making in this case?

25.     Have you ever been pulled over, stopped, arrested or otherwise detained by a police department for something you feel was not justified?

26.     Do you now, or have you ever worked in, a position in which you have frequent access to police officers?

27.     Do you hold a degree in, or have you taken classes in higher education in, law, law enforcement, or criminal justice?

28.     Are you currently employed or have any immediate family members employed by the federal government?

29.     Have you ever heard of the United States Capitol Police before today?

30.     Do you have any strong feelings one way or another about the United States Capitol Police?

31.     Are you familiar with or have you heard of Chiefs Kim Dine, Matthew Verderosa, or Steven Sund?

32.     Do you have any strong feelings one way or another about Chiefs Kim Dine, Matthew Verderosa, or Steven Sund?

33.     Have you or any of your immediate family members worked on Capitol Hill or in any capacity in which you or they had regular interaction with the United States Capitol Police?

34.     Have you ever visited the United States Capitol either as a tourist or for other business?

35.     Do you think that making one side or the other happy in this situation is how this case should be decided?

36.     Would the fact that an attorney needs to question a witness in a forceful manner cause you any concern in this case?

37.     Is there anything about this case that would cause you to be unable to render a verdict?

38.     Does anything else cause you to believe that you would be unable to follow instructions in this case?

## III.     PLAINTIFF'S PROPOSED VOIR DIRE

Chrisavgi Sourgoutsis, the plaintiff, respectfully moves that the Court allow her counsel to conduct the *voir dire* of the jury panel in this case. In the event that the Court would deny that request, she submits the following suggested interrogatories to be asked of the members of the jury panel:

### OBJECTION TO OPENING PARAGRAPH

The USCP objects because Judge Brown-Jackson has already denied Plaintiff's request for an attorney conducted voir dire.  Judge Brown-Jackson stated that she will conduct voir dire. Thus, this section should be deleted.

## A.  **Introduction**

The following questions are being asked of you to assure whether potential jurors have any involvement in this matter or the parties. The questions are also being asked to review whether you might have a particular sensitivity to a particular matter that could affect or weigh on your ability to be a fair and impartial juror. The questions are not being asked to embarrass you or meddle into your private affairs. At any time after the questioning if you would feel more comfortable answering a question in private to the court, you may request to do so by raising your hand. It is important for you to answer all questions fully, honestly and accurately.

### OBJECTION TO INTRODUCTION

The USCP objects and this section should be deleted per Judge Brown-Jackson's position that she will conduct voir dire.

## B.  **General Background Questions**

1.  Please state your marital status along with your spouse's name.

OBJECTION TO NO. 1.

The USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

2.  Please state how many children you have including their sex and ages.

OBJECTION TO NO. 2.

The USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the

verdict in this untried case would be, or whether they would approach it with even

a hint of bias.

3.   Please state your present employment, your duties, and how long you have been

employed.

OBJECTION TO NO. 3.

No objection.

4.   Have you or any member of your family, including your spouse or children ever

been involved as an officer or supervisor in management of a corporation, partnership or

civic, professional group, other association? If so, please identify each organization.

a.   If so, please state the position.

OBJECTION TO NO. 4.

The USCP objects to this question because the question is irrelevant as it sheds no

real light on whether a potential juror has formed a fixed opinion as to what the

verdict in this untried case would be, or whether they would approach it with even

a hint of bias.

5.   Have you or any member of your family, including your spouse or children ever

been involved as an officer or supervisor in management of a government agency?

a.      If so, please state the position.

OBJECTION TO NO. 5.

No objection.

6.   Have you or has any member of your family ever been involved in law

enforcement as a police officer or manager of police officers?

a.      If so, please state the position.  When?

OBJECTION TO NO. 6.

No objection.

7.  Have you or has any member of your family ever been in the military?

    a.      If so, how long was your service? What rank did you attain? What

            date were you discharged or retired?

OBJECTION TO NO. 7.

        No objection.

8.  What publications do you read regularly or often?

OBJECTION TO NO. 8.

        The USCP objects to this question because it is overly intrusive, offensive, and

        improper.  Whatever marginal information Plaintiff may gain from this

        information is markedly outweighed by a potential juror's privacy concerns.

        Having a potential juror explain "what publications" him/her "read regularly" is

        deeply personal and overly invasive into the private life of a potential juror.

9.  What television programs do you watch regularly or often?

OBJECTION TO NO. 9.

        The USCP objects to this question because it is overly intrusive, offensive, and

        improper.  Whatever marginal information Plaintiff may gain from this

        information is markedly outweighed by a potential juror's privacy concerns.

        Having a potential juror explain "what television programs" him/her "watch

        regularly" is deeply personal and overly invasive into the private life of a

        potential juror.

10. What was the last book you read?

OBJECTION TO NO. 10.

> The USCP objects to this question because it is overly intrusive, offensive, and improper.  Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns.

11. The function of the jury is to sit and listen to the evidence of the case and decide the facts. Is there anybody here who does not think that for whatever reason they could not perform that function for this case? Is there anyone as you sit here today, just based on what you have heard thus far, believe you could not sit and be fair and impartial?

OBJECTION TO NO. 11.

> No objection.

12. Please name two famous people you consider to be your heroes. You must give us names we would recognize - you cannot name someone like your mother or grandfather or child, as much as that would be appropriate for you personally.

OBJECTION TO NO. 12.

> The USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.  The USCP further objects to this question because it is overly intrusive and whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns. Having a potential juror explain what "two famous people" a potential juror considers to be his/her "hero" is deeply personal and overly invasive into the private life of a potential juror.

**C.  Previous Legal Experience**

13.  Has anyone ever served on a jury before?

a.      Were you ever the foreperson? Have you ever been a witness in a

case?

OBJECTION TO NO. 13.

No objection.

14. Have you ever been a defendant or a plaintiff in a case?

a.      If you prefer to talk privately to the judge about any of these

questions, you may certainly ask.

OBJECTION TO NO. 14.

No objection.

15. This is a civil suit as opposed to a criminal proceeding. The rules of evidence are

different and the burdens of proof are different. In a criminal case, the burden of proof is

beyond any and all reasonable doubt. In a civil case, the plaintiff has the burden of proving

the elements of his claim by what is called the preponderance of the evidence, that is the

facts sought to be proven are more likely true than not true. This standard of proof is a

substantially lower burden of proof than that applied to a criminal case. Is there anyone

present who would hold the plaintiff to a higher burden of proof than preponderance of the

evidence?

OBJECTION TO NO. 15.

The USCP objects to this question because it is a misstatement of law.  The rules

of evidence that are relevant to this proceeding are not necessarily different than

those in a criminal proceeding.  Moreover, it is unnecessary and editorializing to

state that the standard of proof is "a substantially lower burden."

16. Have you or any member of your family ever served on a jury in which there

were claims made of discrimination? If so, please state when this occurred, the name of the

court, the parties involved and the lawyers who represented each side, the nature of the claims and the outcome of the suit.

OBJECTION TO NO. 16.

No objection.

17. Have you ever sued anyone in a lawsuit? If so, please explain when that occurred, the lawyers who represented you, the nature of the case and the outcome of that case.

OBJECTION TO NO. 17.

No objection.

18. Have you ever been sued in a lawsuit? If so, please explain when that occurred, the lawyers who represented you, the nature of the case and the outcome of that case.

OBJECTION TO NO. 18.

No objection.

19. Have you ever been called as a witness in a lawsuit? If so, please explain when that occurred, the nature of the case and the outcome of that case.

OBJECTION TO NO. 19.

No objection.

20. Have you ever worked in a job that caused you to work with any law enforcement officer or agency? Please describe the job and the nature of your contacts with law enforcement.

OBJECTION TO NO. 20.

No objection.

21. Have you or anyone close to you received any training in law, law enforcement, criminal justice, criminology, or the legal system? Please describe.

OBJECTION TO NO. 21.

No objection.

22. Have you or anyone close to you received any medical or psychological training? Please describe.

OBJECTION TO NO. 22.

The USCP objects to this question because it is irrelevant.  The
principal purpose of voir dire is to probe each prospective juror's state of mind to
enable the trial judge to determine actual bias and to allow counsel to assess
suspected bias or prejudice.  This question is irrelevant because it sheds no real
light on whether a potential juror has formed a fixed opinion as to what the
verdict in this untried case would be, or whether they would approach it with even
a hint of bias.

23. Have you or anyone close to you worked in a job in the medical or psychological fields? Please describe.

OBJECTION TO NO. 23.

The USCP objects to this question because it is irrelevant.  The
principal purpose of voir dire is to probe each prospective juror's state of mind to
enable the trial judge to determine actual bias and to allow counsel to assess
suspected bias or prejudice.  This question is irrelevant because it sheds no real
light on whether a potential juror has formed a fixed opinion as to what the
verdict in this untried case would be, or whether they would approach it with even
a hint of bias.

24. Have you or anyone close to you ever had an informal relationship with any law enforcement agency or department, including a ride-along program, crime watch program, or any similar program or activity? Please describe the relationship.

OBJECTION TO NO. 24.

      The USCP objects to this question because it is redundant.  Any answer to this question would not glean any more information that what was requested in question number 20.

**D.** **Relationship with the Parties**

25.   Is there anyone or a family member or close friend a member of Congress or worked in the Capital or one of its office buildings for a member of Congress?

OBJECTION TO NO. 25.

      No objection.

**E.** **Discrimination Knowledge**

26. Have you or a family member ever been in a position with a company to make promotion and hiring decisions?

      a.      If so, have you ever factored in a person's gender in deciding whether to promote or deny a promotion or hire or fire a person?

      b.      Have any of you been denied promotions, terminated, or not hired for illegal reasons such as your gender or race or your age?

OBJECTION TO NO. 26.

      No objection.

27. Is there anyone here who <u>does not agree</u> with the federal laws established by Congress that prevent discrimination by an employer with regards to a person's gender and the ability to be free of sexual harassment in the workplace?

OBJECTION TO NO. 27.

      The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would

first need to know the laws that Congress has enacted that prevent discrimination by an employing office based on gender and sexual harassment.  Next, the judge would have to explain the elements of gender and sexual harassment so that a potential juror could explain why/why not him/her disagree with such laws.  The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

28. Under the law an individual has just as many rights as a governmental entity, like The Capital Police.  Is there anyone who believes that government entities have more rights under the law than an individual?

    a.    Does anyone believe that just because The Capital Police is in this courtroom that you should believe what they say over my client as an individual?

OBJECTION TO NO. 28.

The USCP objects to this question because it is vague and ambiguous, prejudicial, and being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would first need to have the judge explain what legal rights an individual maintains and what rights a governmental entity maintains that are relevant to this action.  Next, the potential juror would have to evaluate whether a governmental entity has more legal rights than an individual.

29. Does anyone believe that because an employer claims that its actions were not motivated by gender or sex, that, more likely than not what it says is true?

OBJECTION TO NO. 29.

The USCP objects to this question because its form is vague and ambiguous.  A

potential juror could be confused and conceal relevant information due to his/her

confusion regarding the interpretation of this question.

Further, this question is being used to pre-indoctrinate the jurors on the law.  In

order to provide an answer to this question, a juror would first need to have the

judge explain the legal context of the terms "actions motivated by gender or sex".

30. Has anyone that you know ever been accused or investigated for gender discrimination

or sexual harassment in a workplace?

OBJECTION TO NO. 30.

The USCP objects to this question because it is being used to pre-indoctrinate the

jurors on the law.  In order to provide an answer to this question, a juror would

first need to have the judge explain the elements of gender discrimination and

sexual harassment before a potential juror.  Finally, a potential juror would have

to explain when and how they were made aware that someone that they know was

accused or investigated for gender discrimination or sexual harassment in a

workplace.  The question also presupposes that claims raised in this action include

sexual harassment in the workplace, which it does not.

31. Is there anyone who <u>does not believe</u> that gender discrimination or sexual

harassment exists in general? Or that a woman should not complain if she is being sexually

harassed in the workplace?

OBJECTION TO NO. 31.

The USCP objects to this question because it is being used to pre-indoctrinate the

jurors on the law.  In order to provide an answer to this question, a juror would

first need to have the judge explain the elements of gender discrimination and

sexual harassment before a potential juror could explain why/why not him/her

believes: (1) that gender discrimination and sexual harassment exists; and (2)

whether a woman should/should not complain if they are sexually harassed in the

workplace. The question also presupposes that claims raised in this action include

sexual harassment in the workplace, which it does not.

32. Have you ever complained to a fellow employee, supervisor or personnel

manager or to the Equal Employment Opportunity Commission that you believe that a co-

employee or supervisor discriminated or sexually harassed you in any fashion? If so, please

answer the following questions:

     a.     Who were you working for at the time?

     b.     What were the comments or actions of which you complained?

     c.     When did the actions occur?

     d.     What action was taken in response to your complaint?

     e.     Did you feel the response by the company was appropriate, if not, why?

OBJECTION TO NO. 32.

     Objection as to the portion of the question concerning sexual harassment. The

     question also presupposes that claims raised in this action include sexual

     harassment in the workplace, which it does not.

33. Do you personally know or have ever witnessed anyone who has made a

complaint to his or her supervisor, or the company's personnel manager, or human resource

manager, that they have been subjected to discrimination or company retaliated against the

employee? If so, please answer the following questions:

     a.     Who were you working for at the time?

    b.       What were the comments made?

    c.       What did the conduct involve?

    d.       Did you witness any of this behavior?

    e.       What action was taken in response to your complaint?

    f.       Did you feel the response to be appropriate, if not, why?

OBJECTION TO NO. 33.

    No objection.

34. Have you ever been in a situation where an individual was treated differently because of a protected characteristic like age, race, gender, religion or ethnic background that made you feel uncomfortable because of your observation?

OBJECTION TO NO. 34.

    The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would first need to have the judge explain the definition of a "protected characteristic like age, race, gender, religion or ethnic background" before a potential juror could explain why/why not him/her observed a situation where they observed any event where a person was treated differently based on a protected characteristic like age, race, gender, religion or ethnic background.  Finally, a potential juror would have to explain whether or not they felt uncomfortable because of the observation.

35. Have you ever been interviewed as part of an investigation or inquiry into claims of discrimination and/or retaliation? If so, please tell us when that occurred, for whom were you working, and your understanding of the nature of the claims and the position held at that

time?

OBJECTION TO NO. 35.

No objection.

36. Do you personally know anyone who has sued a company for discrimination? If so, please state the relationship of that individual to you; the name of the company, the claims made, when the lawsuit occurred and the outcome of the case?

OBJECTION TO NO. 36.

No objection.

37. Have you ever given a deposition in a case in which there were claims of discrimination or harassment or retaliation? If so, please state the name of the individual who filed the suit, the name of the company, how the suit turned out and the names of the lawyers (if you know) who were involved?

OBJECTION TO NO. 37.

No objection.

38. Does anyone have a job that deals with charges of sexual harassment, discrimination or handling investigations - like a personnel manager or a human resource manager or working with the Equal Employment Opportunity Commission?

OBJECTION TO NO. 38.

No objection.

39. Does anyone believe that because a woman works in a professional environment that she has no reason to complain if she is sexually harassed while working that job?

OBJECTION TO NO. 39.

The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would

first need to have the judge explain the elements of sexual harassment before a potential juror could explain whether he/she believed that a woman had/did not have a "reason to complain if she was sexually harassed while working that job." The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

40. Is anyone a lawyer or have family members who are lawyers? Does anyone have any legal classes or seminars or employment law?

OBJECTION TO NO. 40.

No objection.

41. Has anyone ever worked for an insurance company investigating claims?

OBJECTION TO NO. 41.

The USCP objects to this question because this question is irrelevant. No connection exists between whether a person has worked for an insurance company and the causes of action in this case. Thus, an answer to this question would shed no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias. Has anyone ever worked for the federal government investigating claims?

42. Has anyone ever  worked for an employer who was sued for discrimination or harassment and you were made aware of the allegations in some fashion? If so, please explain when and how you were involved.

OBJECTION TO NO. 42.

Objection to the portion of the question concerning harassment.  The question

presupposes that claims raised in this action include sexual harassment in the

workplace, which it does not.

43. If the evidence in this suit indicates that the defendant is guilty of gender

discrimination or retaliation, do you know of any reason which would prevent you from

rendering a judgment in favor of the plaintiff and against the defendant on these claims?

OBJECTION TO NO. 43.

The USCP objects to this question because this is a civil case and the USCP could

not be "guilty" of discrimination or retaliation.  Rather, the USCP would only be

responsible for committing discrimination or retaliation against Plaintiff if

Plaintiff has met her the burden of proving all the elements of her gender

discrimination and/or retaliation claim(s) by a preponderance of the evidence.

The USCP further objects to this question because it is being used to prejudice the

jury.  In order to provide an answer to this question, a juror would need to

presume that evidence weighs in favor of Plaintiff.  A potential juror would have

to explain whether they would be prevented from issuing a decision against the

USCP if the evidence does not show that Plaintiff has met her burden of proof

regarding allegations of gender discrimination and/or retaliation.  Further the

USCP objects to this question because it is being used to pre-indoctrinate the jury

as to the law.  Without an explanation as to when the evidence in the suit would

indicate the defendant engaged in an unlawful practice, this question is not

answerable.

Finally, Plaintiff is not permitted to use voir dire to "stake out" jurors. Staking out

jurors means asking jurors what their decision would be under a specific factual

scenario. Jurors should not be asked to pledge themselves to a future course of action before hearing the evidence and receiving instructions on the law. Plaintiff's question is requesting that a potential juror pledge themselves to a certain verdict prior to hearing all of the evidence.  This question requests for an answer that is inconsistent with a juror's duty to hear the evidence with an open mind and to refrain from forming or expressing an opinion until the case is submitted for a verdict.

44. Does your present employer have a policy against gender discrimination, sexual harassment and/or retaliation?

OBJECTION TO NO. 44.

The USCP objects to this question because whether a potential juror's present employer has a policy gender discrimination, sexual harassment and/or retaliation sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.  The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

45. Have you ever attended a seminar on gender discrimination, sexual harassment and retaliation?

a.    If so, please state the name of the company which employed you when you attended the seminar and when that occurred. What entity the presenter worked?

OBJECTION TO NO. 45.

> Objection to the portion of the question concerning sexual harassment.  The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

46. Have you· ever been provided materials on gender discrimination, sexual harassment or retaliation by an employer? If so, what kind of materials were provided and when did you last review this information?

OBJECTION TO NO. 46.

> Objection to the portion of the question concerning sexual harassment.  The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

47. Do you personally know of anyone who has been terminated because of cooperating in an investigation about sexual harassment or gender discrimination? If so, what were the allegations made, the name of the employer, and when did this occur?

OBJECTION TO NO. 47.

> The USCP further objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would need to have the judge explain the elements of gender and sexual harassment.  Next, a potential juror would have to know whether a person was terminated because he/she cooperated in an investigation where a person alleged sexual harassment or gender discrimination. The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

48. Have you ever filed a claim of discrimination with the Equal Employment Opportunity Commission or filed a grievance with your employer for discrimination? Please

describe the outcome of any such incident.

OBJECTION TO NO. 48.

No objection.

49. Have you or has any member of your family ever filed a grievance against their

employer?

OBJECTION TO NO. 49.

The USCP objects to this question because the question is irrelevant as it sheds no

real light on whether a potential juror has formed a fixed opinion as to what the

verdict in this untried case would be, or whether they would approach it with even

a hint of bias.  There may only be a tangential reference to the filing of a

grievance in this untried case.  An answer to this question does not assist a Party

in determining what prejudices and beliefs a potential juror is bringing to the

proceedings in order that counsel may intelligently exercise peremptory

challenges or challenges for cause.

50. Have you or has any member of your family ever been a member of a union?

OBJECTION TO NO. 50.

No objection.

51. Does any member of this jury panel believe that conflicts between individuals

should be settled outside of court?

OBJECTION TO NO. 51.

No objection.

52. Does any member of this jury panel feel strongly enough about an issue to place a

bumper sticker on their vehicle? If so, what does the sticker say?

OBJECTION TO NO. 52.

> The USCP objects to this question because it is overly intrusive, offensive, and improper.  Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns. Placing a bumper sticker on a vehicle is deeply personal as to the purpose of the content of the bumper sticker and why the bumper sticker is placed on the vehicle.

53. Does any member of this jury panel listen to talk radio that involves a legal question or answer type program? If so, have you ever sought legal advice for an employment situation?

OBJECTION TO NO. 53.

> The USCP objects to this question because it is overly intrusive, offensive, and improper.  Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns. Listening to a certain radio program is deeply personal as to the content of the program and why the potential juror listens to the particular radio program.

54. Does any member of this jury panel suffer from sexual harassment or gender discrimination currently?

OBJECTION TO NO. 54.

> The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would need to have the judge explain the elements of gender and sexual harassment so that a potential juror could explain how him/her are aware of whether they are currently experiencing gender and/or sexual harassment.  Finally, a potential juror would have to explain when and how they are currently experiencing gender and/or sexual harassment.  Additionally, the USCP objects to this question

because it is overly intrusive, offensive, and improper.  Whatever marginal

information Plaintiff may gain from this information is markedly outweighed by a

potential juror's privacy concerns.  Having a potential juror explain how if they

are currently experiencing gender and/or sexual harassment is deeply personal as

to the circumstances of him/her experience. The question also presupposes that

claims raised in this action include sexual harassment in the workplace, which it

does not.

**F.  <u>Damages</u>**

55. If you think you can be fair and even handed with the person of the opposite sex,

would you raise your hand for me, please?

OBJECTION TO NO. 55.

No objection.

56. If Ms. Sourgoutsis proves her case to you, the law states she is entitled to be

compensated. Is there anyone here who would have difficulty assessing damages if Ms.

Sourgoutsis proves her case?

OBJECTION TO NO. 56.

The USCP further objects to this question because it is being used to pre-

indoctrinate the jurors on the law.  In order to provide an answer to this question,

a juror would need to have the judge explain the elements a law that allows a

person to be compensated for being subjected to illegal discrimination by the

USCP.

Next, the judge would have to explain Plaintiff's burden of proof and how

Plaintiff has met her the burden of proving all the elements of her gender

discrimination and/or retaliation claim(s) by a preponderance of the evidence

before a potential juror could determine whether Plaintiff should be entitled to any

compensation for being subjected to any illegal discrimination.  Finally, a

potential juror would have to explain whether they would be prevented from

issuing a decision against the USCP for any damages that resulted from Plaintiff

being subjected to any illegal discrimination.

Finally, Plaintiff is not permitted to use voir dire to "stake out" jurors. Staking out

jurors means asking jurors what their decision would be under a specific factual

scenario. Jurors should not be asked to pledge themselves to a future course of

action before hearing the evidence and receiving instructions on the law.

Plaintiff's question is requesting that a potential juror pledge themselves to a

certain verdict prior to hearing all of the evidence.  This question requests for an

answer that is inconsistent with a juror's duty to hear the evidence with an open

mind and to refrain from forming or expressing an opinion until the case is

submitted for a verdict.

The USCP objects to this question because it is a misstatement of law.  Plaintiff is

not necessarily entitled to any compensation if she allegedly "proves her case."

57. Do you believe there should be a specific limit to how much money should be

awarded for non-economic damages and mental anguish? Why or why not?

OBJECTION TO NO. 57.

No objection.

**G.  Specific Bias and Prejudice Questions**

58. In the past two years, there has been a lot of discussion about whether our country

has become too politically correct. President Trump said, while running for office, "I think

the big problem this country has is being politically correct. I've been challenged by so

many people, and I don't frankly have time for total political correctness. And to be honest with you, this country doesn't have time, either." Does anyone here feel that being "politically correct" has gone too far?

OBJECTION TO NO. 58.

The USCP objects to this question because it is overly intrusive, offensive, and improper.  Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns. Having a potential juror explain how what Donald Trump said as a political candidate, and the overall impact on a potential juror, is deeply personal and overly invasive into the private life of a potential juror.

Additionally, the USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

Finally, "politically correct" is an undefined term and not an appropriate topic for inquiry during voir dire.  Even if "politically correct" was defined, it is not an issue in this case and any answer to this question would not assist a Party in determining what prejudices and beliefs a potential juror is bringing to the proceedings in order that counsel may intelligently exercise peremptory challenges or challenges for cause.

59. A lot of people feel that the politically correct movement has made it hard for people to talk to each other and say things at work. Again, we heard a lot of discussion in the last election of a candidate describing women as pigs, attributing the criticism of a female news anchor to her menstrual cycle, and talking about the size of his genitals during

a televised debate. Is there anyone here who thinks this type of conversation is okay in the workplace? Would your opinion change if the person making the comments was a supervisor or the boss of the workplace? In other words, if someone is a supervisor, do you believe they have the right to talk and act however they please? For those who think it is okay, if you were instructed this type of discussion is prohibited by the law, could you in good conscience enforce that law?

OBJECTION TO NO. 59.

> The USCP objects to this question because it is overly intrusive, offensive, and improper.  Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns. Having a potential juror explain how what a political candidate stated regarding his/her description of "women", and the overall impact on a potential juror, is deeply personal and overly invasive into the private life of a potential juror. Additionally, the USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

> Finally, the last election of a candidate discussing "describing women as pigs, attributing the criticism of a female news anchor to her menstrual cycle, and talking about the size of his genitals during a televised debate" is not an issue in this case and any answer to this question would not assist a Party in determining what prejudices and beliefs a potential juror is bringing to the proceedings in order that counsel may intelligently exercise peremptory challenges or challenges for cause.

60. In the last year, our president joked about grabbing women by their private parts, but a lot of voters overlooked or excused the conduct because they did not like his opponent. The judge is going to instruct you that that type of conduct is not tolerated in the workplace, regardless. Is there anyone here who feels that if it is okay for the president to talk in this manner, then it would then be okay for a manager or a boss to do it?

OBJECTION TO NO. 60.

The USCP objects to this question because it is overly intrusive, offensive, and improper. Whatever marginal information Plaintiff may gain from this information is markedly outweighed by a potential juror's privacy concerns.

Having a potential juror explain how what a President of the United States stated and the overall impact on a potential juror is deeply personal and overly invasive into the private life of a potential juror.

Additionally, the USCP objects to this question because the question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

Finally, the President of the United States discussing "grabbing women by their private parts" is not an issue in this case and any answer to this question would not assist a Party in determining what prejudices and beliefs a potential juror is bringing to the proceedings in order that counsel may intelligently exercise peremptory challenges or challenges for cause.

61. Over the past 18 months or so the media has engaged in several lively and ongoing debates over the language that President Trump had used a few years back during the filming of a reality TV show where he referred to women and certain body parts in

derogatory terms. Some folks classified that language as "locker room talk" and that men,
because they are men, will talk that way about women at times. Does anyone here feel that
language and comments classified as "locker room talk" is acceptable outside the locker
room such as a professional workplace, like a police force?

OBJECTION TO NO. 61.

The USCP objects to this question because it is overly intrusive, offensive, and
improper.  Whatever marginal information Plaintiff may gain from this
information is markedly outweighed by a potential juror's privacy concerns.
Having a potential juror explain how what Donald Trump stated on a television
show and the overall impact on a potential juror is deeply personal and overly
invasive into the private life of a potential juror.

Additionally, the USCP objects to this question because the question is irrelevant
as it sheds no real light on whether a potential juror has formed a fixed opinion as
to what the verdict in this untried case would be, or whether they would approach
it with even a hint of bias.

Finally, "locker room talk" is an undefined term.  Even if "locker room talk was
defined", it is not an issue in this case and any answer to this question would not
assist a Party in determining what prejudices and beliefs a potential juror is
bringing to the proceedings in order that counsel may intelligently exercise
peremptory challenges or challenges for cause.

62. Who has seen the movie or read the book, Fifty Shades of Grey?  What opinions
did you take away about gender rights from the book or the movie? Some critics of the book
refused to see the movie because of their opinion that it sensationalized abusive relationships
where women were treated in as objects and not on an equal basis to the man. Did anyone

read or follow this type of discussion in the media or on a social media discussion? Did anyone

blog or post any commentary or opinions about this movie? Or discuss at work, in a book club

or class?

OBJECTION TO NO. 62.

The USCP objects to this question because it is overly intrusive, offensive, and

improper.  Whatever marginal information Plaintiff may gain from this

information is markedly outweighed by a potential juror's privacy concerns.

Having a potential juror explain how he/she interpreted the movie or book "Fifty

Shades of Grey", reviewing any social media opinions, and the overall impact on

a potential juror is deeply personal and overly invasive into the private life of a

potential juror.

Additionally, the USCP objects to this question because the question is irrelevant

as it sheds no real light on whether a potential juror has formed a fixed opinion as

to what the verdict in this untried case would be, or whether they would approach

it with even a hint of bias.

Finally, women being treated "as objects and not on an equal basis to [a] man" is

not an issue in this case and any answer to this question would not assist a Party

in determining what prejudices and beliefs a potential juror is bringing to the

proceedings in order that counsel may intelligently exercise peremptory

challenges or challenges for cause.

63. Have you or anyone close to you ever had a negative experience with a person of

another gender while at work?

OBJECTION TO NO. 63.

No objection.

64. Have you or anyone close to you ever been accused of gender discrimination or sexual harassment, either in the workplace or some other situation?

OBJECTION TO NO. 64.

    No objection.

65. Have you ever worked closely or socialized with a person from another gender?

OBJECTION TO NO. 65.

    The USCP objects to this question as vague and ambiguous and overly broad. Any answer to this question sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

66. Have you had any training or education, such as a college class or a seminar in the workplace, that dealt with sexual harassment and/or gender discrimination or harassment? What did you learn?

OBJECTION TO NO. 66.

    The USCP objects to this question because it is redundant. Any answer to this question would not glean any more information that what was requested in question number 46. The question also presupposes that claims raised in this action include sexual harassment in the workplace, which it does not.

67. Do you think that concern over gender equality in the workplace is exaggerated? Do you think concern over sexual harassment in the workplace is exaggerated?

OBJECTION TO NO. 67.

    The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law. In order to provide an answer to this question, a juror would need to have the judge explain the elements of gender equality and sexual

harassment so that a potential juror could speculate on whether gender equality
and/or sexual harassment is exaggerated in the workplace.

Also any answer to this question would not shed no real light on whether a
potential juror has formed a fixed opinion as to what the verdict in this untried
case would be, or whether they would approach it with even a hint of bias.  The
question also presupposes that claims raised in this action include sexual
harassment in the workplace, which it does not.

68. Do you think gender discrimination or sexual harassment in the workplace is
something employees should simply learn to handle or avoid?

OBJECTION TO NO. 68.

The USCP objects to this question because it is being used to pre-indoctrinate the
jurors on the law.  In order to provide an answer to this question, a juror would
need to have the judge explain the elements of gender equality and sexual
harassment so that a potential juror could speculate on whether gender equality
and/or sexual harassment is something employees "should learn to handle" or
"avoid" in the workplace.

Also any answer to this question would not sheds no real light on whether a
potential juror has formed a fixed opinion as to what the verdict in this untried
case would be, or whether they would approach it with even a hint of bias. The
question also presupposes that claims raised in this action include sexual
harassment in the workplace, which it does not.

69. Do you think people are generally afraid to report sexual discrimination in the
workplace? Why do you think that is?

OBJECTION TO NO. 69.

The USCP objects to this question because it is being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would need to have the judge explain the elements of sex discrimination so that a potential juror could speculate on whether "people" are afraid to report sexual discrimination in the workplace.

Finally, whether "people" are "generally afraid to report sexual discrimination in the workplace" is not an issue in this case and any answer to this question would not assist a Party in determining what prejudices and beliefs a potential juror is bringing to the proceedings in order that counsel may intelligently exercise peremptory challenges or challenges for cause.

70. How often do you think someone who reports sexual discrimination in the workplace is retaliated against? Rarely, sometimes, often?

OBJECTION TO NO. 70.

The USCP objects to this question because it is prejudicial being used to pre-indoctrinate the jurors on the law.  In order to provide an answer to this question, a juror would need to have the judge explain the elements of sex discrimination and retaliation so that a potential juror could speculate on "how often" "someone who reports sexual discrimination in the workplace are retaliated against."

The question also presupposes that retaliation for reporting discrimination in the workplace occurs at some level of frequency.

Further the language "sexual discrimination" is vague and ambiguous.

Finally, "how often" "someone who reports sexual discrimination in the workplace are retaliated against" is not an issue in this case and this question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed

opinion as to what the verdict in this untried case would be, or whether they

would approach it with even a hint of bias.

71. What do you think an employee who is being discriminated against or harassed

should do?

OBJECTION TO NO. 71.

The USCP objects to this question because it is being used to pre-indoctrinate the

jurors on the law.  In order to provide an answer to this question, a juror would

need to have the judge explain the elements of discrimination and harassment so

that a potential juror could speculate on "what" an "employee who is being

discriminated against or harassed should do."

Also, "what" an "employee who is being discriminated against or harassed should

do" is not an issue in this case and this question is irrelevant as it sheds no real

light on whether a potential juror has formed a fixed opinion as to what the

verdict in this untried case would be, or whether they would approach it with even

a hint of bias. The question also presupposes that claims raised in this action

include sexual harassment in the workplace, which it does not.

72. Do you think the laws which seek to prevent sexual discrimination have gone too

far in the direction of women?

OBJECTION TO NO. 72.

The USCP objects to this question because it is being used to pre-indoctrinate the

jurors on the law.  In order to provide an answer to this question, a juror would

need to have the judge explain what "laws" "seek to prevent sexual discrimination

have gone too far in the direction of women" so that a potential juror could

speculate on whether they agree or disagree with the "laws."

> Further the language "sexual discrimination" is vague and ambiguous and
> potentially confusing to jurors.

73. Do you hold any philosophical or religious beliefs that would prevent you from sitting in judgment of another person or company?

OBJECTION TO NO. 73.

> No objection.

74. There was some talk in the last election that too much regulation of U.S. business by federal, state and district governments.  Does anyone think that it is too hard to run a business because of because there are too many regulations or legal requirements?

OBJECTION TO NO. 74.

> The USCP objects to this question because it is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.
>
> Also, whether "it is too hard to run a business because there are too many regulations or legal requirements" is not an issue in this case and this question is irrelevant as it sheds no real light on whether a potential juror has formed a fixed opinion as to what the verdict in this untried case would be, or whether they would approach it with even a hint of bias.

75. Is there anything about this case, the identity or status of parties, or anything else you've seen or heard today that would impair your ability to be a fair and impartial juror?

OBJECTION TO NO. 75.

> No objection.

76. Do you have any beliefs, feelings, prejudices, or experiences that you feel would

affect your ability to be fair and impartial?

OBJECTION TO NO. 76.

No objection.

77. Are any of your close friends or relatives' attorneys? What is their area of practice?

OBJECTION TO NO. 77.

No objection.

78. If you are a juror in this case, you will have some rights. It is extremely important that you understand these rights, and that you will exercise them as often as the need arises. First you will have the right to hear all the testimony. So if a witness says something you don't hear, will you be comfortable raising your hand and telling the judge, "Your Honor, I did not hear what the witness said." Will you do that?

OBJECTION TO NO. 78.

The USCP objects to this question because it is improperly placed as a voir dire question.  Any reference to a potential juror's rights will be addressed in the Court approved jury instructions.

79. If you are a juror in this case you will have a second right, the right to understand the law. Nothing can be more important. But every so often during deliberations, jurors disagree over what the law is. Sometimes a juror is just not sure. Sometimes a discussion will start about what the law really is. So if any of that happens, instead of trying to decide it among yourselves, will you be comfortable telling your foreperson to knock on the jury room door and ask the bailiff to tell the judge that there is something about the law you need to hear about again?

OBJECTION TO NO. 79.

The USCP objects to this question because it is improperly placed as a voir dire

question.  Any reference to a potential juror's rights will be addressed in the Court

approved jury instructions.

## IV.    PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

### [PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 1:
### OPENING INSTRUCTION[1]

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff. In this action, the plaintiff is Ms. Chrisavgi Sourgoutsis.  The party being sued is called the defendant. In this action, the defendant is U.S. Capitol Police (we will refer to them as "USCP" going forward).

During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law which I will provide to you at the close of the case.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence. The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

---

[1]Adapted from 3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.), 3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.)

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented.

After the opening statements, the plaintiff will present her case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.

Objection: This instruction does not follow the format of the Standard District of Columbia District Court jury instruction.  This instruction does not provide as much information to the jury and does not give them all the details necessary for the conduct of the case.  Notably, it does not include instruction on what to do when objections are sustained.  This instruction is also not explicit that jurors cannot perform outside research or consider outside evidence beyond that provided at trial.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 2:**
**DIRECT AND INDIRECT EVIDENCE**[2]

Generally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and indirect evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or indirect" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or indirect evidence. Nor is a greater degree of certainty required of indirect evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and indirect.

> Objection:  This instruction is confusing for the jury because it does not provide a detailed explanation of direct and indirect evidence.  The instruction is also incomplete because it does not indicate that indirect evidence is also known as "circumstantial" evidence.  The Department proposes using the D.C. standard jury instruction that includes an explanation and gives examples of direct and circumstantial evidence.

---

[2] Adapted from 3 Fed. Jury Prac. & Instr. § 101:42 (6th ed.)

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 3:**[3]
**PREPONDERANCE OF EVIDENCE**

This is a civil case. Ms. Sourgoutsis has the burden of proving her case by what is called the preponderance of the evidence.  That means Ms. Sourgoutsis has to prove to you, in light of all the evidence, that what she claims is more likely so than not so.

To say it differently: if you were to put the evidence favorable to Ms. Sourgoutsis and the evidence favorable to USCP on opposite sides of the scales, Ms. Sourgoutsis would have to make the scales tip somewhat on her side.  If Ms. Sourgoutsis fails to meet his burden, the verdict must be for USCP. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

Objection: The Department objects to the confusing language of "more likely so than not so."  The instruction also does not instruct the jury to avoid speculation or guess work in arriving at a conclusion.  The instruction also does not state that

---

[3] Adapted from 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.)

while jurors can use common sense, they are not permitted to bring in outside

knowledge to bear in the case, only the evidence presented at trial.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 4:**
**INTRODUCTION TO TITLE VII[4]**

It is unlawful for an employer to intentionally discharge any person or otherwise discriminate against any person with respect to compensation, tenure, conditions, or privileges of employment because of such person's gender.

Ms. Chrisavagi Sourgoutsis claims USCP intentionally discriminated against her because of her gender.  USCP denies this charge.

It is your responsibility to decide whether Ms. Sourgoutsis has proven her claim of intentional discrimination by USCP by a preponderance of the evidence.

> Objection:  This jury instruction misstates the nature of the case and the law, which is being brought pursuant to the Congressional Accountability Act ("CAA"), not Title VII.  The CAA does not incorporate the entirety of Title VII.  The instruction also misstates the Department's defense.  The USCP not only denies the charge, but also provides a legitimate justification for terminating the plaintiff which is not mentioned.

---

[4] Adapted from 3C Fed. Jury Prac. & Instr. § 171:1 (6th ed.), 3C Fed. Jury Prac. & Instr. § 171:1 (6th ed.)

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 5:**
**ELEMENTS OF A CAA CLAIM DISPARATE TREATMENT MIXED-MOTIVE**

In this case Plaintiff Chrisavgi Sourgoutsis is alleging that USCP treated males more favorably than her.  For Ms. Sourgoutsis to recover on this discrimination claim against USCP, she must prove that USCP intentionally discriminated against her.  This means that Ms. Sourgoutsis must prove that her gender was a motivating factor in USCP's decision to terminate her.

To prevail on this claim, Plaintiff Chrisavgi Sourgoutsis must prove both of the following by a preponderance of the evidence:

**First:** USCP fired Ms. Sourgoutsis, and/or took other actions against her; and

**Second:** Ms. Sourgoutsis's gender was a motivating factor in USCP's decision.

Although Ms. Sourgoutsis must prove that USCP acted with the intent to discriminate, Ms. Sourgoutsis is not required to prove that USCP acted with the particular intent to violate her federal civil rights.

In showing that Ms. Sourgoutsis's gender was a motivating factor for action, Ms Sourgoutsis is not required to prove that her protected status was the sole motivation or even the primary motivation for USCP's decision.  Plaintiff Chrisavgi Sourgoutsis need only prove that Ms. Sourgoutsis's gender played a motivating part in USCP's decision even though other factors may also have motivated USCP.

As used in this instruction, Ms. Sourgoutsis's gender was a "motivating factor" if her gender played a part in USCP's decision to terminate her or take other actions against her.

**[For use where defendant sets forth a same decision affirmative defense:**

If you find that USCP's treatment of Ms. Sourgoutsis was motivated by both discriminatory and

lawful reasons, you must decide whether Ms. Sourgoutsis's gender is entitled to damages. Ms. Sourgoutsis's is not entitled to damages if USCP proves by a preponderance of the evidence that USCP would have treated Ms.Sourgoutsis the same even if Ms. Sourgoutsis race and/or sex had played no role in the employment decision.]

Comment:

Adapted from 3C Fed. Jury Prac. & Instr. § 171:20 (6th ed.); Ponce v. Billington, 679 F.3d 840, (D.C. Cir. 2012).

The District of Columbia Circuit has expressly held that a Plaintiff may request *both* a "motivating factor" and a "but for" causation instruction, stating as follows: Even though we have described but-for and mixed-motive cases as "alternative ways of establishing liability," id. at 453, a plaintiff may proceed under both theories simultaneously. In Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)—the Supreme Court decision Title VII's mixed-motive provision was intended to codify—the Court held:

> [n]othing in this opinion should be taken to suggest that a case must be correctly labeled as either a "pretext" case or a "mixed-motives" case from the beginning in the District Court; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both. Discovery will often be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the decision against her.

Id. at 247 n.12 (plurality opinion). Thus, the Supreme Court has clarified that HN6 a plaintiff need not expressly allege in the complaint that the action is either a "pretext" or a "mixed-motives" case since the plaintiff may need discovery to correctly categorize his claim. Moreover, a plaintiff may ultimately decide to proceed under both theories of liability. *Ponce v. Billington*, 679 F.3d 840, 845 (D.C. Cir. 2012)

Third Circuit Model Jury Instructions:

The Supreme Court has ruled that direct evidence is not required for a plaintiff to prove that discrimination was a motivating factor in a "mixed-motive" case, i.e., a case in which an employer had both legitimate and illegitimate reasons for making a job decision. Desert Palace Inc. v. Costa, 539 U.S. 90 (2003). The Desert Palace Court concluded that in order to be entitled to a mixed-motive instruction, (a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national

origin was a motivating factor for any employment practice. Id. at 95-96 (internal quotation omitted). The mixed-motive instruction above ( including the instruction on the affirmative defense tracks the instructions approved in Desert Palace. While direct evidence is not required to make out a mixed motive case, it is nonetheless true that the distinction between mixed-motive cases and pretext cases is often determined by whether the plaintiff produces direct rather than circumstantial evidence of discrimination. If the plaintiff produces direct evidence of discrimination, this may be sufficient to show that the defendant's activity was motivated at least in part by animus toward a protected class, and therefore a mixed-motive instruction is warranted. If the evidence of discrimination is only circumstantial, then the defendant can argue that there was no animus at all, and that its employment decision can be explained completely by a non-discriminatory motive; it is then for the plaintiff to show that the alleged non-discriminatory motive is a pretext, and accordingly Instruction 5.1.2 should be given. See generally Stackhouse v. Pennsylvania State Police, 2006 WL 680871 at *4 (M.D.Pa. 2006) A pretext theory of discrimination is typically presented by way of circumstantial evidence, from which the finder of fact may infer the falsity of the employer's explanation to show bias. A mixed-motive theory of discrimination, however, is usually put forth by presenting evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude. (internal citations and quotations omitted).

On the proper use of a mixed-motive instruction ( and the continuing viability of the mixed-motive/pretext distinction ( see Matthew Scott and Russell Chapman, Much Ado About Nothing: Why Desert Palace Neither Murdered McDonnell Douglas Nor Transformed All Employment Discrimination Cases To Mixed-Motive, 36 St. Mary(s L.J. 395 (2005): Thus, a case properly analyzed under [42 U.S.C.] ( 2000e-2(a) (what some commentators refer to as pretext cases) involves the plaintiff alleging an improper motive for the defendant's conduct, while the defendant disavows that motive and professes only a non-discriminatory motive. On the other hand, a true mixed motive case under [42 U.S.C.] ( 2000e-2(m) involves either a defendant who . . . admits to a partially discriminatory reason for its actions, while also claiming it would have taken the same action were it not for the illegitimate rationale or . . . [there is] otherwise credible evidence to support such a finding.

The rationale for the distinction . . . is simple. When the defendant renounces any illegal motive, it puts the plaintiff to a higher standard of proof that the challenged employment action was taken because of the plaintiff(s race/color/religion/sex/national origin. But, the plaintiff, if successful, is entitled to the full panoply of damages under § 2000e-5. . . . At the same time, where the defendant is contrite and admits an improper motive (something no jury will take lightly), or there is evidence to support such a finding, the defendant(s liability risk is reduced to declaratory relief, attorneys' fees and costs if the defendant proves it would have taken the same action even without considering the protected trait. The quid pro quo for this reduced financial risk is the lesser standard of liability (the challenged employment action need only be a motivating factor).

Thus, the distinction between mixed-motive and pretext cases is retained after Desert Palace. The Third Circuit has indicated that it retains that distinction. See, e.g., Makky v. Chertoff, 541 F.3d

205, 215 (3d Cir. 2008) (A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons.. See also Hanes v. Columbia Gas of Pennsylvania Nisource Co., 2008 WL 3853342 at *4, n.12 (M.D. Pa. 2008) ( Third Circuit adheres to a distinction between pretext cases, in which the employee asserts that the employer's justification for an adverse action is false, and mixed-motives cases, in which the employee asserts that both legitimate and illegitimate motivations played a role in the action; (determinative factor analysis applies to the former and (motivating factor( analysis applies to the latter).

Whether to give a mixed-motive or a pretext instruction (or both) is a question of law for the court. Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097-98 (3d Cir.1995). See also Urban v. Beyer Corp. Pharmaceutical Div., 2006 WL 3289946 (D.N.J. 2006) (analyzing discrimination claim first under mixed-motive theory and then under pretext theory).

Same Decision Affirmative Defense in Mixed-Motive Cases Where the plaintiff has shown intentional discrimination in a mixed motive case, the defendant can still avoid liability for money damages by demonstrating by a preponderance of the evidence that the same decision would have been made even in the absence of the impermissible motivating factor. If the defendant establishes this defense, the plaintiff is then entitled only to declaratory and injunctive relief, attorney's fees and costs. Orders of reinstatement, as well as the substitutes of back and front pay, are prohibited if a same decision defense is proven. 42 U.S.C. (2000e-5(g)(2)(B).

> Objection: This instruction misstates the facts and misstates the law.  Plaintiff is
>
> not generally alleging that the Department treated males more favorably than her,
>
> rather she is claiming that she was terminated because of her gender.  Further, to
>
> the extent Plaintiff is intending to only set forth a motivating factor theory of the
>
> case, this instruction is incomplete.  It does not include the affirmative defense.
>
> Additionally, this instruction is incorrect in stating that a "motivating factor"
>
> occurs when gender "played a part" in the decision to terminate her.  The
>
> instruction would therefore confuse the jury as to the burden of proof required for
>
> Plaintiff.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 6:**
**ELEMENTS OF A CAA CLAIM DISPARATE TREATMENT MIXED-MOTIVE**

In this case Ms. Sourgoutsis is alleging that USCP fired Ms. Sourgoutsis and took

other actions against her. For Ms. Sourgoutsis to recover on this discrimination claim

against USCP, Ms. Sourgoutsis must prove that USCP intentionally discriminated against her.

This means that Ms. Sourgoutsis must prove that her gender was a determinative factor in

USCP's actions against Ms. Sourgoutsis.

To prevail on this claim, Ms. Sourgoutsis must prove both of the following by a

preponderance of the evidence:

First: USCP fired Ms. Sourgoutsis, and/or took other actions against Ms.

her; and

Second: her gender was a determinative factor in USCP's decision.

Although Ms. Sourgoutsis must prove that USCP acted with the intent to discriminate,

she is not required to prove that USCP acted with the particular intent to violate her federal civil

rights.  Moreover, Ms. Sourgoutsis is not required to produce direct evidence of intent, such as

statements admitting discrimination. Intentional discrimination may be inferred from the

existence of other facts.

USCP has given a nondiscriminatory reason for its firing of Ms. Sourgoutsis and other

actions against her. If you disbelieve USCP's explanations for its conduct, then you may, but

need not, find that Ms. Sourgoutsis has proved intentional discrimination. In determining

whether USCP's stated reason for its actions was a pretext, or excuse, for discrimination, you

may not question USCP's business judgment. You cannot find intentional discrimination simply

because you disagree with the business judgment of USCP or believe it is harsh or unreasonable.

You are not to consider USCP's wisdom. However, you may consider whether USCP's reason is

merely a cover-up for discrimination.

Ultimately, you must decide whether Ms. Sourgoutsis has proven that her gender was a

determinative factor in its firing of Ms. Sourgoutsis and other actions against her.  Determinative

factor means that if not for Ms. Sourgoutsis's gender, the firing and other actions would not have

occurred.

**Comment**

Adapted 3C Fed. Jury Prac. & Instr. § 171:20 (6th ed.),

On the distinction between mixed-motive and pretext cases (and the continuing viability of that distinction), see the Commentary to Instruction 5.1.1. The McDonnell Douglas Burden-Shifting Test

Objection: This instruction misstates the facts and misstates the law.  This jury instruction

only applies to claims of disability discrimination under the Americans with Disabilities Act

("ADA").  Plaintiff does not have a disability claim in this case.  Further, the comment section

9.1.1 Elements of an ADA Claim reference to a mixed motive theory of discrimination is

premised on a claim of disability and refers to whether a plaintiff is a qualified individual able to

perform the essential functions of a job.  Additionally, Plaintiff's instruction refers to allegations

that the USCP fired her and took other actions against her.  The USCP only took one

employment action against Plaintiff that is at issue before this court: termination for

unsatisfactory performance.  It is a misstatement of fact that the USCP took any other action

against Plaintiff that is at issue in this case. Finally, Plaintiff's instruction must be struck because

she states that "she is not required to prove that USCP acted with the *particular* intent to violate

her federal civil rights." This is a misstatement of law. Plaintiff is required to prove that the USCP discriminated against her intentionally when it terminated her for unsatisfactory performance. Further, Plaintiff's instruction is not complete as the term "particular intent" is not defined and the criteria only applies to claims under the ADA.

In total, Plaintiff's proposed instruction must be struck because has no applicability in this case and would therefore confuse the jury as to what elements Plaintiff needs to prove in order to prevail in her discrimination and/or retaliation claims

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 7:**
**CAA RETALIATION[5]**

Ms. Sourgoutsis claims that USCP retaliated against her because of Plaintiff Chrisavgi Sourgoutsis's participation in a sexual harassment investigation.

To prevail on this claim, Plaintiff Chrisavgi Sourgoutsis must prove all of the following by a preponderance of the evidence:

**First:** Plaintiff Chrisavgi Sourgoutsis participated in the sexual harassment investigation.

**Second:** Plaintiff Chrisavgi Sourgoutsis was subjected to a materially adverse action at the time, or after, the protected conduct took place.

**Third:** There was a causal connection between Ms. Sourgoutsis's participation in the sexual harassment investigation and USCP's decision to fire her.

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is termination followed shortly after USCP became aware of Ms. Sourgoutsis's participation in the sexual harassment investigation. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Ms. Sourgoutsis or a change in demeanor toward Ms. Sourgoutsis.

Ultimately, you must decide whether Ms. Sourgoutsis's participation in the sexual harassment investigation had a determinative effect on her termination.

"Determinative effect" means that if not for Ms. Sourgoutsis's participation in the sexual harassment investigation, the termination would not have occurred.

---

[5] Adapted from 3C Fed. Jury Prac. & Instr. § 171:25; *Third Circuit* 5.1.7 Elements of a Title VII Claim — Retaliation

<u>Objection</u>: This instruction would be confusing to the jury as it does not clearly state the elements and the standard required to prove retaliation for a protected activity.  The opening sentence is confusing and suggestive.  It does not describe in particularity the protected activity in which the plaintiff purportedly engaged. Further this instruction does not address the requirement of knowledge.  Further the language used does not include the Department's defense to the alleged claim. The examples are also overly suggestive and would confuse or unduly influence the jury to only focus on those types of examples.  The addition of the "causation" explanation does not elucidate the Plaintiff's burden and would also confuse the jury as to the burden of proof.  The language also suggests that proximity alone (no matter how much time has passed) may prove retaliation, which is not supported by case law.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 8:**
**CREDIBILITY**[6]

You are the sole judges of the credibility of the witnesses and the weight their testimony

deserves. You may be guided by the appearance and conduct of a witness, or by the manner in

which a witness testifies, or by the character of the testimony given, or by evidence contrary to

the testimony.

You should carefully examine all the testimony given, the circumstances under which

each witness has testified, and every matter in evidence tending to show whether a witness is

worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or

manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified,

and whether the witness impresses you as having an accurate recollection of these matters.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony

of different witnesses may or may not cause you to discredit such testimony.

After making your own judgment, you will give the testimony of each witness such

weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of

any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of

witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony

of a small number of witnesses as to any fact is more credible than the testimony of a larger

number of witnesses to the contrary.

---

[6] Adapted from 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.)

<u>Objection</u>:  This instruction unnecessarily adds confusion by adding information that the jury is not required to follow and is overly suggestive of how the jury should weigh the evidence.  The instruction is overly repetitive, especially the second to last paragraph.  The instruction is also incomplete because it does not speak to plausibility or implausibility of witness testimony and does not give any weight to accuracy of the witness testimony.  It also does not discuss factors that should not be considered in weighing witness credibility (such as protected characteristics).

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 9:
COMPENSATORY DAMAGES[7]**

If you find USCP discriminated or retaliated against Ms. Sourgoutsis based on her discrimination or protected activity, and then you must determine an amount that is fair compensation for plaintiff's damages.  You may award compensatory damages only for injuries plaintiff Ms. Sourgoutsis proves were caused by USCP's allegedly wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any reputational damage or loss of enjoyment of work or life that Ms. Sourgoutsis experienced as a consequence of USCP's disparate treatment in plaintiff's removal from his executive position and subjection of plaintiff to a hostile work environment. No evidence of the monetary value of such intangible things as reputational damage or loss of enjoyment of work or life  has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages you decide to award, you should be guided by common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guesswork.  On the other hand, the law does not require that Ms. Sourgoutsis prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Objection: This jury instruction misstates the law.  The instruction does not take into account that the CAA has a limit on compensatory damages of $300,000.

---

[7] Adapted from 3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.).

The first sentence is confusing for the jury in the way it is structured.  This instruction also includes language involving a hostile work environment and removal from an executive position, which are not causes of action alleged in the case and would likely confuse the jury. The instruction does not specifically state that the plaintiff has the burden of proof as to damages for any alleged harm she sustained as a result of alleged wrongful conduct.  Also the instruction does not distinguish compensatory damages from other pecuniary damages such as back pay/attorney's fees, which may not be awarded by a jury.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 10: [8]**
**LOST WAGES**

If you determine USCP retaliated against Ms. Sourgoutsis in terminating her, then you must determine the amount of damages that USCP's actions have caused her.

You may award as actual damages an amount that reasonably compensates Ms. Sourgoutsis for any lost wages and benefits, taking into consideration any increases in salary and benefits, including any bonuses or awards, that plaintiff would have received had plaintiff not been discriminated against.

Objection: This instruction misstates the law.  The jury cannot award lost wages or benefits.  It is the province of the Court to determine lost wages and benefits.

---

[8] Adapted from 3C Fed. Jury Prac. & Instr. § 172:71 (6th ed.).

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 11:** [9]
**NOMINAL DAMAGES**


If you find in favor of Ms. Sourgoutsis under Instruction *[number]*[10], but you find

plaintiff's damages have no monetary value, then you must return a verdict for plaintiff in the

nominal amount of one dollar.

---

[9] Adapted from 3C Fed. Jury Prac. & Instr. § 171:93 (6th ed.)

[10] Left intentionally blank for the final instructions.

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 12:**[11]
**STIPULATION OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

1)  Chris Sourgoutsis is a female. (Def. Answer at ¶ 7)

2)  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2006) is incorporated with respect to agencies of Congress by the Congressional Accountability Act (CAA), 2 U.S.C. §§ 1301-1438 (2006).

3)  Sourgoutsis is an "employee" as defined by 42 U.S.C. § 2000e (Title VII) and a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(c).

4)  USCP is a federal law enforcement agency.

5)  USCP is an "employer" as defined by 42 U.S.C. § 2000e (Title VII) and an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 (9)(D).

6)  From 2011 through 2017, USCP had an average of 1747 employees. Of that amount, on average, 314 of those employees were female.  This amounts to an average of approximately 18% of women in USCP's workforce from 2011 through 2017.  (USCP's 8/8/17 IROG resp. at No. 17)

7)  In the past five years, USCP administered the following policies on discrimination, harassment, misconduct, and retaliation:

---

[11] Adapted from 3 Fed. Jury Prac. & Instr. § 102:11 (6th ed.)

    o   USCP's Anti-Discrimination and Anti-Retaliation Policy (USCP643-653). This policy is made available to all employees on Defendant's intranet and is given to employees upon entering their recruit class.

    o   USCP's Sexual Harassment Biased Based Policing (USCPSOURGOUTSIS1435 -1483). This policy is provided as a training to all recruits.

    o   USCP's New Leadership Training (USCPSOURGOUTSIS 1484 -1513). This was provided as part of a training to newly promoted Sergeants and Lieutenants in 2016 and 2017.

(USCP's 4/17/17 IROG resp. at No. 4.)

8) The documents listed in stipulated fact No. 3 above were the only policies USCP implemented to ensure the full and proper integration and equal treatment of female officers at USCP from 1974 through the present. These were also the only policies provided to officers in supervisor or management roles.  (USCP's 8/8/17 IROG Resp. at No. 17)

9) The documents listed in stipulated fact No. 3, as well as Directive 2053.00, Equal Employment Opportunity and Diversity Policy (USCPSOURGOUTSIS 1800-1801) and the Annual Affirmation of Equal Employment Opportunity and Diversity statement (USCPSOURGOUTSIS 1517-1519) are all the documents USCP maintains concerning equal employment opportunities, diversity, inclusion, discrimination, or harassment in effect or released during Chief Dine's or Chief Verderosa's administrations.  (USCP's 8/8/17 IROG resp. at Nos. 18,19)

10) In November 2014, Ms. Sourgoutsis successfully completed training and graduated from the training academy. (Def. Answer at ¶ 27)

11) Following successful completion of training, Sourgoutsis became a probationary USCP Officer whose probationary period was scheduled to end on November 15, 2015. (Def. Answer at ¶ 28)

12) USCP received a picture of Ms. Sourgoutsis sitting on the wall sent by another officer. (Def. Answer at ¶ 46)

13) On August 15, 2015, Ms. Sourgoutsis was summoned to the Investigations Division and interviewed as a witness regarding allegations of sexual harassment made by other female officers against her supervisor, Sgt. Vias. (Def. Answer at ¶ 68)

14) The Office of Professional Responsibility investigated a complaint against Sgt. Tyrone Vias in June 2015 alleging conduct in violation of Defendant's Rules of Conduct. (2/9/17, Resp to RFA No. 3)

15) Ms. Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias referred to her and to other women officers as "Chica" or "Senorita." (Def. Answer at ¶ 71)

16) Ms. Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias has stood with his hands near his belt and rolls his hips and pelvis out toward others. (Def. Answer at ¶ 72)

17) Sourgoutsis alleged that Sgt. Vias made what she summarized as "inappropriate comments" toward her." (2/9/17, Resp to RFA No. 6)

18) Sourgoutsis reported to Sergeant Mark Shutter that Sergeant Vias made a comment that she thought weird and inappropriate about her. (Def. Answer at ¶ 73)

19) Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias complimented Plaintiff's Facebook profile picture. (Def. Answer at ¶ 74)

20) Directive 2052.004, USCP's policy relating to probationary periods, contains specific requirements for the supervision and evaluation of new officers such as Sourgoutsis. (Def. Answer at ¶ 93)

21) Pursuant to Directive 2052.004, USCP must "[e]stablish the employee's PECS performance plan and communicate EPP evaluations and how they relate to the employee's duties and responsibilities, both in writing and orally, within 30 days of appointment." (Def. Answer at ¶ 94)

22) USCP did not provide Sourgoutsis a thirty-day evaluation period following USCP's decision to terminate her. (2/9/17, Resp to RFA No. 13)

23) Per USCP's policy concerning probationary periods, supervisors are to create a career development plan for each employee. (2/9/17, Resp to RFA No. 14)

24) USCP conducts annual performance evaluations for officers. (2/9/17, Resp to RFA No. 18)

25) Chief Dine refused to meet with Sourgoutsis as requested in her appeal. (Def. Answer at ¶ 97)

26) Chief Dine denied the appeal and recommended termination of Sourgoutsis to the Capitol Police Board. (Def. Answer at ¶ 98)

27) Sourgoutsis was the only sworn or civilian employee that USCP recommended to Capitol Police Board for termination during their probationary period. (6/5/17 Resp. to P's 2nd RFAS, Request. No. 25)

28) USCP has not terminated any USCP sworn or civilian employee during their probationary year during the period of Chief Dine's or Chief Verderosa's administration, which includes December 2012 to present. (USCP's 6/5/17 IROG resp. at No. 14)

29) USCP permitted a civilian director of the Mission Assurance Bureau to resign before it recommended his termination to the Capitol Police Board in 2015 after USCP learned the director made improper remarks and engaged in conduct unbecoming as it relates to comments the director made about the medical condition of an inspector in the director's chain-of-command. The director and the inspector are male. (USCP's 6/5/17 IROG resp. at no. 14)

30) USCP is not aware of any command discipline or department discipline issued to any members of Sourgoutsis's recruit class 177. (USCP's 6/5/17 IROG resp. at no. 16)

Objection: This instruction is a mischaracterization of fact.  Plaintiff states that Defendant has agreed to all of the matters referenced in this instruction.  However, Defendant has not agreed to all of the matters referenced in this instruction.  Defendant has included its objections to these proposed stipulations within the pre-trial statement.  Furthermore, it is most appropriate to include any agreed upon stipulations as an exhibit vice inclusion in a jury instruction.

## [PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 13: [12]
### BURDEN OF PROOF

The party who makes a claim has the burden of proving it. This burden of proof means that the plaintiff must prove every element of her claim by a preponderance of the evidence.

To establish an element by a preponderance of the evidence, the party must show evidence that produces in your mind the belief that the thing in question is more likely true than not true. The party need not prove any element beyond a reasonable doubt, the standard of proof in criminal cases, or to an absolute or mathematical certainty.

If you believe that the evidence is evenly balanced on an issue the plaintiff had to prove, then your finding on that issue must be for the defendant.

In arriving at your verdict, you should consider only the evidence in this case. That said, in determining whether a party has carried its burden of proof, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience and common sense. You should not rely on speculation or guesswork.

You should consider all the evidence bearing on each claim, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party, whether that party or the adversary produced it. You should not give more or less weight to evidence just because it happened to be produced by one side or the other.

*Predecessor:* Civil Jury Instruction Nos. 2-3, 2-8, and 2-9

*Statutes:* (None.)

---

[12] Adapted from D.C. Std. Civ. Jury Instr. No. 2-3

*Cases: Wallace v. Eckert,* 57 A.3d 943, 951 (D.C. 2012); *Gebremdhin v. Avis Rent-A-Car Sys.*, 689 A.2d 1202, 1204 (D.C. 1997); *Giordano v. Sherwood*, 968 A.2d 494, 498 (D.C. 2009); *Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002); *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 951 (D.C. 2001); *In re E.D.R.,* 772 A.2d 1156, 1160 (D.C. 2001); *United States v. Hsia*, 131 F. Supp. 2d 195, 209 (D.D.C. 2001); *Bahura v. S.E.W. Investors*, 754 A.2d 928, 939 (D.C. 2000); *Hopkins v. Price Waterhouse,* 737 F. Supp. 1202, 1204 n.3 (D.D.C. 1990), *aff'd*, 920 F.2d 967, 287 U.S. App. D.C. 173 (1990); *Zindler v. Buchanon,* 61 A.2d 616, 617-618 (D.C. 1948)

<u>Objection</u>: This instruction is incomplete.  Plaintiff's proposed jury instruction must also include language stating that if Plaintiff fails to prove any essential part of her discrimination or retaliation claim, by a preponderance of the evidence, you should find for Defendant as to that claim.[13]

---

[13] Modern Federal Jury Instructions-Civil 3.7.1

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 14:[14]**
**CHARTS AND SUMMARIES AS DEMONSTRATIVE OR INSTRUCTIONAL AIDS**

The lawyers have shown to you charts and summaries to help explain the facts. The charts or summaries themselves, however, are not evidence or proof of any facts. If any chart or summary does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

In other words, the charts or summaries are used only as a convenience; you should disregard any chart or summary that does not state the truth based on the evidence.

You may consider both types of evidence equally. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence. You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.

*Predecessor:* Civil Jury Instructions No. 3-10

*Statutes:* (None.)

*Cases: United States v. Lemire*, 720 F.2d 1327, 1348 n.32 232 U.S. App. D.C. 100 (1983) (approving similar instruction in criminal case).

**Comment**

This instruction is to be given where charts and summaries are used as demonstrative or instructional aids but that are not actually admitted into evidence. This Instruction is intended to address the concern that a jury will treat such charts or summaries as additional evidence or as corroborative of the truth of the underlying evidence or testimony [*United States v. Lemire*720 F.2d 1327, 1348 n.32 232 U.S. App. D.C. 100 (1983)].

This instruction is not to be used in instances in which summaries are sought to be admitted into evidence. In such cases, the Federal Rules of Evidence authorize the admission into evidence of

---

[14] Adapted from D.C. Std. Civ. Jury Instr. No. 2-15

summaries of documents too voluminous to be conveniently examined in court [Fed. R. Evid. 1006; *see also Law of Evidence in the District of Columbia* § 2006.01 (5th ed 2014)]

A district court does not commit error if it admits a summary exhibit without giving a limiting instruction to the jury [*United States v. Weaver*, 281 F.3d 228, 232-233, 350 U.S. App. D.C. 121 (2002) (discussing the legal status of summary exhibits when used as aids and when admitted as evidence)]

*Other References:* (None.)

### [PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 15: [15]
### ADOPTING PRIOR INCONSISTENT STATEMENTS

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior inconsistent statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

*Predecessor*: Civil Jury Instruction No. 3-9:·

*Statutes*: D.C. Code§ 14-102(b).

*Cases*: *Byers v. United States*, 649 A.2d 279,284 (D.C. 1994); *Turner v. United States*, 443 A.2d 542, 550 n.9 (D.C. 1982); Watts v. United States, 362 A.2d 706, 711-712 n.11 (D.C. 1976) (en banc).

**Comment**

When a witness affirms the truth of a prior inconsistent statement, the prior inconsistent statement is to be considered not only as bearing on the credibility of the witness but also as substantive evidence [*Turner v. United States*, 443 A.2d 542, 550 n.9(D.C.1982),*citing Watts v. United States*, 362A.2d 706, 711-712n.11 (D.C. 1976) . (en banc)]. When a witness affirms the truth of a prior inconsistent statement, the finder of fact is presented with two conflicting statements with equal force as evidence [*Watts v. United States*, 362 A.2d 706, 711-712 n.11 (D.C. 1976) (en banc), *quoting United States v. Borelli*, 336 F.2d 376, 391 (2d Cir. 1964) (collecting cases)].

Prior inconsistent statements that are· not made under oath but are adopted by the witness at trial are admissible as substantive evidence after being presented to the witness while under oath at trial [*Tyer v. United States*, 912 A.2d 1150, 1161 (D.C. 2006)]. Ordinarily, prior inconsistent statements will be presented to the witness pursuant to the procedures governing impeachment; however, a witness's adoption of a prior inconsistent statement cures any deficiency [*Byers v. United States*, 649 A.2d 279, 284 (D.C. 1994) ("[N]either the absence of a proper foundation for the impeachment nor the omission of a cautionary instruction is reversible error where, as here, the witness adopts the impeaching evidence," *citing Jones v. United States*, 579 A.2d 250, 253 (D.C. 1990))].

---

[15] Adapted from D.C. Std. Civ. Jury Instr. No. 2-14

Other References: See Civil Jury Instruction No. 2-13 (impeachment by prior inconsistent statements).

Objection: This instruction is incomplete.  Plaintiff's instruction is defective because it does not consider: (1) the differences between a party's prior inconsistent statement and other witnesses' prior inconsistent statements; and (2) in considering a prior inconsistent statement(s), a jury should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.[16]

---

1.   [16] Modern Federal Jury Instructions-Civil 1.14 (You may consider statements given by Plaintiff, or Defendant's managers before trial as evidence of the truth of what he/she said in the earlier statements, as well as in deciding what weight to give his/her testimony. With respect to other witnesses, the law is different. If the jury decides, before the trial, one of these witnesses made a statement not under oath that is inconsistent with his testimony in court, the jury may consider the earlier statement only in deciding whether his testimony in court is true and what weight to give to his testimony in court.)

**[PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 16:[17]**
**FAILURE TO PRODUCE WITNESS OR OTHER EVIDENCE**

If a party failed to produce relevant evidence or failed to a call a witness that could have

given relevant testimony, and that evidence, or witness, was particularly available to that party,

and that party did not sufficiently explain why the evidence, or witness, was not produced, then

you are permitted to infer that the evidence, or witness, would have been unfavorable to the party

who failed to produce the evidence or witness.

*Predecessor:* Civil Jury Instruction Nos. 3-4 and 3-6.

*Statutes:* (None.)

*Cases: Haywood v. Unites States,* 965 A.2d 26, 34-35 (D.C. 2009); *Citizens Comm. for D. C. Video Lottery Terminal Initiative v. D. C. Bd. of Elections & Ethics,* 860 A.2d 813, 817 (D.C. 2004); *McPherson-Corder v. Chinkhota,* 835 A.2d 1081, 1091 (D.C. 2003); *Murphy v. McCloud,* 650 A.2d 202, 216 (D.C. 1994); *Harris v. United States,* 602 A.2d 154, 160 (D.C. 1992) (en banc); *Cooper v. United States,* 415 A2d 528,534 (D.C. 1980); *Dent v. United States,* 404 A.2d 165, 169-170 (D.C. 1979).

**Comment**

This Instruction should only be given in limited circumstances when certain conditions are met, and after obtaining an advance ruling from the judge on its permissibility. The District of Columbia Court of Appeals has "warned of the dangers of such 'missing witness' instructions and discouraged trial courts from giving them too freely" *[McPherson-Corder v. Chinkhota,* 835 A.2d 1081, 1083 (D.C. 2003)]. The concern is that the jury will give undue weight to the presumed content of testimony not presented, and insufficient weight to that which was presented *[Thomas v. United States,* 447 A.2d 52, 58 (D.C. 1982)].

Thus, this Instruction should be used only when certain conditions are met *[McPherson-Corder v. Chinkhota,* 835 A.2d · 1081, 1083 (D.C. 2003)]. First, the witness or evidence must be particularly within the power of the party to produce that evidence or witness *[Dent v. United States,* 404 A.2d 165, 169-170 (D.C. 1979)]. Given the openness of civil discovery, some courts have suggested that except where the identity of the witness is concealed or other serious obstacles are interposed, it may be rare that a civil litigant can establish the requisite disparity in witness availability for the missing witness instruction to be given. *[McPherson~Corder v. Chinkhota,* 835

---

[17] Adapted from D.C. Std. Civ. Jury Instr. No. 2-17

A.2d 1081, 1086 (D.C. 2003)]. Nevertheless, there may be circumstances where a missing witness or document instruction is appropriate in the civil context. *[McPhersonCorder v. Chinkhota,* 835 A.2d 1081, 1091 (D.C. 2003) (where party did not cooperate with opposing side's inquiries related to identity of witness and party had no other means to identify the witness, the "peculiarly available" prong was met); *see also Citizens Comm. for D. C. Video Lottery Terminal Initiative v. D. C. Bd. of Elections & Ethics,* 860 A.2d 813,817 (D.C. 2004) (noting that trier of fact was permitted to draw unfavorable inference about missing testimony, where witnesses were peculiarly within the party's control by virtue of their employment and they could be expected to shed significant light on the issues)].

Second, the evidence or testimony must be material and be likely to elucidate a matter of relevance to the case *[Dent v. United States,* 404 A.2d 165, 169-170 (D.C.1979)]. In order to meet the elucidation requirement, the missing evidence or witness must not be cumulative *[see Cooper v. United States,* 415 A.2d 528,534 (D.C. 1980)].

This Instruction consolidates and simplifies prior Civil Jury Instructions 3-4 and 3-6. In addition, because this Instruction is not appropriate where the missing evidence or testimony is equally available to both sides, is immaterial, or is cumulative, the language from prior Civil Instruction Jury 3-4, which previously instructed jurors that they "should not draw such an inference from the absence of [evidence] [a material witness] if [it] [she] [he] was equally available to both parties[, or the evidence or testimony would have been merely cumulative or immaterial]" has been deleted.

***Other References:*** *Standardized Criminal Jury Instructions for the District of Columbia* Instr. 2.300 (Barbara E. Bergman ed., 5th ed. 2

Objection: This instruction is incomplete.  The instruction is defective because it merely states that a jury is to infer that a witness would have been unfavorable to the party that failed to produce the witness if it does not sufficiently explain to the jury why it did not call the witness. There are several elements that are required before a jury should be instructed to infer that a witness would have haven unfavorable to a party if the witness was not called to testify.  First, a party has to be in the best position to produce the witness.  In this case, both Parties are in the best position to call a witness through use of this Court's subpoena authority.  Second, the witness must have provided important new testimony.  Third, the jury must determine that the

witness would not have provided cumulative testimony.  Finally, the jury must consider whether

the Party had a reason for not calling the witness.[18]

---

[18] Modern Federal Jury Instructions-Civil 75-3

## [PLAINTIFF'S] PROPOSED JURY INSTRUCTION NO. 17:[19]
## CONSIDERATION OF THE EVIDENCE--CORPORATE PARTY'S AGENTS AND EMPLOYEES

One party in this case is a corporation. A corporation can act only through individuals as its agents or employees. In general, if any agent or employee of a corporation acts or makes statements while acting within the scope of his or her authority as an agent, or within the scope of his or her duties as an employee, then under the law those acts and statements are of the corporation.

*Predecessor:* (None.)

*Statutes:* (None)

*Cases: General Motors Acceptance Corp. v. Froelich,* 273 F.2d 92, 95, 106 U.S. App. D.C. 357 (1959) (torts); *Washington Gas Light Co. v. Dann,* 70 F.2d 746, 749, 63 App. D.C. 142 (1934) (contracts).

**Comment**

This Instruction states the general rule by which the actions and statements of agents and employees of a corporation are imputed to the corporation. The cited cases generally support this Instruction. This Instruction also accords with those of other jurisdictions *[see, e.g.,* 1 Kevin F. O'Malley, et al. *Federal Jury Practice and Instructions§§* 103.31, 108.01 (6th ed. 2006); Judicial Council of California *Civil Jury Instructions* Instr. 3700 (2007)].

**CAVEAT:** In cases involving principal-agent or employer-employee relationships, this Instruction used alone might be insufficient. Instructions defining the relationships, and the duties and liabilities attending them, would be needed *[see, e.g.,* § 6.01 *et seq.* (Jury Instruction 6-1 *et ~eq)].*

---

[19] Adapted from D.C. Std. Civ. Jury Instr. No. 4-5

**V.**     **DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

   **A.  <u>Jury Instructions At the Start Of Trial ("Pre-trial")</u>**

**DEFENDANT'S PRE-TRIAL INSTRUCTION NO. 1**
**OPENING INSTRUCTIONS; NATURE OF CASE[20]**

Members of the jury:

   You are about to begin the trial of the case about which you heard some details during the process of jury selection. Before the trial begins, however, there are certain instructions you should have in order to better understand what will be presented before you and how you should conduct yourself during the trial.

   A party who brings a lawsuit is called the plaintiff.  The plaintiff in this case is Chrisavgi Sourgoutsis.  The party against whom the suit is brought is called the defendant.  In this case, the defendant is the United States Capitol Police (also referred to as the Capitol Police).

   Ms. Sourgoutsis claims that the Capitol Police unlawfully terminated her employment on the basis of sex and retaliated against her by terminating her employment based upon her participation in an investigation of a sergeant on the Capitol Police. The Capitol Police has denied both of these allegations.  The Capitol Police claims that Ms. Sourgoutsis was removed solely because of her pattern of violating Capitol Police rules.


   <u>Objection</u>: Referring to the "an investigation of a sergeant on the Capitol Police" instead of a sexual harassment investigation in the third paragraph.

   <u>Objection</u>: include "and treated her adversely" after "terminated her employment" in the third paragraph.

---

[20] Adapted from 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 101.01 (5th ed. 2000)

**DEFENDANT'S PRETRIAL INSTRUCTION NO. 2**
**PRELIMINARY INSTRUCTION BEFORE TRIAL[21]**

Before we begin the trial, I want briefly to describe how this trial will work and some important legal rules. I will give more detailed instructions at the end of the trial after you have heard all the evidence and before you start your deliberations.

Your responsibility as jurors is to determine the facts in the case and to apply those facts consistent with the legal principles that I will explain to you. You—and only you—are the judges of the facts. You alone determine the weight of the evidence, including the believability of each witness.

My responsibility is to conduct this trial in a fair and efficient manner. It is your sworn duty as jurors to accept and apply the law as I explain it to you. You should not take anything I do or say as any indication of my opinion about how you should decide the facts or what your verdict should be.

To help you remember, you can take notes for your personal use. Your notes are only an aid to your memory, and they are not evidence. Those jurors who do not take notes should rely on their own memory of the evidence.

Whether you take notes or not is entirely up to you. Some people find that taking notes helps them remember testimony and evidence; others find it distracts them from listening to and watching the witnesses. You should make your own choice because each of us knows best how we take in and remember information.

In case you want to take notes, we have provided a notebook and pen for each of you. Please take any notes in this notebook. If you take notes, you can take your notebook back with

---

[21] Adapted from D.C. Std. Civ. Jury Instr. No. 1-2.

you into the jury room at the end of the trial to review while you deliberate. In breaks and overnight during the trial, please leave your notebooks on your chair during breaks and overnight. We will keep them safe and secure.

At the end of the trial, after you deliver your verdict, your notebooks will be collected, and the pages with notes will be torn out and destroyed. No one will ever look at any notes you have taken, so you may feel free to write whatever you wish.

You must pay careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory and your notes if you choose to take any.

Objection: No Objection.

**DEFENDANT'S PRETRIAL INSTRUCTION NO. 3**
**BURDEN OF PROOF**[22]

I will now explain some legal terminology, including the burden of proof.

The plaintiff is the person who starts a lawsuit, and the defendant is the person the plaintiff has sued. The fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that her evidence is entitled to greater weight than the defendant's evidence.

The plaintiff must prove that the factual basis of her claim is more likely true than not true. This burden of proof is sometimes called "the preponderance of the evidence" standard. I will explain to you in more detail at the end of the case what the plaintiff has to prove.

Objection: No Objection.

---

[22] *Id.*

**DEFENDANT'S PRE-TRIAL INSTRUCTION NO. 4**
**OBJECTIONS[23]**

The lawyers may object from time to time to questions, exhibits, and statements. You must not hold such objections against the lawyer who makes them or the party the lawyer represents. A lawyer has a responsibility to object to evidence or argument he or she considers inappropriate.

If I overrule an objection to a question, it means only that the law permits the witness to answer the question. It is still up to you to decide how much weight, if any, the answer is entitled to.

If I sustain an objection, you should not hold it against the lawyer who asked the question. It means only that the law does not permit the witness to answer the question. You should ignore the question and you must not guess what the answer to the question would have been. If a question is asked and answered, and I then rule that the answer should be stricken, you may not consider either the question or the answer in your deliberations.

Sometimes a lawyer's question suggests the existence of a fact, but the lawyer's question alone is not evidence. It is the witness's testimony that is evidence.

Objection: No Objection.

---

[23] *Id.*

**DEFENDANT'S PRE-TRIAL INSTRUCTION NO. 5**
**CONDUCT OF THE JURY[24]**

As I mentioned, you must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent investigation or research about this case. For example, you cannot use the Internet to research the facts or the law or the people involved in the case. Research includes something even as simple or seemingly as harmless as getting a definition of a legal term over the Internet or from a dictionary.

I want to explain why you should not conduct your own investigation or research. All parties have a right to have the case decided only on evidence and legal rules that they know about and to which they have a chance to respond. Relying on information you get outside this courtroom would be unfair because the parties would not have a chance to refute, correct, or explain it. Unfortunately, information that we get over the Internet or from other sources may be incomplete or misleading or just plain wrong. It is up to you to decide whether to credit any evidence presented in court, and only the evidence presented in court may be considered. If evidence or legal information has not been presented in court, you cannot rely on it.

You are not permitted to discuss this case with anyone until you begin your deliberations after I give you final instructions. This means that, until the case is submitted to you, you may not talk about it with family members, friends, or even your fellow jurors. You should not communicate about the case by any means—in person, over the phone, or using the Internet, including emailing, texting, blogging, or using social media such as Facebook or Twitter. The only communication you should have is with the jury as a whole once your deliberations begin.

---

[24] *Id.*

This is because we want you to keep an open mind and not make any decisions until you've heard all the evidence and talked with your fellow jurors as a group.

When we take our first recess or when you leave the courthouse at the end of the day, you can call home or work and tell them you have been selected for a jury and how long it will last. They will undoubtedly ask what kind of case you're sitting on. You may tell them it is a civil case, but nothing else.

When the case is over, you may discuss any part of it with anyone, if you wish to do so.

As part of the prohibition against communicating with others, you may not speak with the parties, their lawyers, or the witnesses. And please do not be offended if a lawyer or party does not respond if you say hello if you happen to see them during the trial. They are under instructions not to communicate with you in any way under any circumstances.

It is unlikely, but if someone tries to talk to you about the case, you should refuse to do so and immediately let me know by writing a note and giving it to the clerk. Do not tell the other jurors; just let me know, and I'll bring you in to discuss it outside the hearing of the other jurors.

Similarly, if during the trial you unexpectedly realize that you know anyone involved in the case or something about the facts, you should raise your hand immediately and ask to speak with me.

There may be reports in the newspaper or on television or in other media concerning this case during the trial. If there is any such media coverage, you may be tempted to read, listen to, or watch it. You must not do so. That is because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else. Just let me or the courtroom clerk know as soon after it happens as you can, and I will then discuss it with you.

<u>Objection</u>: No Objection.

**B.  <u>Jury Instructions After Close Of Evidence ("Post Trial")</u>**

**INTRODUCTION**

Members of the jury, it is now time for me to give you your instructions as to the law that applies to this case and the evidence that has been presented.  After I have given you these instructions, you will hear closing arguments from the parties.  Then I will give a few final directions before you begin your deliberations.  It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this trial.

My instructions begin with the general rules that govern your considerations of this civil case.  I will then instruct you as to the specific law that you are to apply to the claims in this case. After closing arguments, I will explain the procedures you will follow while deliberating.

Please know that I will be providing a copy of these instructions to you.  During your deliberations, you may refer to these instructions if you want to.  You are permitted to refer to any portion of the instructions, but as you deliberate, you must consider the instructions as a whole, and you may not follow some and ignore others.  If you have any questions about the instructions, you should send me a note – I will explain to you the process for doing this after closing arguments.  The copy of these instructions that is given to you for use during your deliberations must be returned to me when you render your verdict.

As I explained to you at the outset, my role has been to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

You also have several duties.  First of all, it is your duty to accept the law as I instruct you.  As I just stated, you must consider all of the instructions as a whole, and you may not ignore or refuse to follow any of them.

It is also your function, as the jury, to determine what the facts are in this case.  You are the sole judges of the facts.  While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence.  You alone decide the credibility or believability of the witness.

You should determine the facts without prejudice, fear, sympathy, or favoritism.  You should not be improperly influenced by anyone's race, ethnic origin, or sex.  Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case.  If you believe that I have expressed or indicated any such opinion, you should ignore it.  The verdict in this case is your sole and exclusive responsibility.

If any reference by me or the attorney's to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.

Objection: No Objection.

# EVIDENCE

## DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 1
## EQUALITY OF LITIGANTS — GOVERNMENT AGENCIES[25]

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion.  It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth. A government agency, whether large or small, has the same right to a fair trial as a private individual. All persons, including individuals and government agencies, stand equal before the law and are to be treated as equals in this court. In other words, the fact that a plaintiff or defendant is an individual or a government agency must not affect your decision.

Objection: No Objection.

---

[25] Adopted from Standardized Civil Jury Instructions for the District of Columbia, Matthew Bender & Company, Inc. (2014)).  Modifies "corporations" to "government agencies."

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 2**
**BURDEN OF PROOF**[26]

The party who makes a claim has the burden of proving it. This burden of proof means that the plaintiff – Ms. Sourgoutsis – must prove every element of her claim by a preponderance of the evidence.

To establish an element by a preponderance of the evidence, the party must show evidence that produces in your mind the belief that the thing in question is more likely true than not true. The party need not prove any element beyond a reasonable doubt, the standard of proof in criminal cases, or to an absolute or mathematical certainty.

If you believe that the evidence is evenly balanced on an issue the plaintiff had to prove, then your finding on that issue must be for the defendant.

In arriving at your verdict, you should consider only the evidence in this case. That said, in determining whether a party has carried its burden of proof, you are permitted to draw, from the facts that you find have been proven, such reasonable conclusions as you feel are justified in the light of your experience and common sense. You should not rely on speculation or guesswork.

You should consider all the evidence bearing on each claim, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party, whether that party or the adversary produced it. You should not give more or less weight to evidence just because it happened to be produced by one side or the other.


Objection: No Objection.

---

[26] D.C. Std. Civ. Jury Instr. No. 2-3.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 3**
**EVIDENCE IN THE CASE[27]**

During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated to by the parties.  You may consider any facts to which the parties have stipulated or agreed to be undisputed.

Statements and arguments of the lawyers are not evidence. They are intended only to help you to understand the evidence. Similarly, the questions of the lawyers are not evidence.

If anyone describes the evidence you have heard differently from the way you remember it, it is your memory that should control during your deliberations.

You must rely on your own recollection of the testimony and on any notes you may have taken during the trial. Although the court reporter has been transcribing the trial, a transcript will not be available for you to review during your deliberations.

Objection: No Objection.

---

[27] D.C. Std. Civ. Jury Instr. No. 2-1.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 4**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE[28]**

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts from which reasonable conclusions may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

Objection: No Objection.

---

[28] D.C. STD. CIV. JURY INSTR. NO. 2-2.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 5**
**JUDICIAL NOTICE[29]**

In this case, I have taken judicial notice of [insert facts], which I regard as matters of common knowledge or matters that can be determined easily through undisputed sources. You should consider [this fact] [these facts] as included in the evidence and proven.

Objection: No Objection.

---

[29]  D.C. Std. Civ. Jury Instr. No. 2-4.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 6**
**INADMISSIBLE AND STRICKEN EVIDENCE[30]**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. Objections are not evidence. You must not hold such objections against the lawyer who made them or the party he or she represents. It is the lawyers' responsibility to object to evidence that he or she believes is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, then you should ignore the question and you must not guess about what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, then you should ignore both the question and the answer, and they should play no part in your deliberations.

Similarly, if I sustained an objection to an exhibit, then you should ignore the exhibit and it should play no part in your deliberations.

Objection: No Objection.

---

[30] D.C. Std. Civ. Jury Instr. No. 2-5.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 7**
**STIPULATIONS**[31]

Stipulation of Fact: The parties may stipulate—that is, agree—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

Objection: No Objection.

---

[31] D.C. Std. Civ. Jury Instr. No. 2-6.

## DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 8
## EVIDENCE ADMITTED FOR A LIMITED PURPOSE[32]

Some evidence was admitted for a limited purpose only. Evidence concerning the Capitol Police's treatment of Ms. Sourgoutsis while she was in the USCP Training Academy Program and while she was Private with Training at the Uniformed Services Bureau, Capitol Division, including any discipline, counseling, or evaluations she did or did not receive may be considered only for the limited purpose of providing context and background to the claims and defenses asserted by the parties and for no other purpose.  The Capitol Police's treatment of Ms. Sourgoutsis as to discipline, counseling, or evaluations is not the basis of any claim brought by Ms. Sourgoutsis.  Ms. Sourgoutsis challenges only the Capitol Police's decision to terminate her as discriminatory based on her sex or retaliatory based on her protected activity.  Ms. Sourgoutsis cannot use evidence of the Capitol Police's treatment of her as to discipline, counseling, or evaluations to establish her claims that the Capitol Police discriminated or retaliated against her by a preponderance of the evidence when it terminated her.[33]

Objection: Evidence of treatment that occurred before the statute of limitations may be presented to argue motive, intent and absence of mistake. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

---

[32] D.C. STD. CIV. JURY INSTR. NO. 2-7.

[33] *See United Airlines Inc. v. Evans*, 431 U.S. 553 (1977).

## DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 9
## CREDIBILITY OF WITNESSES[34]

In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the credibility of the witnesses. In other words, you alone determine whether to believe any witness and to what extent any witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the witness's age, demeanor, capacity to observe and recollect facts, and any other facts and circumstances bearing on credibility. You may consider whether the witness has any motive for not telling the truth, any interest in the outcome of this case, or any friendship or animosity toward other persons involved in this case. You may consider the plausibility or implausibility of the testimony of a witness. You may also consider whether the witness's testimony has been contradicted or supported by other evidence.

Objection: No Objection.

---

[34] D.C. Std. Civ. Jury Instr. No. 2-9.

## DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 10
## NUMBER OF WITNESSES AND EXHIBITS[35]

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits on either side—it depends on the quality, and not the quantity, of the evidence. It is up to you to decide whether to credit the testimony of a smaller number of witnesses or a small number of exhibits on one side or the testimony of a greater number of witnesses or a greater number of exhibits on the other side.

Objection: No Objection.

---

[35] D.C. Std. Civ. Jury Instr. No. 2-10.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 11**
**EXPERT OPINION[36]**

Some witnesses testified as experts. A person can be an expert based on his training, skill, experience, or education.

You should evaluate expert testimony like any other evidence. You may give expert testimony as much or little weight as you think it deserves, taking into account the witness' training and experience, his or her credibility, the reasons given for the opinion, and all the other evidence in the case. You should consider all of these factors in resolving any conflict in the testimony of different expert witnesses.

Objection: There will be no expert testimony at trial.

---

[36]D.C. Std. Civ. Jury Instr. No. 2-11.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 12**
**DEPOSITIONS AS EVIDENCE[37]**

A deposition is the testimony of a person taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers. During the trial, you heard deposition testimony that was [read from the deposition transcript/presented by videotape]. You should give deposition testimony the same fair and impartial consideration you give any other testimony. You should not give more weight or less weight to deposition testimony just because the witness did not testify in court.

Objection: No Objection.

---

[37] D.C. STD. CIV. JURY INSTR. NO. 2-12.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 13**
**IMPEACHMENT BY PRIOR INCONSISTENT STATEMENT[38]**

You have heard evidence that a witness previously made statements and that these statements may be inconsistent with the witness' testimony here at trial. It is for you to decide whether any of these prior statements was made and, if one or more was made, whether it is inconsistent with the witness' testimony during this trial. If you find that any prior statement is inconsistent with the witness' testimony here in court, you may consider this inconsistency in judging the credibility of the witness.

In one respect, the law treats prior statements that are inconsistent with court testimony differently depending on whether or not the prior statement was made under oath. If the prior inconsistent statement was made under oath, you may consider the statement as evidence that what the witness originally said was true. If the prior inconsistent statement was not under oath, you may not consider it as evidence that what the witness said in the earlier unsworn statement was true. Whether or not the prior inconsistent statement was under oath, you may consider the inconsistency in judging the witness' credibility.

Objection: No Objection.

---

[38] D.C. Std. Civ. Jury Instr. No. 2-13.

**DEFENDANT'S POST TRIAL EVIDENCE INSTRUCTION NO. 14**
**ADOPTING PRIOR INCONSISTENT STATEMENTS[39]**

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the

prior inconsistent statement both to evaluate the witness's credibility and as evidence of the truth

of any fact contained in that statement.

    <u>Objection</u>: No Objection.

---

[39] D.C. STD. CIV. JURY INSTR. NO. 2-14.

## SUBSTANTIVE CLAIMS
## INTRODUCTION

I will now move on to instruct you regarding the specifics of the claims alleged in this

case.  At the beginning of the trial, I explained to you the two claims in the complaint filed in this

case.  I also gave you a brief summary of the elements of those claims – that is, the specific facts

that the plaintiff had to prove by a preponderance of the evidence in order for you to find the

defendant liable.  I will now explain the claims in the complaint, and I will instruct you once

again on the elements of each of the claims.

In this case, Ms. Sourgoutsis claims that when his former employer, the Capitol Police,

terminated her in December of 2015, it discriminated against her based on her sex and/or

retaliated against her because of her protected activity of participating in an internal investigation

into a sergeant's alleged misconduct in violation of a federal law known as the Congressional

Accountability Act (also referenced as the "CAA").  The Capitol Police denies that it

discriminated or retaliated against Ms. Sourgoutsis when it terminated her from her position as a

police officer, and asserts that she was terminated for job-performance reasons unrelated to her

sex or her participation in the internal investigation.

Under the CAA, it is unlawful for an employing office to fire an employee because of

that employee's sex.  It is also unlawful for an employing office to intimidate, take reprisal

against, or otherwise discriminate against an employee because the employee has opposed

unlawful discrimination.

As you listen to these instructions, please keep in mind that many of the terms I will use,

and you will need to apply, have a special meaning under the CAA.  So please remember to

consider the specific definitions I give you, rather than using your own opinion of what the terms

mean.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 15**
**CLAIM # 1: CAA DISPARATE TREATMENT – ESSENTIAL FACTUAL ELEMENTS**
**(SINGLE MOTIVE/PRETEXT THEORY)**

Ms. Sourgoutsis alleges that the Capitol Police terminated her employment because she is a woman in violation of the CAA.  In order for Ms. Sourgoutsis to establish her discrimination claim against the Capitol Police under the CAA, Ms. Sourgoutsis must prove all of the following by a preponderance of the evidence:

1.     That the Capitol Police terminated Ms. Sourgoutsis, and

2.     That Ms. Sourgoutsis's sex was the determining factor in the Capitol Police's decision to terminate Ms. Sourgoutsis.

The parties have stipulated, or agreed, to the fact that the Capitol Police terminated Ms. Sourgoutsis's employment effective December 29, 2015.  That means the only dispute concerns the second element, which is whether Ms. Sourgoutsis has proved by a preponderance of the evidence that the Capitol Police terminated Ms. Sourgoutsis based on her sex.

The question you must answer is whether Ms. Sourgoutsis's sex was a determinative factor with respect to the Capitol Police's decision to terminate her.  "Determinative factor" means that but for Ms. Sourgoutsis's sex, she would not have been terminated.[40]

Although Ms. Sourgoutsis must prove that the Capitol Police acted with intent to discriminate on the basis of sex, Ms. Sourgoutsis is not required to prove that the Capitol Police acted with the particular intent to violate Ms. Sourgoutsis's rights under the CAA. Moreover, Ms. Sourgoutsis is not required to produce direct evidence of the defendant's intent to discriminate, such as statements admitting discrimination.

---

[40] *Ponce v. Billington*, 679 F.3d 840, 844-46 (D.C. Cir. 2012).

Ms. Sourgoutsis's own opinion or subjective belief or speculation that she was discriminated against, no matter how genuinely felt, is insufficient to support a claim of intentional discrimination.  Ms. Sourgoutsis must prove that the Capitol Police made the decision to terminate her because of her sex.

The Capitol Police asserts that it acted lawfully with respect to Ms. Sourgoutsis and ultimately terminated her because of her actions of repeatedly violating Department rules and her unwillingness to take total responsibility for that misconduct.  Your duty is not to second-guess the wisdom of the Capitol Police's business decision.  You cannot find intentional discrimination simply because you disagree with the decision to terminate Ms. Sourgoutsis or believe the decision to have been poor, unreasonable, or unfair.  An employer has the right to terminate its employees so long as the employer is not making the decision because of an employee's sex. You must consider only whether the Capitol Police decided to terminate Ms. Sourgoutsis because of discrimination.

However, you may consider whether the Capitol Police's reason for its decision is merely a cover-up for intentional discrimination.   In determining whether the Capitol Police's stated reason for its decision is genuine or a cover-up for intentional discrimination, you must examine the facts as they appeared to the individuals involved in the decision at the time the decision was made.

If you find that Ms. Sourgoutsis has proven each of the two elements of a CAA discrimination claim by a preponderance of the evidence, you should enter a verdict in favor of Ms. Sourgoutsis.  If, on the other hand, you find that Ms. Sourgoutsis has failed to prove any of the elements by a preponderance of the evidence or if you believe the Capitol Police's explanation for its action in terminating Ms. Sourgoutsis, you must find for the Capitol Police.

<u>Objection</u>: Determinative factor rather than determining in bullet point two.

<u>Objection</u>: No statement that direct evidence was not required.

<u>Objection</u>: No pretext instruction.

<u>Objection</u>: Argumentative instead of balanced statement of law.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 16**
**CLAIM # 1: CAA DISPARATE TREATMENT – ESSENTIAL FACTUAL ELEMENTS**
**(MIXED MOTIVE THEORY)[41]**

Ms. Sourgoutsis alleges that the Capitol Police terminated her employment because she is a woman in violation of the CAA.  In order for Ms. Sourgoutsis to establish her discrimination claim against the Capitol Police under the CAA, Ms. Sourgoutsis must prove all of the following by a preponderance of the evidence:

1.  That the Capitol Police terminated Ms. Sourgoutsis, and

2.  That Ms. Sourgoutsis's sex was a motivating factor in the Capitol Police's decision to terminate Ms. Sourgoutsis.

You must find for the Capitol Police if either of these elements has not been proved by a preponderance of the evidence.

The parties have stipulated, or agreed, to the fact that the Capitol Police terminated Ms. Sourgoutsis's employment effective December 29, 2015.  That means the only dispute concerns the second element, which is whether Ms. Sourgoutsis has proved by a preponderance of the evidence that the Capitol Police intentionally discriminated against Ms. Sourgoutsis based on her sex.

The question you must answer is whether Ms. Sourgoutsis's sex was a motivating factor with respect to the Capitol Police's decision to terminate her.[42]  "Motivating factor" means that it was a factor that led to the decision.  The discriminatory "motivating factor" need not have been the only motivating factor.  Ms. Sourgoutsis need only prove that her sex played a significant part in the Capitol Police's decision to terminate her.

---

[41]Adapted from Modern Federal Jury Instructions, ¶ 88.03[1].

[42] *Ponce*, 679 F.3d at 845.

If you find that the Ms. Sourgoutsis has proven that sex was a motivating factor in the Capitol Police's decision to terminate her, you must decide whether Ms. Sourgoutsis is entitled to damages.  Ms. Sourgoutsis is entitled to damages she proves unless the Capitol Police has shown by a preponderance of the evidence that it would have made the same decision anyway. You must determine whether the Capitol Police demonstrated that it would have terminated Ms. Sourgoutsis if the discriminatory reason had played no role in the employment decision.[43]  If you find that Ms. Sourgoutsis has proven that sex was a motivating factor in the Capitol Police's decision to terminate her and that the Capitol Police has proven that it would have terminated her in the absence of the discriminatory reason, Ms. Sourgoutsis is not entitled to damages.  If you find that Ms. Sourgoutsis has proven that sex was a motivating factor in the Capitol Police's decision to terminate her and that the Capitol Police did not show that it would have terminated her in the absence of the discriminatory reason, Ms. Sourgoutsis is entitled to damages she has demonstrated she suffered as a result of the discriminatory decision.

Objection: "Significant part" is not an accurate statement of the law. Rather it is enough if discriminatory motive played a part in the decision. *See Ponce v. Billington*, 679 F.3d 840 (D.C. Cir. 2012).

---

[43] Adapted from Modern Federal Jury Instructions, ¶ 88.03[1].

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 17**
**CLAIM #2: CAA RETALIATION – ESSENTIAL ELEMENTS**

Ms. Sourgoutsis claims that the Capitol Police intentionally retaliated against her when it terminated her employment because she opposed a practice made unlawful by the Congressional Accountability Act.  In order to prevail on a claim for intentional retaliation, Ms. Sourgoutsis must prove all of the following:

1.  That Ms. Sourgoutsis engaged in conduct protected by the CAA;

2.  That the Capitol Police terminated Ms. Sourgoutsis's employment at the time of, or after, the protected conduct occurred;

3.  That the Capitol Police official responsible for the decision to terminate Ms. Sourgoutsis knew at the time of the decision that Ms. Sourgoutsis had engaged in protected activity; and,

4.   That the Capitol Police official responsible for the decision to terminate Ms. Sourgoutsis intended to retaliate against Ms. Sourgoutsis for engaging in conduct protected by the CAA.

The parties have stipulated, or agreed, to the fact that Ms. Sourgoutsis engaged in conduct protected by the CAA when she was interviewed as a witness in an internal investigation into a Capitol Police official alleged to have violated the Capitol Police's anti-discrimination and anti-harassment policy.  The parties also have stipulated, or agreed, to the fact that Ms. Sourgoutsis's employment was terminated after she engaged in the protected activity.  The remaining dispute concerns the third and fourth elements, which are whether Ms. Sourgoutsis has proved by a preponderance of the evidence that the Capitol Police official responsible for the decision to terminate her was aware of her protected activity at the time of the decision and whether the official intended to retaliate against Ms. Sourgoutsis for her protected activity and did so by terminating her employment.

The question you must answer is whether Ms. Sourgoutsis's participation in the internal investigation was a determinative factor with respect to the Capitol Police's decision to terminate

her.  As a reminder, "determinative factor" means that but for Ms. Sourgoutsis's participation in the internal investigation, she would not have been terminated.

As I instructed you with respect to Ms. Sourgoutsis's discrimination claim, although Ms. Sourgoutsis must prove that the Capitol Police acted with intent to retaliate against her based on her protected activity, Ms. Sourgoutsis is not required to produce direct evidence of the defendant's intent to retaliate against her, such as statements admitting retaliation.

Ms. Sourgoutsis's own opinion or subjective belief or speculation that she was retaliated against for her protected activity, no matter how genuinely felt, is insufficient to support a claim of intentional retaliation.  Ms. Sourgoutsis must prove by a preponderance of the evidence that the decision to terminate her was intended to retaliate against Ms. Sourgoutsis for engaging in conduct protected by the CAA.

Again, as I instructed you with respect to Ms. Sourgoutsis's discrimination claim, the Capitol Police asserts that it acted lawfully with respect to Ms. Sourgoutsis and ultimately terminated her because of her actions of repeatedly violating Department rules and her unwillingness to take total responsibility for that misconduct.  Your duty is not to second-guess the wisdom of the Capitol Police's business decision.  You cannot find intentional retaliation simply because you disagree with the decision to terminate Ms. Sourgoutsis or believe the decision to have been poor, unreasonable, or unfair.  You must consider only whether the Capitol Police decided to terminate Ms. Sourgoutsis in retaliation for her protected activity.

However, you may consider whether the Capitol Police's reason for the termination is merely a cover-up for intentional retaliation.   In determining whether the Capitol Police's stated reason for its decision is genuine or a cover-up for intentional retaliation, you must examine the facts as they appeared to the individuals involved in the decision at the time the decision was

made.  For Ms. Sourgoutsis to prevail, it is not enough that you do not believe the Capitol Police; you must believe Ms. Sourgoutsis's explanation of intentional retaliation.[44]

If you find that Ms. Sourgoutsis has proven each of the four elements of a CAA retaliation claim by a preponderance of the evidence, you should enter a verdict in favor of Ms. Sourgoutsis.  If, on the other hand, you find that Ms. Sourgoutsis has failed to prove any of the elements by a preponderance of the evidence or if you believe the Capitol Police's explanation for its action in terminating Ms. Sourgoutsis, you must find for the Capitol Police.

Objection: Fails to take into account the willful knowledge doctrine, that USCP was put on notice of a continuing course of discriminatory and retaliatory conduct. *See Kaup v. First Bank Sys., Inc.*, 926 F. Supp. 155, 158–59 (D. Colo. 1996); *Paroline v. Unisys Corp.*, 879 F.2d 100, 106 (4th Cir. 1989), opinion vacated in part on reh'g, 900 F.2d 27 (4th Cir. 1990)

Objection: Causation can be shown through close timing.

Objection: Argumentative.

---

[44] *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993).

**DEFENDANTS POST TRIAL INSTRUCTION NO. 18**
**DAMAGES**

If you find for the plaintiff, then you must decide what amount of money will fairly and reasonably compensate her for the harm she experienced which you find was caused by the defendant.

I am now going to instruct you about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think you should award damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Ms. Sourgoutsis on one or both of her claims against the Capitol Police and decide to award her damages.

Ms. Sourgoutsis is entitled to compensatory damages to compensate her for any harm that she proves the Capitol Police's conduct causes. Conduct causes harm if it plays a substantial part in bringing about the harm. In addition, the harm must be either a direct result or a reasonable probable consequence of the conduct.

The Capitol Police is liable to pay damages only for the harm that its conduct caused. If you find that the Capitol Police's conduct caused only part of the plaintiff's harm, then you should award compensation only for that part.

You may award money damages for emotional pain and suffering, inconvenience, mental anguish, and physical stress, and other non-monetary losses, but only if you find, by a preponderance of the evidence, that those losses were caused because Ms. Sourgoutsis was terminated from the Capitol Police. Ms. Sourgoutsis has the burden proving, by a preponderance of the evidence, that she has suffered such damages, as a result of her termination from the Capitol Police, and the amount of such damages.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing the amount of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, prejudice, speculation, or guess-work. On the other hand, the law does not require that a plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. The damages that you award must be fair compensation, no more and no less.

You should not consider the amount of lost wages or other benefits, if any, claimed by Ms. Sourgoutsis in this case. Likewise, you may not consider the cost to Ms. Sourgoutsis of hiring an attorney for this litigation. Your award of compensatory damages must not include any amounts for loss of pay or benefits or attorney fees. The award of any amounts for pay, benefits and attorney fees, if appropriate, is for the Court to decide and award, if necessary.

Compensatory damages may not exceed $300,000.[45]

You may not award any punitive damages in this case. Thus, you may not base any monetary award on a desire to punish the Capitol Police, to prevent conduct from being repeated in the future, or to warn other employers not to engage in conduct.

Further, you may not award damages to Ms. Sourgoutsis for any emotional pain and suffering, inconvenience, mental anguish, and physical stress induced by this lawsuit. A defendant has the right to defend itself, and therefore a plaintiff may not recover for any emotional pain and suffering, inconvenience, mental anguish, and physical stress caused by bringing, asserting, arguing, or otherwise litigating her claim.[46]

---

[45] 2 U.S.C. § 1311(b)(1)(B).

[46] Adapted from 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 171.90 (5th ed. 2001).; 42 U.S.C. § 1981a(b)(1) (no punitive damage); *Stoleson v. United States*, 708 F.2d

Objection: Material deviation from O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 171.90 (5th ed. 2001)

Objection: Mention of damages cap. 42 U.S.C. §1981a(c)(2) provides that the court shall not inform the jury of the statutory limitations on recovery of compensatory damages.

Objection: Litigation stress language is not a part of 171.90 DC Standard Jury Instructions.

---

1217, 1223 (7th Cir. 1983) (noting that to recover damages for litigation-induced stress would frustrate the right that a defendant has the right to defend himself in court); *Knussman v. Maryland*, 272 F.3d 625, 642 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages."); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) (noting that stress induced by litigation is not ordinarily recoverable as an element of damages); *Blakey v. Continental Airlines, Inc.*, 992 F.Supp. 731, 736 n. 3 (D.N.J. 1998) (noting that plaintiff cannot recover for emotional distress caused by litigation).

## DELIBERATIONS & LOGISTICS

You heard closing arguments, and I have already instructed you as to both the general and specific legal rules that control your decision regarding the facts of the case. Before you begin deliberating, I want to give you just a few instructions regarding the process of your deliberations.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 19**
**INSTRUCTIONS TO BE CONSIDERED AS A WHOLE[47]**

During your deliberations, you must consider the instructions as a whole. All of the instructions are important. You must not ignore or treat any single instruction or part of an instruction differently than the other instructions.

Objection: No objection.

---

[47]D.C. STD. CIV. JURY INSTR. NO. 3-1.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 20**
**SELECTION OF FOREPERSON[48]**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. Consider selecting a foreperson who will encourage civility and mutual respect, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote full and fair consideration of the evidence.

Objection: No objection.

---

[48] D.C. Std. Civ. Jury Instr. No. 3-2

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 21**
**UNANIMITY AND DUTY TO DELIBERATE[49]**

The verdict must represent the considered judgment of each juror. In order to return a verdict, your verdict must be unanimous—that is, each juror must agree to the verdict.

Each of you has a duty to consult with other jurors in an attempt to reach a unanimous verdict. You must decide the case for yourself, and you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions. However, you should seriously consider the views of your fellow jurors, just as you expect them seriously to consider your views, and you should not hesitate to change an opinion if you are convinced by other jurors.

Remember that you are not advocates but neutral judges of the facts. You will make an important contribution to the cause of justice if you arrive at a just verdict in this case. Therefore, during your deliberations room, your purpose should not be to support your own opinion but to determine the facts.

Objection: No objection.

_____

[49] D.C. Std. Civ. Jury No. 3-3.

## DEFENDANT'S POST TRIAL INSTRUCTION NO. 22
## BEGINNING OF DELIBERATIONS[50]

It may not be useful for a juror, at the start of deliberations, to announce a determination to stand for a particular verdict. When a juror announces a firm position at the outset, the juror may hesitate to back away after discussion with other jurors.

Furthermore, many juries find it useful to avoid a vote at the very beginning of deliberations. Calmly reviewing and discussing the case is often a more useful way to begin. Remember that you are not partisans or advocates, but judges of the facts.

Objection: No objection.

---

[50] D.C. Std. Civ. Jury Instr. No. 3-4.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 23**
**COMMUNICATIONS BETWEEN COURT AND JURY**[51]

If it becomes necessary during your deliberations to communicate with me, you may send a note, signed by your foreperson or by one or more members of the jury. If you have a note, the foreperson should knock on the courtroom door, and the clerk will get the note and give it to me. If you are divided on any matter, you should not reveal in any note or otherwise how the jury is divided.

<u>Objection</u>: No objection.

---

[51]D.C. Std. Civ. Jury Instr. No. 3-5.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 24**
**WHEN JURORS CANNOT AGREE[52]**

Members of the jury, I understand that you have been deliberating but you have not been able to reach a verdict.

It is desirable that the case be decided. You are selected in the same manner, and from the same pool of D.C. residents from which any future jury will be selected. There is no reason to believe that this case ever will be submitted to jurors who are more intelligent, more impartial, or more competent to decide it. There is no reason to believe that in a future trial the parties will provide any more or clearer evidence.

With this in mind, it is your duty to decide the case, if you can conscientiously do so. You should listen to each other's arguments and be open to being convinced, but you should not surrender your beliefs only to reach a unanimous verdict. If some jurors disagree with others, each of you should ask yourselves this question: Is my position truly just and reasonable, if other jurors who heard the same evidence do not agree? Remember that all of you have an equal desire to decide the case fairly, and all of you have taken the same oath to return a fair verdict.

Finally, I remind you that the standard of proof is a preponderance of the evidence—whether the evidence makes it more likely than not that the defendant is liable to the plaintiff. The plaintiff is not required to prove anything to an absolute certainty, but if the evidence is evenly balanced on an issue, you must find on that issue for the defendant.

I ask you to resume your deliberations with these thoughts in mind.

Objection: Argumentative.

---

[52] D.C. Std. Civ. Jury Instr. No. 3-6.

**DEFENDANT'S POST TRIAL INSTRUCTION NO. 25**
**DELIVERING THE VERDICT**[53]

When you have reached your verdict, send me a note—signed by the foreperson—telling me you have reached your verdict. Do not tell me in the note what your verdict is. I will put a verdict form in the front of the binder with the instructions. The foreperson should fill out and sign the verdict form. I will then call you into the courtroom and ask the foreperson for the verdict form and for your verdict.

Objection: No objection.

---

[53] D.C. Std. Civ. Jury Instr. No. 3-7.

## VI.   WITNESSES

### A.  Plaintiff's Witnesses

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **TITLE** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| Chrisavgi Sourgoutsis | Former USCP Officer | 3 hr. | Will testify to the allegations in the complaint including her allegations of gender discrimination and retaliation for participating in a sexual harassment investigation and being treated unfairly due to her gender | Objection as to testimony concerning details of sexual harassment investigation based on FRE Rules 401, 402 and 403. Further objection to the extent her allegations of "gender discrimination" or "being treated unfairly due to gender" include activity that is time barred and that is not solely offered as "background evidence." Further objection to the extent FRE Rule 802 is applicable to offered testimony. | |
| Vasiliki Sourgoutsis | Sister of Plaintiff | 30 min. | Will testify to the mental anguish and reputational | No objection | |

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **TITLE** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | harm that Chrisavgi experienced as a result of USCP's actions. | | |
| Dimitrios Sourgoutsis | Brother of Plaintiff | 30 min. | Will testify to the mental anguish and reputational harm that Chrisavgi experienced as a result of USCP's actions. | No objection | |
| James Konczos | Former USPC FOP Union Chairman | 1 hr. | Will testify to Sourgoutsis's grievance appeal, the enforcement of formal and informal USCP policies and procedures, and his personal knowledge of discipline imposed on other probationary officers. | No objection | |
| Gus Papathanasiou | USCP FOP Union Chairman | 30 min. | Will testify to Sourgoutsis's grievance appeal, the enforcement of formal and informal USCP policies and procedures, and his personal knowledge of discipline imposed on other probationary officers. | Objection based on FRE Rules 403 and 802. | |
| Tyrone Vias | USC Sergeant | 30 min. | Will testify to his observations of Sourgoutsis's work performance, his knowledge and role in the sexual harassment investigation, and the outcome or any discipline resulting from the sexual harassment investigation. | Objection based on FRE Rules 401, 402 and 403. | |
| Mark Shutters | USC Sergeant | 30 min. | Will testify to his role in the sexual harassment investigation, his knowledge of discipline resulting from that investigation, and Sourgoutsis's participation | Objection based on FRE Rules 401, 402 and 403. | |

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| NAME | TITLE | TIME | TESTIMONY | OBJECTION | RULING |
| | | | in the sexual harassment investigation. | | |
| Thomas DiBiase (Rule 30(b)(6) | USCP General Counsel | 45 min. | Will testify to USCP's policies and procedures, the discipline of other probationary officers, and USCP's decision to terminate Sourgoutsis. | No objection | |
| Matthew Verderosa | Former USCP Chief of Police | 1 hr. | Will testify to USCP's policies and procedures, USCP's training, the adjudication of Sourgoutsis's grievance, and the decision to terminate Sourgoutsis. | Objection to the extent the adjudication of Sourgoutsis's grievance is offered as anything other than "background evidence." It should not be offered as evidence of discrimination as such a claim is time-barred. | |
| Glenn Brogan | USCP Lieutenant | 1 hr. | Will testify to his role in the USCP's training academy, his observations of Sourgoutsis's performance, his communications with Eric Waldow, and his role in the decision to terminate Sourgoutsis. | No objection | |
| Eric Waldow | USCP Deputy Chief | 1 hr. | Will testify to his role in the training academy, his observations of Sourgoutsis's performance, the decision to terminate Sourgoutsis, and his role in | Objection as to testimony concerning details of sexual harassment investigation | |

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **TITLE** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | the sexual harassment investigation. | or discipline issued based on FRE Rule 401, 402 and 403. | |
| Andrew Bolinger | USCP Captain | 20 min. | Will testify to his role in the decision to discipline and terminate Sourgoutsis. | Objection to the extent that "decision to discipline" Sourgoutsis is offered for any reason other than "background evidence." It should not be offered as evidence of discrimination as such a claim is time-barred. | |
| Jacqueline Whitaker | Former USCP HR | 30 min. | Will testify to USCP's policies and procedures and her role in the decision to terminate Sourgoutsis. | No objection | |
| Maria Willis | USCP Sergeant | 30 min. | Will testify to working with Sourgoutsis and her participation in the sexual harassment investigation. | Objection as to testimony concerning details of sexual harassment investigation based on FRE Rule 401, 402 and 403. | |
| Sara Smither | USCP Officer | 1 hr. | Will testify to working with Sourgoutsis and her participating in the sexual harassment investigation. | Objection based on FRE Rule 401, 402 and 403. | |

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **TITLE** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| *Dr. Phillip Bussey | Vocational Rehabilitation Expert | 1 hr. | Will testify to Sourgoutsis's mitigation efforts and ability to find new work. | Objection based on FRE Rule 703. | |
| *Dr. Richard Edelman | Forensic Economist | 1 hr. | Will testify to Sourgoutsis's economic damages. | Objection based on FRE Rule 703. | |
| Jodi Breiterman | USCP Officer | 1 hr. | Breiterman will testify to about her observations of Sourgoutsis's performance and her knowledge of discipline imposed on other probationary officers. | Objections based on FRE 402. | |
| Nancy Thompson | USCP Officer | 1 hr. | Thompson will testify to her observations of Sourgoutsis's performance and her personal knowledge of discipline imposed on other probationary officers. | No objection | |
| PVT 1 | USCP Officer | 1 hr. | PVT 1 will testify to his personal knowledge about USCP's discipline for probationary officers. | Objections based on FRE 402, 403. | |
| PVT 3 | USCP Officer | 1 hr. | PVT 3 will testify to his personal knowledge about USCP's discipline for probationary officers. | Objections based on FRE 402, 403. | |
| PVT 6 | USCP Officer | 1 hr. | PVT 6 will testify to his personal knowledge about USCP's discipline for probationary officers. | Objections based on FRE 402, 403. | |
| PVT 7 | USCP Officer | 1 hr. | PVT 7 will testify to his personal knowledge about USCP's discipline for probationary officers. | Objections based on FRE 402, 403. | |
| PVT 8 | USCP Officer | 1 hr. | PVT 8 will testify to his personal knowledge about USCP's discipline for probationary officers. | Objections based on FRE 402, 403. | |
| 30(b)(6) Records Custodian | | 1 hr. | 30(b)(6) Records Custodian will confirm authenticity and business record character of | | |

| PLAINTIFF'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **TITLE** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | the following USCP records: USCPSOURGOUTSIS001032-33, USCPSOURGOUTSIS001309-10, USCPSOURGOUTSIS001326-27, USCPSOURGOUTSIS001514-15, USCPSOURGOUTSIS001530-31, USCPSOURGOUTSIS001534-35, USCPSOURGOUTSIS001536-42, USCPSOURGOUTSIS001553-54, USCPSOURGOUTSIS001671-72, Sourgoutsis0000001, USCPSOURGOUTSIS001075-76, USCPSOURGOUTSIS001027-29 | | |

**B.  Defendant's Witnesses**

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **OCCUPATION** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| Brogan, Glenn | Lieutenant USCP | 1 hr. 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance during her time at FLETC and relevant USCP policies. | No objection | |

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| NAME | OCCUPATION | TIME | TESTIMONY | OBJECTION | RULING |
| Gupton, James | Retired Sergeant USCP | 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance during her time at the USCP Academy in Cheltenham, MD, and relevant USCP policies. | No objection | |
| Waldow, Eric | Deputy Chief USCP | 1 hr. 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division, relevant USCP policies, and as to decision to terminate Sourgoutsis. Also will testify as to knowledge of Sourgoutsis's purported protected activity. | No objection | |
| Thomas, Chad | Deputy Chief USCP | 1 hr. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division, relevant USCP policies, and as to decision to terminate Sourgoutsis. Also will testify | No objection | |

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **OCCUPATION** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | as to knowledge of Sourgoutsis's purported protected activity. | | |
| McElroy, Danny | Sergeant USCP | 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division and relevant USCP policies. | No objection | |
| Moroziewicki, Joseph | Sergeant USCP | 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division and relevant USCP policies. | No objection | |
| Willis, Maria | Sergeant USCP | 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division and relevant USCP policies. Also will testify as to knowledge of Sourgoutsis's purported protected activity. | No objection | |
| Dine, Kim | Former Chief of Police USCP | 1 hr. | Will testify as to observations and evaluations of Sourgoutsis's | No objection | |

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| NAME | OCCUPATION | TIME | TESTIMONY | OBJECTION | RULING |
| | | | performance while she was a probationary employee, relevant USCP policies, and as to decision to terminate Sourgoutsis. Also will testify as to knowledge of Sourgoutsis's purported protected activity. | | |
| Verderosa, Matthew | Former Chief of Police USCP | 1 hr. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division, adjudication of Sourgoutsis's discipline, relevant USCP policies, and as to decision to terminate Sourgoutsis. Also will testify as to knowledge of Sourgoutsis's purported protected activity. | No objection | |
| Madera, Zachary | Special Agent USCP | 20 min. | Will testify as to observations and evaluations of Sourgoutsis's performance during training | No objection | |

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **OCCUPATION** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | and relevant USCP policies. | | |
| Smith, Solomon | PFC USCP | 10 min. | Will testify as to observations and evaluations of Sourgoutsis's performance during training and relevant USCP policies. | No objection | |
| Laster, Clarence | PFC USCP | 10 min. | Rebuttal witness as to paragraphs 16, 78 of the Complaint. | No objection | |
| DiBiase, Thomas | Deputy General Counsel USCP | 1 hr. 30 min. | Will testify as to discipline of other probationary officers or decisions to keep, extend, or terminate after probationary period, relevant USCP policies, and basic information about the Department. | No objection | |
| Bolinger, Andrew | Captain USCP | 20 min. | Will testify as to observations and evaluations of Sourgoutsis's performance while at the Capitol Division, relevant USCP policies, and as to decision to terminate Sourgoutsis. Also will testify | No objection | |

| DEFENDANT'S WITNESSES | | | | | |
|---|---|---|---|---|---|
| **NAME** | **OCCUPATION** | **TIME** | **TESTIMONY** | **OBJECTION** | **RULING** |
| | | | as to knowledge of Sourgoutsis's purported protected activity. | | |
| Hersch, John | Lieutenant USCP | 30 min. | Will testify as to observations and evaluations of Sourgoutsis's performance during her time at the USCP Academy in Cheltenham, MD, and relevant USCP policies. | No objection | |
| Turner, Daniel | Lieutenant USCP | 15 min. | Rebuttal witness as to paragraphs 100 -102 of the Complaint. | No objection | |
| Eldridge, Julie | Lieutenant USCP | 15 min. | Rebuttal witness as to paragraphs 100 - 102 of the Complaint. | No objection | |
| McGroarty, Helen | Management Analyst, USCP | 10 min. | Rebuttal witness as to π's exhibits 122 and 123. | No objection | |
| *Malowane, Laura Dr. | Vice President, Economists Inc. | 30 min. | Rebuttal witness as to Plaintiff's economic damages and ability to find work. | No objection | |

## VII.   EXHIBITS

### A.  Plaintiff's Exhibits

| | PLAINTIFF'S EXHIBITS | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 1 | no bates | Comparator Chart | undated | Offered to show disparate treatment. | Objection FRE Rules 401, 402, 403, 1006 | |
| 2 | Sourgoutsis 0000002-19 | Directive 2052.004 Probationary Periods | undated | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection to the extent offered to show that evaluations completed or not were discriminatory as such a claim is time barred. | |
| 3 | Sourgoutsis 0000027-35 | Union to Dine re: appeal of Sourgoutsis's termination | 11/3/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 4 | Sourgoutsis 0000050-58 | EEO complaint | 2/16/2016 | Offered to show Title VII protected activity | Objection FRE Rule 401, 402, 403, 802 | |
| 5 | USCP000018-19 | Thomas to Verderosa re: recommendation for termination of probationary employee | 10/26/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 6 | USCP000020-22 | Waldow to Thomas re: termination of probationary employee | 9/4/2015 | Offered to show the decision to terminate Sourgoutsis | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| **NO.** | **BATES** | **TITLE** | **DATE** | **PROFFER** | **OBJECT** | **RULING** |
| 7 | USCP000037 | Personnel Performance Note re: good performance during Congressional hearings | 1/28/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 8 | USCP000073-74 | Personnel Performance Note re: good performance during memorial services | 5/22/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 9 | USCP000082 | Campbell to Sourgoutsis re: good performance re: State of the Union address | 1/20/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 10 | USCP000109-10 | SF-50 re: termination | 12/29/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 11 | USCP000111-13 | Dine to Capitol Police Board requesting recommendation to terminate | 12/14/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 12 | USCP000114 | E-mails regarding CPB's approval of Sourgoutsis's termination | 12/31/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 13 | USCP000134 | SF-50 Notification of Personnel Action re: reassignment to private in training | 11/15/2015 | Offered to show Sourgoutsis's satisfactory performance | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 14 | USCP000140 | SF-50 Notification of Personnel Action re: Longevity increase | 5/16/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 15 | USCP000141-42 | SF-50 Notification of Personnel Action re: annual basic pay adjustment | 1/11/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 16 | USCP000143-46 | SF-50 Request for Personnel Action re: reassignment | 1/11/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 17 | USCP000147-48 | SF-50 Notification of Personnel Action re: promotion | 11/16/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 18 | USCP000149 | SF-50 Notification of Personnel Action re: promotion | 11/16/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 19 | USCP000151-54 | Memo Braddock to Whitaker re: list of successful graduates from recruit officer class 177 | 11/14/2014 | Offered to show Sourgoutsis's satisfactory performance | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 20 | USCP000160 | SF-50 Notification of Personnel Action re: executive appointment to private | 5/11/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 21 | USCP000208 | List of trainings completed by Sourgoutsis | undated | Offered to show Sourgoutsis's satisfactory performance | | |
| 22 | USCP000212 | Student Evaluation Official Transcript | | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | | |
| 23 | USCP000252 | Official Correspondence Endorsement Sheet | 7/15/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection FRE Rule 401, 402 | |
| 24 | USCP000253-54 | Information Paper | 6/30/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| **NO.** | **BATES** | **TITLE** | **DATE** | **PROFFER** | **OBJECT** | **RULING** |
| | | | | | liability in this action as that claim is time-barred. | |
| 25 | USCP000255-56 | Information Paper completed by Brogan | 6/30/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 26 | USCP000279 | Personnel Performance Note re: night drive | 8/1/2014 | Offered to show Sourgoutsis' s satisfactory performance | | |
| 27 | USCP000292-93 | Completion of FTO Program | 12/15/2014 | Offered to show Sourgoutsis' s satisfactory performance | | |
| 28 | USCP000294-302 | Daily Observation Reports - Standard Evaluation Guidelines | undated | Offered to show inconsistencies with USCP's policies and procedures and | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | | | evidence of pretext | | |
| 29 | USCP000303-04 | Daily Observation Report | 12/15/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 30 | USCP000305-06 | Daily Observation Report | 12/12/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 31 | USCP000307-08 | Daily Observation Report | 12/11/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 32 | USCP000309-10 | Daily Observation Report | 12/15/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 33 | USCP000311-12 | Daily Observation Report | 12/9/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 34 | USCP000313-14 | Daily Observation Report | 12/8/2014 | Offered to show Sourgoutsis's satisfactory performance | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 35 | USCP000315-18 | Daily Observation Report | 12/5/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 36 | USCP000319-20 | Daily Observation Report | 12/4/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 37 | USCP000321-22 | Daily Observation Report | 12/2/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 38 | USCP000323-24 | Daily Observation Report | 12/1/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 39 | USCP000325-26 | Daily Observation Report | 11/18/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 40 | USCP000327-28 | Daily Observation Report | 11/24/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 41 | USCP000329-30 | Daily Observation Report | 11/25/2014 | Offered to show Sourgoutsis's satisfactory performance | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 42 | USCP000331-32 | Daily Observation Report | 11/24/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 43 | USCP000333-34 | Daily Observation Report | 11/21/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 44 | USCP000335-36 | Daily Observation Report | 11/20/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 45 | USCP000337-38 | Daily Observation Report | 11/19/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 46 | USCP000339-40 | Daily Observation Report | 11/18/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 47 | USCP000341-42 | Daily Observation Report | 11/17/2014 | Offered to show Sourgoutsis's satisfactory performance | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | **PLAINTIFF'S EXHIBITS** | | | | |
| 48 | USCP000343 | Field Training and Evaluation Program, Shift Supervisor's Weekly Report. (12/8/14 - 11/15/14) | 12/22/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 49 | USCP000344 | Field Training and Evaluation Program, Shift Supervisor's Weekly Report. (12/1/14 - 12/5/14) | 12/8/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 50 | USCP000345 | Field Training and Evaluation Program, Shift Supervisor's Weekly Report. (11/24/14 - 11/28/14) | 12/8/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 51 | USCP000346 | Field Training and Evaluation Program, Shift Supervisor's Weekly Report. (11/18/14 - 11/21/14) | 12/8/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 52 | USCP000362 | ROC 177 Class Rankings | 11/24/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | | **PLAINTIFF'S EXHIBITS** | | | |
| 53 | USCP000363-64 | Student Evaluation Official Transcript | | Offered to show Sourgoutsis's satisfactory performance | | |
| 54 | USCP000551 | Official correspondence endorsement sheet re: decision paper on termination | 9/4/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 55 | USCP000571-74 | Verderosa memo to Sourgoutsis and union re: appeal of CP 534 re: sitting on wall. | 8/14/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis in the adjudication of discipline is not a basis for liability in this action as that claim is time-barred. | |
| 56 | USCP000643-45 | Directive 2053.11 Anti-Discrimination and Anti-Harassment Policy | 5/31/2013 | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|---|---|---|---|---|---|---|
| | | **PLAINTIFF'S EXHIBITS** | | | | |
| 57 | USCP000646-53 | Directive 2053.013 Rules of Conduct | 11/19/2013 | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | | |
| 58 | USCP000665-756 | Collective Bargaining Agreement Between the FOP and the US Capitol Police Effective | 6/8/2010 | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection FRE Rule 401, 402 | |
| 59 | USCP000757-58 | Article 41 Selection of Training | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection FRE Rule 401, 402 | |
| 60 | USCP000820 | Directive 2053.001 Discipline | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 61 | USCP000821-26 | USCP General Order 2221 re internal discipline system | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection FRE Rule 401, 402 | |
| 62 | USCP000827-36 | USCP General Order 2222 re: Disciplinary Review Board | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection FRE Rule 401, 402 | |
| 63 | USCP000837-39 | USCP General Order 2230 re: Penalty Classifications | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | | |
| 64 | USCP000840-47 | Operational Directive re: Command Discipline | | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | | |

| | | | **PLAINTIFF'S EXHIBITS** | | | |
|---|---|---|---|---|---|---|
| **NO.** | **BATES** | **TITLE** | **DATE** | **PROFFER** | **OBJECT** | **RULING** |
| 65 | USCP000876-988 | Records Management Policy and Procedures and Records Disposition Schedule | 2/18/2005 | Offered to show inconsistencies with USCP's policies and procedures and evidence of pretext | Objection FRE Rule 401, 402 | |
| 66 | USCPSOURGOUTSIS 000989-1009 | ROI for Vias investigation | 12/8/2015 | Offered to show Title VII protected activity | Objection FRE Rule 401, 402, 403 | |
| 67 | USCPSOURGOUTSIS 001022-23 | Thomas to Waldow re: requesting response on Sourgoutsis | 8/28/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 68 | USCPSOURGOUTSIS 001024 | Verderosa to Thomas re: Sourgoutsis's probationary status | 8/14/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 69 | USCPSOURGOUTSIS 001027-29 | Union to Verderosa re: grievance of CP 534 re: sitting on wall | 7/2/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline issued is not a basis for liability in this action as that claim is time-barred. | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | **PLAINTIFF'S EXHIBITS** | | | | |
| 70 | USCPSOU RGOUTSIS 001030-31 | Email from Thomas to Whitaker re Recommendation for Probationary Employee Termination | 10/27/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 71 | USCPSOU RGOUTSIS 001060-61 | Waldow to Leonard re Request for CP-532, Personnel Records Change | 8/18/2015 | | Objection FRE Rule 401, 402 | |
| 72 | USCPSOU RGOUTSIS 001075-76 | CP 534 re: wall | 6/2/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 73 | USCPSOU RGOUTSIS 001077-78 | Email from Shutters to Willis OPR interviews for Vias investigation | 8/12/2015 | Offered to show Sourgoutsis's Title VII protected activity. | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 74 | USCPSOURGOUTSIS 001107 | Email from Bolinger to Waldow re: comparators for neglect of duty and personal appearance | 5/28/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 75 | USCPSOURGOUTSIS 001108-09 | Email from Bolinger to Waldow re: probationary reports for ROC Class 177 due | 5/18/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred | |
| 76 | USCPSOURGOUTSIS 001110-13 | Email from Waldow to Gallagher re uniform violation | 5/11/2015 | Offered to show the decision to terminate Sourgoutsis | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 77 | USCPSOU RGOUTSIS 001117 | Email from Beaver to Cimini Recruit Officer Sourgoutsis Information Paper | 11/19/201 4 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 78 | USCPSOU RGOUTSIS 001118-19 | Ltr to Inspector Waldow from Lt. Brogan Recruit Officer Sourgoutsis | 6/30/2014 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 79 | USCPSOU RGOUTSIS 001169-71 | Email from Brogan to Hughes FW Information Paper Officer Sourgoutsis | 7/2/2014 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis in training is not a basis for liability in | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| | | | | | this action as that claim is time-barred | |
| 80 | USCPSOU RGOUTSIS 001196-206 | Email from Waldow to Storelli re ROC 177 update | 6/24/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 81 | USCPSOU RGOUTSIS 001207-11 | Email from Brogan to Gupton re Quick Question | 6/23/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 82 | USCPSOU RGOUTSIS 001212-14 | Email from Brogan to Cooke re Quick Question | 6/20/2014 | Offered to show USCP's discriminatory treatment | Objection. Purported discriminatory treatment | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|---|---|---|---|---|---|---|
| **PLAINTIFF'S EXHIBITS** | | | | | | |
| | | | | of Sourgoutsis during the training academy. | of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 83 | USCPSOU RGOUTSIS 001215 | Email from Brogan to Hughes roc 177 items | 6/13/2014 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 84 | USCPSOU RGOUTSIS 001220-22 | Email from Gallagher to Waldow re Formal Meeting | 10/26/201 5 | Offered to show the decision to terminate Sourgoutsis | | |
| 85 | USCPSOU RGOUTSIS 001231-32 | Waldow to Brogan, Logan re: prepared to terminate | 7/2/2014 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis in training is not a basis for | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| | | | | | liability in this action as that claim is time-barred. | |
| 86 | USCPSOU RGOUTSIS 001233-34 | Brogan to Huges, Carpenter re: support for Sourgoutsis's termination | 7/2/2014 | Offered to show the decision to terminate Sourgoutsis | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 87 | USCPSOU RGOUTSIS 001243 | Email from Church to Beaver, Brogan re: Sourgoutsis file | 10/9/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 88 | USCPSOU RGOUTSIS 001244 | Official Correspondence Endorsement Sheet | 7/15/2014 | Offered to show the decision to | Objection FRE Rule 401, 402 | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | | | terminate Sourgoutsis | | |
| 89 | USCPSOURGOUTSIS 001278-80 | Waldow to Logan and Brogan trying to find Sourgoutsis info paper | 10/9/2014 | Offered to show the decision to terminate Sourgoutsis | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for liability in this action as that claim is time-barred. | |
| 90 | USCPSOURGOUTSIS 001289-90 | Waldow to Miles, Leonard re: determine if PIP, formal meetings, or document performance | 8/25/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 91 | USCPSOURGOUTSIS 001293 | Waldow to Miles re: termination recommendation | 8/31/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 92 | USCPSOURGOUTSIS 001299 | Brogan to Miles re: Sourgoutsis termination | 1/11/2016 | Offered to show the decision to terminate Sourgoutsis | Objection. Purported discriminatory treatment of Sourgoutsis in training is not a basis for | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|---|---|---|---|---|---|---|
| | | | | | liability in this action as that claim is time-barred. | |
| 93 | USCPSOU RGOUTSIS 001319-20 | Notes from Sourgoutsis's OPR interview re: Vias sexual harassment complaint | 8/18/2015 | Offered to show Sourgoutsi's Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |
| 94 | USCPSOU RGOUTSIS 001321-22 | Sourgoutsis's official statement from Vias sexual harassment investigation | 8/18/2015 | Offered to show Sourgoutsi's Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |
| 95 | USCPSOU RGOUTSIS 001323-25 | E-mail from union to Dine re: contesting Sourgoutsis termination | 1/5/2016 | Offered to show the decision to terminate Sourgoutsis | | |
| 96 | USCPSOU RGOUTSIS 001361-62 | Whitaker to Sourgoutsis re: recommending her termination | 10/29/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 97 | USCPSOU RGOUTSIS 001363 | Memo from Thomas to Dine, Duty Status of Private with Training Sourgoutsis | 10/29/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 98 | USCPSOU RGOUTSIS 001365 | Whitaker (HR) to others re: termination status | 10/29/2015 | Offered to show the decision to terminate Sourgoutsis | | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 99 | USCPSOU RGOUTSIS 001367-68 | Dine to union re: response to appeal of proposed termination | 11/13/201 5 | Offered to show the decision to terminate Sourgoutsis | | |
| 100 | USCPSOU RGOUTSIS 001435-50 | Sexual Harassment Biased Based Policing | 6/8/2012 | Offered to show USCP's policies and procedures and how they were unfairly applied to Sourgoutsis. | Objection FRE Rules 401, 402, 403 | |
| 101 | USCPSOU RGOUTSIS 001451-83 | Sexual Harassment Biased Based Policing Slides | | Offered to show USCP's policies and procedures and how they were unfairly applied to Sourgoutsis. | Objection FRE Rule 401, 402 | |
| 102 | USCPSOU RGOUTSIS 001484-513 | New Leadership Training | | Offered to show USCP's policies and procedures and how they were unfairly applied to Sourgoutsis. | Objection FRE Rule 401, 402 | |
| 103 | USCPSOU RGOUTSIS 001517 | Message from Chief re: EEO and Diversity | | Offered to show USCP's policies and procedures and how they were | | |

| | | | PLAINTIFF'S EXHIBITS | | | |
|---|---|---|---|---|---|---|
| **NO.** | **BATES** | **TITLE** | **DATE** | **PROFFER** | **OBJECT** | **RULING** |
| | | | | unfairly applied to Sourgoutsis. | | |
| 104 | USCPSOU RGOUTSIS 001518 | Message from Chief re EEO and Diversity | 2/23/2015 | Offered to show USCP's policies and procedures and how they were unfairly applied to Sourgoutsis. | | |
| 105 | USCPSOU RGOUTSIS 001519 | Message from Chief re EEO and Diversity | 7/10/2014 | Offered to show USCP's policies and procedures and how they were unfairly applied to Sourgoutsis. | | |
| 106 | USCPSOU RGOUTSIS 001520 | CP-550 to Vias about calling women chicas; written by Waldow | 08/00/201 5 | Offered to show Sourgoutsis' s Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |
| 107 | USCPSOU RGOUTSIS 001521 | Herrle to Waldow re Vias improper remarks | 2/17/2016 | Offered to show Sourgoutsis' s Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |
| 108 | USCPSOU RGOUTSIS 001523 | CP-550 to Vias about calling women chicas; written by Waldow | 2/16/2016 | Offered to show Sourgoutsis' s Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 109 | USCPSOU RGOUTSIS 001524 | CP-550 to Vias about calling women chicas; written by Waldow | 3/1/2016 | Offered to show Sourgoutsis's Title VII protected activity. | Objection FRE Rules 401, 402, 403 | |
| 110 | USCPSOU RGOUTSIS 001525 | Rudd to Herrle re no CP-535 recommended for Vias. | 1/13/2016 | Offered to show Sourgoutsis's Title VII protected activity. | Objection FRE Rules 401,402, 403 | |
| 111 | USCPSOU RGOUTSIS 001548-49 | Breme to Bolinger re: comparators for penalty | 5/29/2015 | Offered to show the decision to terminate Sourgoutsis | Objection. Purported discriminat ory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 112 | USCPSOU RGOUTSIS 001564-66 | Bolinger (through Waldow) to Thomas re: command discipline for uniform violations | 6/4/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminato ry | Objection. Purported discriminat ory treatment of Sourgoutsis as to discipline is not a basis for liability in this action | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | | | | as that claim is time-barred. | |
| 113 | USCPSOU RGOUTSIS 001574-76 | Bolinger (through Waldow) to Thomas re: command discipline for sitting on wall | 6/4/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 114 | USCPSOU RGOUTSIS 001577-81 | Sourgoutsis's written responses to sitting on wall and uniform violation | | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |

| | | | PLAINTIFF'S EXHIBITS | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 115 | USCPSOU RGOUTSIS 001583 | Waldow to Miles re: termination recommendation | 9/1/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 116 | USCPSOU RGOUTSIS 001587-88 | Final Probationary Summary Report for Sourgoutsis | 9/4/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 117 | USCPSOU RGOUTSIS 001591-92 | Bolinger to Leonard re: status on Sourgoutsis | 8/17/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 118 | USCPSOU RGOUTSIS 001597 | Bolinger to Leonard re: request to ensure proper documentation to make decision on termination or extension | 7/23/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 119 | USCPSOU RGOUTSIS 001604-05 | Waldow to Bolinger re: requesting if factors for termination are needed | 7/16/2015 | Offered to show the decision to terminate Sourgoutsis | | |
| 120 | USCPSOU RGOUTSIS 001671-72 | CP 534 re: shirt | 6/2/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| **PLAINTIFF'S EXHIBITS** | | | | | | |
| | | | | | this action as that claim is time-barred. | |
| 121 | USCPSOU RGOUTSIS 001766-69 | handwritten notes from July 28, 2015 grievance meeting | 7/28/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 122 | USCPSOU RGOUTSIS 001770-71 | Helen's memo to file re: Sourgoutsis's call to Vias re: sitting on the wall incident | 7/15/2015 | Offered to show USCP's discipline of Sourgoutsis was discriminatory | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 123 | USCPSOU RGOUTSIS 001800-01 | Directive 2053.009 EEOC Policy | 5/28/2012 | Offered to show inconsistenc | | |

| | | | PLAINTIFF'S EXHIBITS | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| | | | | ies with USCP's policies and procedures and evidence of pretext | | |
| 124 | USCPSOU RGOUTSIS 002186-91 | Brogan to Waldow and others with update on ROC 177 | 7/25/2014 | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 125 | USCPSOU RGOUTSIS 002192-93 | Academic Averages Chart | | Offered to show USCP's discriminato ry treatment of Sourgoutsis during the training academy. | Objection. Purported discriminat ory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 126 | USCPSOU RGOUTSIS 002194-95 | PTD Chart | | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 127 | USCPSOU RGOUTSIS 002197-98 | ROC 177 FLETC Written Exam 2 Results | 6/30/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 128 | USCPSOU RGOUTSIS 002199-200 | ROC 177 Update | 6/24/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline | |

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| | | | | training academy. | is not a basis for liability in this action as that claim is time-barred. | |
| 129 | USCPSOU RGOUTSIS 002201 | ROC 177 Items | 6/13/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 130 | USCPSOU RGOUTSIS 002202-03 | ROC 177 Master Grade Sheet | 6/12/2014 | Offered to show USCP's discriminatory treatment of Sourgoutsis during the training academy. | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |

| | | | PLAINTIFF'S EXHIBITS | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 131 | USCPSOU RGOUTSIS 001530-31 | CP 534 Command Discipline Report for male officer | 11/27/2012 | Offered to show disparate treatment | | |
| 132 | USCPSOU RGOUTSIS 001534-35 | Decision paper recommending probationary period extension for male officer PVT 8 | 1/16/2013 | Offered to show disparate treatment | | |
| 133 | USCPSOU RGOUTSIS 001536 | Memorandum dismissing CP 534 | 2/1/2013 | Offered to show disparate treatment | | |
| 134 | USCPSOU RGOUTSIS 001537-38 | CP 534 Command Discipline Report for male officer | 11/8/2012 | Offered to show disparate treatment | | |
| 135 | USCPSOU RGOUTSIS 001539 | Memorandum reducing CP-534 to filed with warning for male officer | 2/1/2013 | Offered to show disparate treatment | | |
| 136 | USCPSOU RGOUTSIS 001540-41 | CP 534 Command Discipline Report for male officer | 11/26/2012 | Offered to show disparate treatment | | |
| 137 | USCPSOU RGOUTSIS 001542 | USCP Official Correspondence Endorsement Sheet | 11/30/2012 | Offered to show disparate treatment | | |
| 138 | USCPSOU RGOUTSIS 001553-54 | Memorandum recommending the extension of probation for male officer PVT 7 | 1/16/2013 | Offered to show disparate treatment | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | **PLAINTIFF'S EXHIBITS** | | | | |
| 139 | Sourgoutsis 0000001 | Extension of Probationary Period for Private Aamir Cade | 12/12/201 5 | Offered to show disparate treatment | Objection FRE Rules 401, 402, 403, 802, 901 | |
| 140 | USCPSOU RGOUTSIS 001010-21 | Report of Investigation for OPR No. 15-128 | 12/17/201 5 | Offered to show disparate treatment | Objection FRE Rules 401, 402, 403 | |
| 141 | USCPSOU RGOUTSIS 001032-33 | CP 534 Command Discipline Report for male officer PVT 1 | 5/13/2015 | Offered to show disparate treatment | | |
| 142 | USCPSOU RGOUTSIS 001309-10 | CP 534 Command Discipline Report for insubordination and cell phone | 4/25/2016 | Offered to show disparate treatment | | |
| 143 | USCPSOU RGOUTSIS 001326-27 | CP 534 Command Discipline Report for fifth time late for roll call - PVT2 | 5/13/2015 | Offered to show disparate treatment | | |
| 144 | USCPSOU RGOUTSIS 001514-15 | CP 534 Command Discipline Report for failure to see assigned area of responsibility - PVT6 | 12/5/2016 | Offered to show disparate treatment | | |
| 145 | USCPSOU RGOUTSIS 001617 | Comparators for same or similar offensives / Compliance with Directives | 1/1/13 & 6/5/13 | Offered to show disparate treatment | Objection. Purported discriminat ory treatment of Sourgoutsis as to | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
|-----|-------|-------|------|---------|--------|--------|
| | | | | | discipline is not a basis for liability in this action as that claim is time-barred. | |
| 146 | USCPSOU RGOUTSIS 001689 | Comparators for same or similar offensives / Neglect of Duty | 8/12/13 & 6/27/13 | Offered to show disparate treatment | Objection. Purported discriminatory treatment of Sourgoutsis as to discipline is not a basis for liability in this action as that claim is time-barred. | |
| 147 | USCPSOU RGOUTSIS 001723 | Sourgoutsis Personnel Performance Note for performing well at hearings | 1/28/2015 | Offered to show Sourgoutsis's satisfactory performance | | |
| 148 | USCPSOU RGOUTSIS 001739 | Sourgoutsis Personnel Performance Note for performing well during night drive exercise | 7/8/2014 | Offered to show Sourgoutsis's satisfactory performance | | |

The table is titled **PLAINTIFF'S EXHIBITS**

167

| PLAINTIFF'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECT | RULING |
| 149 | USCPSOU RGOUTSIS 001759 | Sourgoutsis Personnel Performance Note for conducting memorial lap | 5/21/2014 | Offered to show Sourgoutsis's satisfactory performance | | |
| 150 | USCP_KEY 000001 | USCP production key for gender of comparators | N/A | Offered to show disparate treatment | | |

**B.  Defendant's Exhibits**

| DEFENDANT'S EXHIBITS | | | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECTION | RULING |
| 1 | USCPSOURGOUTSIS0 01022-1024 | Note to DC Waldow from DC Thomas forwarding Chief Verderosa's memorandum. | 8/28/2015 | Offered to show decision-making process as to π's termination. | | |
| 2 | USCP 000017-24 | Memo to Chief Verderosa from DC Thomas recommending π's termination | 10/26/15 | Offered to show decision-making process as to π's termination. | | |
| 3 | USCPSOURGOUTSIS 001060-1061 | Email concerning the presentation of a CP-532 to π | 8/14-8/18/15 | Offered to address knowledge of protected activity. | | |

| | DEFENDANT'S EXHIBITS | | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| 4 | USCPSOURGOUTSIS 001066-1069 | Memo to π and Union from Chief Verderosa concerning CP-534 appeal | 8/14/15 | Offered to show decision-making process as to π's termination and discipline. | | |
| 5 | USCPSOURGOUTSIS 001070-1071 | Final CP-534 issued to π | 6/2/15, 8/14/15 | Offered to show π's performanc e. | | |
| 6 | USCPSOURGOUTSIS 001072-1073 | Email and attachment concerning CP-532 to π | 8/14/15 | Offered to address knowledge as to protected activity. | | |
| 7 | USCPSOURGOUTSIS 001079-1081 | Email to Lieutenant Shutters from Sergeant Willis scheduling interviews for OPR investigation | 8/12/15 | Offered to address knowledge as to protected activity. | | |
| 8 | USCPSOURGOUTSIS 001110-1111 | Email to Lieutenant Sebo et al. from Sergeant McElroy concerning π's not wearing uniform. | 5/10-5/11/15 | Offered to show π's performanc e. | | |
| 9 | USCPSOURGOUTSIS 001172 -1173 | Memo to Deputy Chief | 6/30/14 | Offered to show π's | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECTION | RULING |
| | | Waldow from Lieutenant Brogan re π | | performance. | | |
| 10 | USCPSOURGOUTSIS 001195 | Disciplinary Probation Notice to π from Lieutenant Brogan | 6/24/14 | Offered to show π's performance. | | |
| 11 | USCPSOURGOUTSIS 001205-1206 | Email from Lieutenant Brogan to ROC 177 Coordinators and Lieutenant Logan re ROC 177 update | 6/24/14 | Offered to show π's performance. | | |
| 12 | USCPSOURGOUTSIS 001207 | Email from Lieutenant Brogan to Sergeant Gupton concerning π's academy rule violations | 6/20/14, 6/23/14 | Offered to show π's performance. | | |
| 13 | USCPSOURGOUTSIS 001215 | Email to Officer Terry Hughes, Dale Carpenter, and Michael Beaver re ROC 177 items | 6/13/14 | Offered to show π's performance. | | |
| 14 | USCPSOURGOUTSIS 001245-001270 | Email to Dominic Storelli from | 6/30/14 | Offered to show π's | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| | | Deputy Chief Waldow re information paper – recruit officer Sourgoutsis | | performanc e. | | |
| 15 | USCPSOURGOUTSIS 001283-1284 | Email to Deputy Chief Waldow from Cynthia Miles re termination recommenda tion of π | 7/7/15 | Offered to show decision-making as to π's termination. | | |
| 16 | USCPSOURGOUTSIS 001285-1286 | Email to Captain Bolinger from Deputy Chief Waldo re termination for π | 7/16/15 | Offered to show decision-making at to π's termination. | | |
| 17 | USCPSOURGOUTSIS 001289-1290 | Email to Lieutenant Leonard from Deputy Chief Waldow termination recommenda tion | 8/25/15 | Offered to show decision-making as to π's termination. | | |
| 18 | USCPSOURGOUTSIS 001323-1325 | Email to Chief Dine from Chief Verderosa re termination of π | 1/5/16 | Offered to show decision-making as to π's termination. | | |
| 19 | USCPSOURGOUTSIS 001360 – 001363 | Email  to Chief Verderosa | 10/29/1 5 | Offered to show decision- | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| | | from DC Thomas re probationary termination of π with attachments | | making as to π's termination. | | |
| 20 | USCPSOURGOUTSIS 001366-1368 | Email to OHR from Kerry Edwards attaching response to π's termination appeal | 11/25/1 5 | Offered to show decision-making as to π's termination. | | |
| 21 | USCPSOURGOUTSIS 001528-001529 | Memorandu m to DC Garner from Inspector Perkins recommendi ng probationary extension for PVT 7 | 1/16/13 | Offered to address purported comparator testimony. | | |
| 22 | USCPSOURGOUTSIS 001534-1535 | Memorandu m to DC Garner from Inspector Perkins recommendi ng probationary extension for PVT 8 | 1/16/13 | Offered to address purported comparator testimony. | | |
| 23 | USCPSOURGOUTSIS 001536-1538 | Memo to PVT 8 from Assistant Chief Reynolds | 2/1/13 | Offered to address purported comparator testimony. | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| | | dismissing CP-534 | | | | |
| 24 | USCPSOURGOUTSIS 001546-1547 | Email to DC Waldow from Captain Bolinger re π's neglect of duty and photo | 5/14/15 | Offered to show π's performanc e. | | |
| 25 | USCPSOURGOUTSIS 001563-1582 | Memo to DC Waldow from Captain Bolinger re presentation of CP-534s to π | 6/4/15 | Offered to show π's performanc e. | | |
| 26 | USCPSOURGOUTSIS 001583-1588 | Email to CD-3 Sergeants re termination of π | 9/1/15 | Offered to show decision-making as to π's termination. | | |
| 27 | USCPSOURGOUTSIS 001618-1625 | USCP Directive 2053.013, Rules of conduct | 11/19/1 2 to present | Offered as context to π's performanc e. | | |
| 28 | USCPSOURGOUTSIS 001626-1640 | Uniforms, Equipment, and Personal Grooming | 12/20/0 4 | Offered as context to π's performanc e. | | |
| 29 | USCPSOURGOUTSIS 001721-1722 | CP-550 re π's parking violations | 5/4/15 | Offered to show π's performanc e. | | |
| 30 | USCPSOURGOUTSIS 001671-1672 | Final CP-534 issued to π | 6/2/15, 8/11/15 | Offered to show π's performanc e. | | |

| NO. | BATES | TITLE | DATE | PROFFER | OBJECTION | RULING |
|---|---|---|---|---|---|---|
| DEFENDANT'S EXHIBITS | | | | | | |
| 31 | USCPSOURGOUTSIS 001723 | CP-550 issued to π re vigilance and attention to duty for hearings on 1/28/15 | 1/28/15 | Offered to show π's performance. | | |
| 32 | USCPSOURGOUTSIS 001725 | CP-550 issued to π re uniform of the day | 6/23/14 | Offered to show π's performance. | | |
| 33 | USCPSOURGOUTSIS 001726 | CP-550 issued to π re purple socks | 6/23/14 | Offered to show π's performance. | | |
| 34 | USCPSOURGOUTSIS 001727-1737 | CP-550 issued to π and supporting documents re "asshole" | 6/24/14 | Offered to show π's performance. | | |
| 35 | USCPSOURGOUTSIS 001738 | CP-550 issued to π re chewing gum in class | 8/22/14 | Offered to show π's performance. | | |
| 36 | USCPSOURGOUTSIS 001739 | CP-550 issued to π re night drive exercise | 8/1/14 | Offered to show π's performance. | | |
| 37 | USCPSOURGOUTSIS 001740 | CP-550 issued to π re screening exercise in which she said "she's crazy" referring to a role player | 9/23/14 | Offered to show π's performance. | | |
| 38 | USCPSOURGOUTSIS 001741-1743 | CP-550 issued to π re class photo | 7/3/14 | Offered to show π's | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| | | and supporting documents | | performanc e. | | |
| 39 | USCPSOURGOUTSIS 001744 | CP-550 issued to π re failure of the robbery hold up knife scenario | 10/28/1 4 | Offered to show π's performanc e. | | |
| 40 | USCPSOURGOUTSIS 001745 | CP-550 issued to π re failure of lab 3 | 10/8/14 | Offered to show π's performanc e. | | |
| 41 | USCPSOURGOUTSIS 001746-1747 | CP-550 issued to π re "turbo bitch" comment | 6/23/14 | Offered to show π's performanc e. | | |
| 42 | USCPSOURGOUTSIS 001748 | Line Inspection Checklist completed by Lieutenant Brogan | 6/20/14 | Offered to show π's performanc e. | | |
| 43 | USCPSOURGOUTSIS 001751-1754 | CP-550 issued to π re completing CBT training and supporting documents | 6/24/14 | Offered to show π's performanc e. | | |
| 44 | USCPSOURGOUTSIS 001757-1758 | CP-550 issued to π re violation of FLETC privacy act and supporting documents | 6/23- 6/24/14 | Offered to show π's performanc e. | | |
| 45 | USCPSOURGOUTSIS 001759 | CP-550 issued to π re memorial run | 6/19/14 | Offered to show π's | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| NO. | BATES | TITLE | DATE | PROFFER | OBJECTION | RULING |
| | | | | performance. | | |
| 46 | USCPSOURGOUTSIS 001760 -1762 | CP-550 issued to π re score on Exam 1 and supporting documents | 6/13/14 | Offered to show π's performance. | | |
| 47 | USCPSOURGOUTSIS 001763 | CP-550 issued to π re ROPAT score | 5/5/14 | Offered to show π's performance. | | |
| 48 | USCPSOURGOUTSIS 001765 – 1771 | Memo to file by Helen McGroarty re π's appeal to Chief Verderosa | 7/28/15 | Offered to show π's performance. | Objection: not relevant and hearsay | |
| 49 | USCPSOURGOUTSIS 001948-1949 | CP-550 issued to PVT 24 re use of profanity during physical training class and supporting documents | 7/9/14 | Offered to address purported comparator testimony. | | |
| 50 | USCP000625-642 | USCP Directive 2052.004, Probationary Periods | 05/28/12 | Offered as context to π's performance. | | |
| 51 | USCP000082 | Memorandum to π from Sergeant Campbell re state of the union | 1/20/15 | Offered to show π's performance. | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| 52 | USCP000088 | CP-550 to π from Sgt. Willis re Peace Officer memorial | 5/21/15 | Offered to show π's performanc e. | | |
| 53 | USCP000089 | CP-550 to π from Sgt. Campbell re Joint Meeting with Prime Minister of Japan | 4/29/15 | Offered to show π's performanc e. | | |
| 54 | USCP000108-110 | Notification of Personnel Action – termination of π | 12/29/1 5 | Offered to show decision-making as to π's termination. | | |
| 55 | USCP000111-112 | Memo to CBP from Chief Dine approving termination | 12/17/1 5 | Offered to show decision-making as to π's termination. | | |
| 56 | USCP000115 | Notice of termination to π from Jacqueline Whitaker | 12/22/1 5 | Offered to show decision-making as to π's termination. | | |
| 57 | USCP000151 | Memorandu m to Jacqueline Whitaker from Thomas Madigan re graduates from ROC 177 | 11/14/1 4 | Offered to show π's performanc e. | | |

| | | DEFENDANT'S EXHIBITS | | | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTION | RULIN G |
| 58 | USCP000146 | Bulletin from Chief Dine assigning π to CD-3 effective 12/16/14 | 12/16/1 4 | Offered as context to π's performanc e. | | |
| 59 | USCP000184 | Offer of Employment to π | 4/25/14 | Offered as context to π's performanc e. | | |
| 60 | USCP000292-359 | FTO documents | 11/14 – 12/14 | Offered to show π's performanc e. | | |
| 61 | USCP000643-645 | USCP Directive 2053.011 Anti-Discriminati on and Anti-Harassment Policy | 5/28/12 | Offered to show USCP policies against unlawful discriminati on. | | |
| 62 | | Declaration of Glenn Brogan with attached exhibits | 10/23/1 7 | Offered to show π's performanc e. | Objection: hearsay | |
| 63 | | Declaration of Thomas DiBiase | 10/26/1 7 | Offered to address purported comparator testimony. | Objection: hearsay | |
| 64 | | Declaration of Eric Waldow with attached exhibits | 10/26/1 7 | Offered to address knowledge of protected activity. | Objection: hearsay | |
| 65 | | Declaration of Kim Dine | 10/24/1 7 | Offered to show decision- | Objection: hearsay | |

| | | | | DEFENDANT'S EXHIBITS | | |
|---|---|---|---|---|---|---|
| N O. | BATES | TITLE | DATE | PROFFER | OBJECTI ON | RULIN G |
| | | with attached exhibits | | making as to π's termination. | | |
| 66 | | Video of "CVC Wall" post | Undate d | Offered to show decision-making as to π's discipline and termination. | Objection: not produced to Plaintiff during discovery. | |
| 67 | | Pictures of "CVC Wall" post | Undate d | Offered to show decision-making as to π's discipline and termination. | | |

## VIII.   STIPULATIONS

### A.  Undisputed Stipulations

1.      Certain provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2006) are incorporated with respect to agencies of Congress by the Congressional Accountability Act (CAA), 2 U.S.C. §§ 1301-1438 (2006).

2.      Sourgoutsis is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(D).

3.      USCP is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301 (9)(D).

4.      Ms. Chrisavgi Sourgoutsis is a female.

5.      The United States Capitol Police is a federal law enforcement agency.

6.      Ms. Sourgoutsis was appointed to the Capitol Police as a recruit officer effective May 12, 2014.

7.      Ms. Sourgoutsis was a member of Recruit Officer Class 177.

8.      Ms. Sourgoutsis graduated from the Capitol Police Training Academy program on November 14, 2014.

9.      Ms. Sourgoutsis was sworn in as a police officer and became a private with training as of November 14, 2014.

10.     Ms. Sourgoutsis completed the Field Training Officer training program in December 2014.

11.     Ms. Sourgoutsis was assigned to the Uniformed Services Bureau, Capitol Division, Shift 3 (CD-3) on December 16, 2014.

12.     Ms. Sourgoutsis's squad leader and first-line supervisor was Sergeant Maria Willis.

13.     Ms. Sourgoutsis was one of eighteen sworn employees from the Capitol Division interviewed as a witness in the Office of Professional Responsibility ("OPR") Case Number 15-093 investigation.

14.     Directive 2052.004 is the Capitol Police's probationary period policy.

15.     Pursuant to Directive 2052.004, the Capitol Police must "[e]stablish the employee's PECS performance plan and communicate EPP evaluations and how they relate to the employee's duties and responsibilities, both in writing and orally, within 30 days of appointment."

16.     Per USCP's policy concerning probationary periods, supervisors are to create a career development plan for each employee.

17.     Ms. Sourgoutsis appealed the recommendation to terminate her employment to then Chief of Police Kim Dine.

18.     Chief Dine denied the appeal and recommended termination of Sourgoutsis to the Capitol Police Board.

19.     Ms. Sourgoutsis's employment with the Capitol Police was terminated effective December 29, 2015.

**B.  Plaintiff's Proposed Stipulations (and Defendant's objections)**

20.     From 2011 through 2017, USCP had an average of 1747 employees. Of that amount, on average, 314 of those employees were female.  This amounts to an average of approximately 18% of women in USCP's workforce from 2011 through 2017.  (USCP's 8/8/17 IROG resp. at No. 17).

> Objection To Plaintiff's No. 21: Objection relevance.  The claims in this case
>
> concerns whether Plaintiff was subject to gender discrimination or to retaliation.
>
> In accordance with Rules 401 and 402 of the Federal Rules of Evidence, the

average number of female employees employed by the Capitol Police between
2011 through 2017 is not relevant as it neither has the tendency to make it more or
less probable that Plaintiff was discriminated against or retaliated against nor is of
consequence in determining the action.  It is further not relevant as it concerns
periods of time in which Plaintiff was not an employee of the Capitol Police.

21.     In the past five years, USCP administered the following policies on

discrimination, harassment, misconduct, and retaliation:

> USCP's USCP Directive 2053.011, Anti-Discrimination and Anti-
> Harassment (USCP643-653). This policy is made available to all
> employees on Defendant's intranet and is given to employees upon
> entering their recruit class.
>
> USCP's Sexual Harassment Biased Based Policing
> (USCPSOURGOUTSIS1435 -1483). This policy is provided as a
> training to all recruits.
>
> USCP's New Leadership Training (USCPSOURGOUTSIS 1484 -
> 1513). This was provided as part of a training to newly promoted
> Sergeants and Lieutenants in 2016 and 2017.   (USCP's 4/17/17
> IROG resp. at No. 4.).

> Objection To Plaintiff's No. 22: Objection relevance and misstates facts.  The

relevant policy applicable during Plaintiff's tenure is entitled USCP Directive

2053.011, Anti-Discrimination and Anti-Harassment.  Moreover, the claims

asserted in this case concerns whether Plaintiff was subject to gender

discrimination or to retaliation.  In accordance with Rules 401 and 402 of the

Federal Rules of Evidence the training entitled Sexual Harassment Biased Based

Policing is not relevant as it neither has the tendency to make a fact more or less

probable than it would be without this evidence nor is of consequence in

determining the action.  Likewise, the training entitled New Leadership Training

is also not relevant under Rules 401 and 402 of the Federal Rules of Evidence for the reasons stated above.  It also was not offered to employees during Plaintiff's tenure.  Further it is incorrect that the training was only given in 2016 and 2017.

22.     The documents listed in stipulated fact No. 22 above were the only policies USCP implemented to ensure the full and proper integration and equal treatment of female officers at USCP from 1974 through the present. These were also the only policies provided to officers in supervisor or management roles.  (USCP's 8/8/17 IROG Resp. at No. 17).

> Objection To Plaintiff's No. 23: Objection misstates the facts and mischaracterizes Capitol Police policies.  The Capitol Police has three policies that ensure the equal treatment of all officers: USCP Directive 2053.009, Equal Employment Opportunity and Diversity; USCP Directive 2053.011, Anti-Discrimination and Anti-Harassment; and USCP Directive 2053.013, Rules of Conduct.  Further, the Capitol Police issues annual notices from the Chief of Police concerning Equal Employment Opportunity.

23.     The documents listed in stipulated fact No. 22, as well as Directive 2053.00, Equal Employment Opportunity and Diversity Policy (USCPSOURGOUTSIS 1800-1801) and the Annual Affirmation of Equal Employment Opportunity and Diversity statement (USCPSOURGOUTSIS 1517-1519) are all the documents USCP maintains concerning equal employment opportunities, diversity, inclusion, discrimination, or harassment in effect or released during Chief Dine's or Chief Verderosa's administrations.  (USCP's 8/8/17 IROG resp. at Nos. 18, 19).

> Objection To Plaintiff's No. 24: Objection misstates the facts.  The Department has other documents concerning equal opportunity, diversity, inclusion,

discrimination, or harassment that were provided to employees during either

Chief Dine's or Chief Verderosa's administrations.

24.     On August 18, 2015, Ms. Sourgoutsis was summoned to the Investigations

Division and interviewed as a witness regarding allegations of sexual harassment made by other

female officers against her supervisor, Sgt. Vias. (Def. Answer at ¶ 68).

> Objection To Plaintiff's No. 25: Objection misstates facts.  Plaintiff's was
>
> interviewed by the Capitol Police's Office of Professional Responsibility on
>
> August 18, 2015 as a witness in an investigation into alleged violations of the
>
> USCP Directive 2053.013 Rules of Conduct, in which it was alleged in part that a
>
> Sergeant on CD-3 violated USCP Directive 2053.011 Anti-Discrimination and
>
> Anti-Harassment.

25.     The Office of Professional Responsibility received a complaint against Sgt.

Tyrone Vias in June 2015 alleging conduct in violation of Defendant's Rules of Conduct.

(2/9/17, Resp to RFA No. 3).

> Objection To Plaintiff's No. 26: Objection misstates facts.  The Capitol Police's
>
> Office of Professional Responsibility did not initiate an investigation against the
>
> CD-3 Sergeant in OPR Case No. 15-093 until August 2015.

26.     Ms. Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias referred to

her and to other women officers as "Chica" or "Senorita." (Def. Answer at ¶ 71).

> Objection To Plaintiff's No. 27: Objection relevance.  This action does not allege
>
> that Plaintiff was the subject of a hostile work environment.  The claims asserted
>
> in this case concern only whether Plaintiff was subject to gender discrimination or
>
> to retaliation when she was terminated.  In accordance with Rules 401 and 402 of

the Federal Rules of Evidence, the information that Plaintiff provided to the

Office of Professional Responsibility during their investigation in OPR Case No.

15-093 is not relevant as it neither has any tendency to make a fact more or less

probable than it would be without the evidence nor is it a fact of consequence in

determining the action.

27.     Ms. Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias has stood

with his hands near his belt and rolls his hips and pelvis out toward others. (Def. Answer at ¶

72).

> Objection To Plaintiff's No. 28: Objection relevance. This action does not allege
>
> that Plaintiff was the subject of a hostile work environment.  The claims asserted
>
> in this case concern only whether Plaintiff was subject to gender discrimination or
>
> to retaliation when she was terminated.  In accordance with Rules 401 and 402 of
>
> the Federal Rules of Evidence, the information that Plaintiff provided to the
>
> Office of Professional Responsibility during their investigation in OPR Case No.
>
> 15-093 is not relevant as it neither has any tendency to make a fact more or less
>
> probable than it would be without the evidence nor is it a fact of consequence in
>
> determining the action.

28.     Sourgoutsis alleged that Sgt. Vias made what she summarized as "inappropriate

comments" toward her." (2/9/17, Resp to RFA No. 6).

> Objection To Plaintiff's No. 29: Objection relevance.  This action does not allege
>
> that Plaintiff was the subject of a hostile work environment.  The claims asserted
>
> in this case concern only whether Plaintiff was subject to gender discrimination or
>
> to retaliation when she was terminated.  In accordance with Rules 401 and 402 of

the Federal Rules of Evidence, the information that Plaintiff provided to the

Office of Professional Responsibility during their investigation in OPR Case No.

15-093 is not relevant as it neither has any tendency to make a fact more or less

probable than it would be without the evidence nor is it a fact of consequence in

determining the action.

29.     Sourgoutsis reported to Sergeant Mark Shutter that Sergeant Vias made a

comment that she thought weird and inappropriate about her. (Def. Answer at ¶ 73).

Objection To Plaintiff's No. 30: Objection relevance.  This action does not allege

that Plaintiff was the subject of a hostile work environment.  The claims asserted

in this case concern only whether Plaintiff was subject to gender discrimination or

to retaliation when she was terminated.  In accordance with Rules 401 and 402 of

the Federal Rules of Evidence, the information that Plaintiff provided to the

Office of Professional Responsibility during their investigation in OPR Case No.

15-093 is not relevant as it neither has any tendency to make a fact more or less

probable than it would be without the evidence nor is it a fact of consequence in

determining the action.

30.     Sourgoutsis reported to Sergeant Mark Shutters that Sergeant Vias complimented

Plaintiff's Facebook profile picture. (Def. Answer at ¶ 74).

Objection To Plaintiff's No. 31: Objection relevance.  This action does not allege

that Plaintiff was the subject of a hostile work environment.  The claims asserted

in this case concern only whether Plaintiff was subject to gender discrimination or

to retaliation when she was terminated.  In accordance with Rules 401 and 402 of

the Federal Rules of Evidence, the information that Plaintiff provided to the

Office of Professional Responsibility during their investigation in OPR Case No. 15-093 is not relevant as it neither has any tendency to make a fact more or less probable than it would be without the evidence nor is it a fact of consequence in determining the action.

31.    Directive 2052.004, USCP's policy relating to probationary periods, contains specific requirements for the supervision and evaluation of new officers such as Sourgoutsis. (Def. Answer at ¶ 93).

Objection To Plaintiff's No. 32: Objection mischaracterizes USCP Directive 2052.004.

32.    USCP did not provide Sourgoutsis a thirty-day evaluation period following USCP's decision to terminate her. (2/9/17, Resp to RFA No. 13).

Objection To Plaintiff's No. 33: Objection mischaracterizes USCP Directive 2052.004.

33.    Chief Dine refused to meet with Sourgoutsis as requested in her appeal. (Def. Answer at ¶ 97).

Objection To Plaintiff's No. 34: Objection vague and ambiguous and relevance. The term "refused" and "appeal" as used here is vague and ambiguous. Additionally, the claims asserted in this case concern only whether Plaintiff was subject to gender discrimination or to retaliation when she was terminated.  In accordance with Rules 401 and 402 of the Federal Rules of Evidence, whether Chief Dine refused to meet with Plaintiff as request in her appeal is not relevant as it neither has any tendency to make a fact more or less probable than it would be without the evidence nor is it a fact of consequence in determining the action.

34.     Sourgoutsis was the only sworn or civilian employee that USCP recommended to

Capitol Police Board for termination during their probationary period. (6/5/17 Resp. to P's 2nd

RFAS, Request. No. 25).

> Objection To Plaintiff's No. 35: Objection misstates the facts. Plaintiff is not the
>
> only sworn or civilian employee that the Capitol Police has recommended to the
>
> Capitol Police Board for termination during their probationary period.

35.     USCP has not terminated any USCP sworn or civilian employee during their

probationary year during the period of Chief Dine's or Chief Verderosa's administration, which

includes December 2012 to present. (USCP's 6/5/17 IROG resp. at No. 14).

> Objection To Plaintiff's No. 36: Objection misstates the facts. The Capitol Police
>
> has terminated sworn and civilian employees during their probationary period
>
> during the period of Chief Dine's or Chief Verderosa's administration, which
>
> includes December 2012 to present.

36.     USCP permitted a civilian director of the Mission Assurance Bureau to resign

before it recommended his termination to the Capitol Police Board in 2015 after USCP learned

the director made improper remarks and engaged in conduct unbecoming as it relates to

comments the director made about the medical condition of an inspector in the director's chain-

of-command. The director and the inspector are male. (USCP's 6/5/17 IROG resp. at no. 14).

> Objection To Plaintiff's No. 37: Objection relevance.  The claims asserted in this
>
> case concern only whether Plaintiff was subject to gender discrimination or to
>
> retaliation when she was terminated.  In accordance with Rules 401 and 402 of
>
> the Federal Rules of Evidence, the details of a former civilian employee's
>
> resignation is not relevant as it neither has any tendency to make a fact more or

less probable than it would be without the evidence nor is it a fact of consequence in determining the action.

## IX.    DEPOSITION DESIGNATIONS

| PLAINTIFF'S DEPOSITION DESIGNATIONS | | |
|---|---|---|
| **WITNESS AND DESIGNATIONS** | **OBJECTIONS** | **DEFENDANT'S COUNTER DESIGNATIONS AND PLAINTIFF'S OBJECTIONS** |
| Thomas DiBiase<br>• 17:22 – 21:8<br>• 21:9 – 24:13<br>• 57:12 – 60:2<br>• 54:13 – 57:11<br>• 60:7 – 61:2<br>• 62:15 – 66:3<br>• 34:16 – 35:4<br>• 34:10 – 15<br>• 31:20 – 33:22<br>• 67:17 – 68:4<br>• 68:5 – 70:14<br>• 72:13 -74:15<br>• 77:13 – 79:14<br>• 79:18 – 84:5<br>• 84:6 – 86:11<br>• 86:12 – 17<br>• 50:9 – 51:7<br>• 37:2 – 38:19<br>• 38:20 – 41:18<br>• 49:9 – 50:1 | Defendant objects to the designations under FRE Rule 403 because the probative value of this evidence is far outweighed by its likelihood to mislead the jury, confuse the issues, needlessly present cumulative evidence, and/or waste time.  Defendant's 30(b)(6) witness is available to testify and has been subpoenaed by Plaintiff.  His live testimony will cover the topics of these designations and is more probative of the issues in this matter and may be tested under cross examination.<br>Additionally, Defendant reiterates objections it raised during the deposition to the following designations under FRE Rule 401 and 402:<br>• 68:5 – 70:14<br><br>Defendant further objects to the following designations under FRE Rule 401 and 402:<br>• 21:9 – 24:13<br>• 49:9 – 50:1<br>• 54:13 – 60:2<br>• 60:7 – 61:2<br>• 64:7 – 66:3<br><br>Defendant further objects to following designations under FRE Rule 403 and FRE Rule 802: | |

| PLAINTIFF'S DEPOSITION DESIGNATIONS | | |
|---|---|---|
| **WITNESS AND DESIGNATIONS** | **OBJECTIONS** | **DEFENDANT'S COUNTER DESIGNATIONS AND PLAINTIFF'S OBJECTIONS** |
| | • 38:20 – 41:18 | |
| Matthew Verderosa<br>• 15:21 – 18:5<br>• 23:3 – 19<br>• 18:6 – 19:1<br>• 19:2 – 21:5<br>• 21:6 – 23:2<br>• 23:20 – 27:14<br>• 31:18 – 37:6<br>• 37:11 – 40:6<br>• 164:1 – 16<br>• 47:9 – 51:18<br>• 44:5 – 14<br>• 51:19 – 54:3<br>• 54:16 – 56:19<br>• 56:20 – 58:4<br>• 58:5 – 17<br>• 58:22 – 59:5<br>• 59:6 – 21<br>• 60:20 – 61:14<br>• 61:22 – 62:12<br>• 62:13 – 63:6<br>• 63:20 – 64:15<br>• 65:10 – 21<br>• 65:22 – 68:18<br>• 68:19 – 70:7<br>• 70:8 – 73:2<br>• 73:16 – 74:10<br>• 75:13 – 20<br>• 79:12 – 81:13<br>• 81:14 – 84:20<br>• 85:7 – 92:12<br>• 92:13 – 95:15<br>• 96:17 – 97:14<br>• 97:15 – 102:8<br>• 102:9 – 107:10<br>• 46:18 – 47:8 | Defendant objects to the designations under FRE Rule 403 because the probative value of this evidence is far outweighed by its likelihood to mislead the jury, confuse the issues, needlessly present cumulative evidence, and/or waste time.  Chief Verderosa is available to testify and has been subpoenaed by Plaintiff. His live testimony will cover the topics of these designations and is more probative of the issues in this matter and may be tested under cross examination. Additionally, Defendant reiterates objections it raised during the deposition to the following designations under FRE Rules 401 and 402:<br>• 18:6 – 19:1<br>• 19:2 – 21:5<br>• 21:6 – 23:2<br><br>Defendant further objects to the following designations under FRE Rules 401 and 402:<br>• 155:13 – 158:1<br>• 164:1 – 16<br><br>Further, Defendant reiterates objections it raised during the deposition to the following designations as vague and ambiguous and/or calls for speculation: | • 40:7 – 41:18<br>• 95:16 – 96:4<br>• 99:21 – 101:18<br>• 107:6 – 109:19<br>• 133:6 – 21<br>• 141:20 – 142:10<br>• 149:19 – 151:1<br>• 159:2 – 162:15<br><br>Plaintiff objects to Defendant's following counter designations because they are not contiguous and do not relate to Plaintiff's Designations:<br>• 149:19-151:1<br>• 159:2-162:15 |

| PLAINTIFF'S DEPOSITION DESIGNATIONS | | |
|---|---|---|
| **WITNESS AND DESIGNATIONS** | **OBJECTIONS** | **DEFENDANT'S COUNTER DESIGNATIONS AND PLAINTIFF'S OBJECTIONS** |
| • 109:5 – 112:15<br>• 112:16 – 113:9<br>• 147:2 – 6<br>• 116:16 – 117:19<br>• 124:10 – 127:12<br>• 127:13 – 129:18<br>• 134:4 – 136:15<br>• 139:1 – 14<br>• 147:7 – 20<br>• 151:2 – 151:11<br>• 155:13 – 158:17<br>• 132:20 – 133:5 | • 24:20 – 25:3<br>• 33:9 – 35:8<br>• 53:2 – 53:11<br>• 68:4 – 15<br>• 80:1 – 8<br>• 87:18 – 88:4 | |
| Eric Waldow<br>• 12:11 – 13:17<br>• 16:15 – 22<br>• 17:1 – 9<br>• 18:21 – 20:5<br>• 17:10 – 18:20<br>• 36:6 – 12<br>• 120:17 – 20<br>• 14:18 – 16:14<br>• 20:6 – 23:13<br>• 23:14 – 25:19<br>• 25:20 – 27:22<br>• 28:1 – 33:13<br>• 33:14 – 36:2<br>• 42:17 – 21<br>• 52:1 – 21<br>• 56:4 – 57:1<br>• 102:1 – 22<br>• 111:10 – 115:5<br>• 206:14 – 210:2<br>• 216:3 – 18<br>• 221:12 – 18<br>• 210:6 – 216:6<br>• 132:7 – 143:6<br>• 146:16 – 154:6 | Defendant objects to the designations under FRE Rule 403 because the probative value of this evidence is far outweighed by its likelihood to mislead the jury, confuse the issues, needlessly present cumulative evidence, and/or waste time.  Deputy Chief Waldow is available to testify and has been subpoenaed by Plaintiff.  His live testimony will cover the topics of these designations and is more probative of the issues in this matter and may be tested under cross examination.  Defendant further objects to the following designations under FRE Rules 401 and 402:<br>• 177:17 – 179:13<br>• 209:2 - 19<br><br>Further, Defendant reiterates objections it raised during the deposition to the following | • 36:13 – 42:21<br>• 48:11 – 52:21<br>• 52:22 – 55:11<br>• 57:2 – 67:18<br>• 115:22 – 120:13<br>• 157:10 – 165:22<br>• 171:18 – 173:17<br>• 205:19 – 206:13<br>• 218:4 – 218:12<br>• 218:18 – 221:11<br>• 221:12 – 18<br>• 221:19 – 222:6<br><br>Plaintiff objects to Defendant's following counter designations because they are not contiguous and do not relate to Plaintiff's Designations:<br>• 48:11 – 52:21<br>• 52:22 – 55:11<br>• 157:10 – 165:22<br>• 218:4 – 218:12<br>• 221:19 – 222:6 |

| PLAINTIFF'S DEPOSITION DESIGNATIONS | | |
|---|---|---|
| **WITNESS AND DESIGNATIONS** | **OBJECTIONS** | **DEFENDANT'S COUNTER DESIGNATIONS AND PLAINTIFF'S OBJECTIONS** |
| <ul><li>173:12 – 183:22</li><li>221:1 – 11</li><li>185:1 – 189:4</li><li>189:5 -11</li><li>189:12 – 190:7</li><li>193:10 – 195:4</li><li>195:5 – 201:20</li><li>156:8 – 157:9</li><li>166:17 – 169:17</li><li>201:21 – 203:16</li><li>205:1 – 18</li><li>120:21 – 129:12</li><li>129:21 – 132:6</li><li>203:19 – 204:22</li></ul> | designations as vague and ambiguous and/or calls for speculation:<ul><li>19:3 – 12</li><li>22:16 -23:13</li><li>33:20 – 34:3</li><li>35:7 – 36:2</li><li>182:3 – 183:19</li><li>203:19 – 204:13</li></ul> | |

## X.   PROPOSED VERDICT FORM

### A.   <u>Plaintiff's Proposed Verdict Form</u>

### VERDICT FORM

We, the Jury, unanimously find by a preponderance of the evidence as follows:

1. Did the United States Capital Police ("USCP") fire Chrisavgi Sourgoutsis or otherwise treat her adversely because of discrimination based on gender?

      i.   Yes_____;

      ii.  No_____.

<u>OBJECTION.</u> The Capitol Police objects to question 1 because:

1. There is only one matter before the Court: whether Plaintiff was terminated for unsatisfactory performance.  Whether Plaintiff was treated adversely is not a matter before the Court and must be removed from the jury instruction.

2. The instruction fails to set forth the burden of proof – i.e., that Plaintiff must prove by the preponderance of the evidence that "but for" her gender, the Capitol Police would not have terminated her employment.  Alternatively, Plaintiff must prove by the preponderance of the evidence that the USCP was motivated by her sex when she was terminated.

3. The term "fire" lacks a definition and must be changed to "terminate."

IF YOU ANSWERED "NO" TO QUESTION 1, MOVE ON TO QUESTION 4, AND DO NOT CONSIDER QUESTIONS 2 AND 3. IF YOU ANSWERED "YES" TO QUESTION 1, PROCEED TO QUESTION 2.

2. Chrisavgi Sourgoutsis's gender was a [SELECT ONE]

      ___ determinative factor

      ___ motivating factor

in the USCP's decision to fire Chrisavgi Sourgoutsis or treat her adversely.

<u>OBJECTION.</u> The Capitol Police objects to question 2 because:

1. There is only one matter before the Court: whether Plaintiff was terminated for unsatisfactory performance.  Whether Plaintiff was treated adversely is not a matter before the Court and must be removed from the jury instruction.

2. The instruction fails to set forth the burden of proof – i.e., that Plaintiff must prove by the preponderance of the evidence that "but for" her gender, the Capitol Police would not have terminated her employment.  Alternatively, Plaintiff must prove by the preponderance of the evidence that the USCP was motivated by her sex when she was terminated.

3. The term "fire" lacks a definition and must be changed to "terminate."   The term "determinative factor" lacks a definition and must be changed to "but for."

IF YOU ANSWERED "DETERMINATIVE FACTOR" IN QUESTION 2, MOVE ON TO QUESTION 4, AND DO NOT CONSIDER QUESTION 3. IF YOU ANSWERED "MOTIVATING FACTOR" IN QUESTION 2, PROCEED TO QUESTION 3.

3. Although Chrisavgi Sourgoutsis's gender was a motivating factor in the USCP's decision to fire or treat her adversely, would the USCP have fired her or otherwise treated her adversely even if her gender had played no role in its decision?

   i.  Yes_____

   ii. No_____

OBJECTION. The Capitol Police objects to question 3 because:

1. There is only one matter before the Court: whether Plaintiff was terminated for unsatisfactory performance.  Whether Plaintiff was treated adversely is not a matter before the Court and must be removed from the jury instruction.

2. The instruction fails to set forth the burden of proof – i.e., that Plaintiff must prove by the preponderance of the evidence that "but for" her gender, the Capitol Police would not have terminated her employment.  Alternatively, Plaintiff must prove by the preponderance of the evidence that the USCP was motivated by her sex when she was terminated.

3. The term "fire" lacks a definition and must be changed to "terminate."

4.  Did the United States Capital Police ("USCP") fire Chrisavgi Sourgoutsis or otherwise treat her adversely in retaliation for participating in a sexual harassment investigation?

    i.  Yes_____

    ii.  No_____

OBJECTION. The Capitol Police objects to question 4 because:

1.  There is only one matter before the Court: whether Plaintiff was terminated for unsatisfactory performance.  Whether Plaintiff was treated adversely is not a matter before the Court and must be removed from the jury instruction.

2.  The instruction fails to set forth the burden of proof – i.e., that Plaintiff must prove by the preponderance of the evidence that "but for" her participation in an internal investigation, the Capitol Police would not have terminated her employment.

3.  The term "fire" lacks a definition and must be changed to "terminate."

IF YOU ANSWERED "NO" TO BOTH QUESTIONS 1 AND 4, SIGN AND DATE THIS VERDICT FORM AND DO NOT PROCEED TO THE NEXT SENTENCE. If you answered "determinative factor" in Question 2 or  answered "No" to Question 3, what is the amount of money damages that you award to Chrisavgi Sourgoutsis?

$ _____

OBJECTION.  The USCP objects to question number 4 because it does not specify the type of damages, if any, that Plaintiff is reasonably entitled to for any injury suffered as a result of the USCP's action(s).

_____

[Signature of Jury Foreperson]

_____

Date

### B. **Defendant's Proposed Verdict Form**

**[DEFENDANT'S PROPOSED] JURY VERDICT FORM (DISPARATE TREATMENT SINGLE MOTIVE/PRETEXT THEORY)**

1. Has Ms. Sourgoutsis, proven by a preponderance of the evidence, that the United States Capitol Police would not have terminated her but for her sex?  If "yes," go to question 2.  If "no," go to question 3.

    Yes _____          No _____

2. If you answered "yes" to question number 1, how much is the plaintiff entitled to in compensatory damages?

    $_____

3. Has Ms. Sourgoutsis, proven by a preponderance of the evidence that the United States Capitol Police would not have terminated her but for her participation as a witness in an internal investigation?  If "yes," go to Question 4. If "no," this form is complete.

    Yes _____          No _____

4. If you answered "yes" to question number 3, how much is the plaintiff entitled to in compensatory damages?

    $ _____


_____

[Signature of Jury Foreperson]

_____

 [Date]

**[DEFENDANT'S PROPOSED] JURY VERDICT FORM (DISPARATE TREATMENT MIXED MOTIVE THEORY)**

1. Has Ms. Sourgoutsis, proven by a preponderance of the evidence that her sex was a motivating factor in the United States Capitol Police decision to terminate her?  If "yes," go to question 2.  If "no," go to question 4.

Yes _____        No _____

2. If you answered "yes" to question number 1, has the United States Capitol Police demonstrated that it would have terminated her anyway if her sex had not been a motivating factor in the decision?  If "yes," go to question 4.  If "no" go to question 3.

Yes _____        No _____

3. If you answered "no" to question number 2, how much is Ms. Sourgoutsis entitled to in compensatory damages.

$_____

4. Has Ms. Sourgoutsis, proven by a preponderance of the evidence that the United States Capitol Police would not have terminated her but for her participation as a witness in an internal investigation?  If "yes," go to Question 5. If "no," this form is complete.

Yes _____        No _____

5. If you answered "yes" to question number 4, how much is Ms. Sourgoutsis entitled to in compensatory damages?

$ _____

_____
[Signature of Jury Foreperson]

_____
 [Date]

Date: September 13, 2019                    Respectfully submitted,

/s/Rafique O. Anderson
Kelly M. Scindian
Rafique O. Anderson
Office of the General Counsel
Employment Law Division
United States Capitol Police
119 D Street NE
Washington, DC 20510
Telephone: (202) 593-3619
Facsimile: (202) 593-4478
Kelly.Scindian@uscp.gov
Rafique.Anderson@uscp.gov

*Counsel for Defendant*

/s/Anita M. Chambers
R. Scott Oswald
Anita M. Chambers
The Employment Law Group, P.C.
888 17th Street, N.W., 9th floor
Washington, D.C. 20006
(202) 261-2821
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com

*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 13, 2019, a true and correct copy of the

foregoing was filed using the CM/ECF system and served upon the following counsel for

Defendant:


Kelly M. Scindian #985787
Rafique O. Anderson #493243
Office of Employment Counsel
United States Capitol Police
119 D Street NE
Washington, DC 20510
Telephone: (202) 593-3336
Facsimile: (202) 593-4478
Kelly.Scindian@uscp.gov
Rafique.Anderson@uscp.gov

*Counsel for Defendant United States Capitol Police*


*/s/ Anita M. Chambers*
Anita M. Chambers