UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISAVGI SOURGOUTSIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16-cv-1096 (KBJ) |
| UNITED STATES CAPITOL POLICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

On June 13, 2016, Plaintiff Chrisavgi Sourgoutsis initiated the instant legal action against the United States Capitol Police ("USCP"), alleging that USCP had discriminated and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, as incorporated by the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq*. (*See* Compl., ECF No. 1, ¶¶ 105–22.)  Sourgoutsis's claims ultimately proceeded to trial, where a jury made three relevant determinations: (1) that Sourgoutsis's sex was a motivating factor in USCP's decision to terminate her; (2) that USCP would have terminated her regardless of any discriminatory motive; and (3) that Sourgoutsis had failed to demonstrate that USCP had retaliated against her for cooperating in an internal investigation.  (*See* Verdict Form, ECF No. 138, at 1–2.)[1]  After the jury rendered its verdict, and also after the Clerk of Court entered judgment in USCP's favor, Sourgoutsis filed motions for an amended judgment and a permanent injunction (*see* Pl.'s Mot. to Amend Clerk's J., ECF No. 154; Pl.'s Mot. for Inj. Relief, ECF No. 142),

---

[1] Page number citations refer to the numbers automatically assigned by the Court's electronic case filing system.

both of which this Court denied (*see* Mem. Op. & Order Denying Pl.'s Mots. for Decl. J. & for Amendment of Clerk's J., ECF No. 164; Mem. Op. Denying Pl.'s Req. for Permanent Inj. Relief, ECF No. 173).

Before this Court at present is Sourgoutsis's motion for attorneys' fees and costs, which seeks a total award of $218,033.04. (*See* Pl.'s Renewed Pet. for an Award of Att'ys' Fees & Bill of Costs ("Pl.'s Mot. for Fees"), ECF No. 176, at 19; Pl.'s Reply in Supp. of Mot. for Fees, ECF No. 178, at 11.) In her motion, Sourgoutsis contends that she is entitled to this fee award under Title VII, because her lawsuit exposed USCP's discrimination and prompted the police department to adopt various measures aimed at preventing future discrimination and harassment. (*See* Pl.'s Mot. for Fees at 5–7.) USCP opposes Sourgoutsis's request for fees, arguing that "any success [Sourgoutsis] achieved in this litigation was minimal" and that her lawsuit neither advanced the relevant body of case law nor served a "larger public purpose." (Def.'s Opp'n to Pl.'s Mot. for Fees ("Def.'s Opp'n"), ECF No. 177, at 7.)

This Court has carefully reviewed the parties' submissions and the record evidence in this case, and for the reasons explained fully below, it has determined that Sourgoutsis's limited degree of success in this litigation does not justify an award of fees. Therefore, Sourgoutsis's motion for attorneys' fees and costs must be **DENIED**. A separate Order consistent with this Memorandum Opinion will follow.

I.   **BACKGROUND**

   A.   **Sourgoutsis's Employment With USCP**

Sourgoutsis worked at USCP from May of 2014 to December of 2015. (*See* Trial Tr. 1001:23–25, 1615:4–6.) When Sourgoutsis first joined the police force, she was required—like all newly appointed officers—to be on probation for an eighteen-month period, during which time she was to complete training programs and gain critical field experience while USCP evaluated her performance. (*See id.* at 124:15–125:1, 1002:10–13.) From the very beginning, Sourgoutsis's probationary period was marked with significant volatility. Indeed, while she passed the requisite training programs and earned positive performance reviews (*see id.* at 176:8–22, 643:2–5), she also incurred a number of disciplinary infractions for violating USCP's rules. For instance, during the first six months of her employment with USCP, Sourgoutsis received seven disciplinary rule violations for, among other things, failing to wear the required uniform, using her cell phone in a prohibited area, and cursing. (*See id.* at 148:15–21, 1063:15–1064:23.) USCP also cited Sourgoutsis later in the probationary period for failing to wear her police uniform shirt and badge, and for neglecting her assigned responsibilities by "lounging" on a retaining wall while on duty. (*Id.* at 292:3–9; *see also id.* at 149:13–150:6, 154:13–155:15, 728:13–20.)

At the same time that USCP was evaluating Sourgoutsis's performance as a probationary officer, USCP had also initiated an unrelated internal investigation into one of her supervisors, who had been accused of violating USCP's anti-harassment policy. (*See id.* at 868:8–13; *see also id.* at 658:21–25, 659:16–17.) USCP's Office of Professional Responsibility interviewed Sourgoutsis about her experience with the supervisor as part of its investigative process, and Sourgoutsis reported that the

3

supervisor had exhibited various inappropriate behaviors toward female employees. (*See id.* at 880:17–19, 882:6–9.)

A few months after Sourgoutsis's interview with the Office of Professional Responsibility—and shortly before the end of her probationary period—USCP notified Sourgoutsis of its intent to terminate her employment. (*See id.* at 670:9–13; *see also id.* at 421:3–5, 857:20–858:1.) In a letter that the Chief of Police issued regarding Sourgoutsis's proposed termination, the Chief explained that Sourgoutsis's "prior sustained disciplinary actions and documented history of unacceptable conduct and behavior demonstrate that she does not meet the standards for retention as a sworn employee of the USCP." (Mem. Regarding Termination Recommendation for Private with Training Chrisavgi Sourgoutsis, ECF No. 32-4, at 22.) The Capitol Police Board approved the Chief of Police's decision (*id.*), and Sourgoutsis was terminated on December 29, 2015 (Trial Tr. 1616:25–1617:2). Sourgoutsis then challenged her termination by filing requests for counseling and mediation with the United States Congress's Office of Compliance (*see* End of Mediation Notice, ECF No. 38, at 4); however, she was unable to resolve these disputes through the administrative process (*see id.*).

B.   **Sourgoutsis's Legal Action Against USCP**

Sourgoutsis initiated the instant legal action against USCP on June 13, 2016, asserting two claims under Title VII, as incorporated into the Congressional Accountability Act. (*See* Compl. ¶¶ 109–12, 120–22.) In her complaint, Sourgoutsis alleged that USCP had unlawfully discriminated against her on the basis of sex when it disciplined her for "minor infractions" and terminated her employment. (*Id.* ¶¶ 109–12.) Sourgoutsis further alleged that her termination amounted to unlawful retaliation

4

for participating in the internal investigation of her supervisor. (*Id.* ¶¶ 120–22.) As relief, Sourgoutsis sought (1) "[r]einstatement or, in lieu thereof, full front pay, stock options and benefits"; (2) "[e]conomic damages for lost compensation and damages to [her] career, reputation, and earning capacity"; (3) compensatory damages for "pain and suffering, emotional distress and reputational damage"; and (4) reasonable litigation costs, attorneys' fees, and experts' fees. (*Id.*, Prayer for Relief, ¶¶ a–d.)

Sourgoutsis's claims proceeded to trial, where both parties presented arguments and evidence to a jury. Over the course of the eight-day trial, Sourgoutsis provided examples of USCP's failure to apply its internal policies consistently (*see* Trial Tr. 1547:7–1550:4); highlighted the records of male officers who had committed similar misconduct during their probationary periods but allegedly did not experience the same repercussions (*see id.* at 1545:14–1546:21); and emphasized the short timespan between her participation in the internal investigation and USCP's decision to recommend her termination (*see id.* at 1552:15–1553:25). For its part, USCP elicited testimony from numerous officers regarding Sourgoutsis's disciplinary issues and her inability to conform her behavior to USCP's expectations and standards. (*See id.* at 1564:20–1565:3; *see also id.* at 160:19–21, 1420:3–24.) USCP also underscored the fact that none of the other witnesses who testified in the internal investigation were terminated. (*See id.* at 1113:10–13, 1590:9–21.)

On November 18, 2019, the jury rendered its verdict in the case. (Verdict Form at 2.) On a Special Verdict form that the Court provided, the jury specifically determined, as most relevant here, that: (1) Sourgoutsis's sex was a motivating factor in USCP's decision to fire her; (2) USCP had demonstrated by a preponderance of the

evidence that it would have terminated Sourgoutsis even if it had not taken her sex into consideration; and (3) Sourgoutsis had failed to prove that USCP had terminated her in retaliation for participating in the internal investigation.  (*Id*. at 1–2.)  After the jury rendered its verdict, the Clerk of Court entered judgment in USCP's favor.  (*See* J. on the Verdict, ECF No. 144, at 1.)[2]

Sourgoutsis subsequently moved for both an amended judgment and a permanent injunction against USCP.  (*See* Pl.'s Mot. to Amend Clerk's J. at 1; Pl.'s Mot. for Inj. Relief at 1.)  With respect to the request for an amended judgment, Sourgoutsis argued that the judgment had failed to reflect accurately the jury's finding that USCP had discriminated against her, and she asked the Court to alter the judgment to make clear that USCP had unlawfully considered her sex as a motivating factor in its termination decision.  (*See* Pl.'s Mot. to Amend Clerk's J. at 2, 5.)  With respect to the request for a permanent injunction, Sourgoutsis insisted that USCP was at serious risk of discriminating against female employees in the future, and she urged the Court to require USCP to take affirmative steps to end its discriminatory behavior.  (*See* Pl.'s Mem. in Supp. of Mot. for Inj. Relief, ECF No. 142-1, at 2–4.)  This Court denied both of Sourgoutsis's requests, finding that the judgment correctly stated the jury's verdict (*see* Mem. Op. & Order Denying Pl.'s Mots. for Decl. J. & for Amendment of Clerk's J. at 7), and that the evidence presented at trial did not support Sourgoutsis's assertions

---

[2] After the jury's verdict was recorded on the docket but before the Clerk entered judgment, Sourgoutsis filed a motion for a declaratory judgment, seeking a statement from the Court that she had proved that USCP impermissibly considered her sex as a motivating factor in violation of Title VII, as incorporated by the Congressional Accountability Act.  (*See* Pl.'s Mot. for Decl. J., ECF No. 143, at 1.)  The Clerk entered a judgment that expressly reflected the jury's finding as to Sourgoutsis's discrimination claim—*i.e.*, that her sex was a motivating factor in USCP's termination decision, but that USCP would have fired her anyway—shortly after Sourgoutsis filed her motion (*see* J. on the Verdict at 1); therefore, this Court denied Sourgoutsis's motion as moot (*see* Mem. Op. & Order Denying Pl.'s Mots. for Decl. J. & for Amendment of Clerk's J. at 4).

regarding the need for injunctive relief (*see* Mem. Op. Denying Pl.'s Req. for Permanent Inj. Relief at 6–11).

### C. The Instant Motion

On December 7, 2020, Sourgoutsis filed the motion for attorneys' fees and costs that is presently before the Court. (*See* Pl.'s Mot. for Fees at 19.)[3] In her motion, Sourgoutsis contends that a fee award is warranted, because her "act of securing legal representation and trying to hold her employer responsible for violations of [Title VII] is precisely the type of act" that Congress sought to promote by making attorneys' fees available in "same-action" cases—*i.e.*, cases where the plaintiff proves that her sex was an impermissible motivating factor in the employer's decision but the employer demonstrates that it would have taken the same action anyway. (*Id.* at 5; *see also id.* at 4–6.) In particular, Sourgoutsis notes that she was the "first USCP employee to litigate her case to a jury trial in federal district court in USCP's history" (*id.* at 5), and that she endured a "long, expensive, and emotionally trying" litigation process to prove (successfully) that USCP discriminated against her (*id.* at 6). Sourgoutsis further asserts that her lawsuit served a public purpose by "trigger[ing]" a number of "long overdue changes within USCP" (*id.* at 7), such as the implementation of mandatory trainings on USCP's anti-discrimination and anti-harassment policies (*id.* at 6), and USCP's selection of its first female assistant chief of police (*id.* at 7). In light of these developments, Sourgoutsis asks the Court for $218,033.04 in attorneys' fees and costs,

---

[3] The instant motion is not Sourgoutsis's first effort to recover fees and costs. She moved for attorneys' fees and costs previously, on January 23, 2020 (*see* Pl.'s Pet. for an Award of Reasonable Att'ys' Fees & Costs, ECF No. 170), but the Court concluded that Sourgoutsis's initial motion failed to brief her entitlement to attorneys' fees and costs adequately, and thus denied the motion without prejudice (*see* Order Denying Pl.'s Mot. for Fees Without Prejudice & Requiring Suppl. Briefing, ECF No. 175, at 3).

which she contends is eminently reasonable given the complex nature of the dispute and the substantial results that her lawyers obtained. (*See id.* at 12–19.)

USCP vigorously opposes Sourgoutsis's motion, arguing that a fee award is not warranted under the circumstances presented in this case. (*See* Def.'s Opp'n at 7.) In this regard, USCP points primarily to the fact that Sourgoutsis achieved none of the relief that she sought throughout the litigation. (*See id.* at 10–11.) For example, Sourgoutsis's complaint requested reinstatement, back pay, and compensatory damages, but the jury's same-action finding made her ineligible for these remedies under Title VII. *See* 42 U.S.C. § 2000e-5(g)(2)(B)(ii) (stating that courts "shall not award damages or issue an order requiring . . . reinstatement . . . or payment" in cases where the defendant proves that it would have taken the same action even if it had not impermissibly considered the plaintiff's sex). USCP also claims that Sourgoutsis's lawsuit was neither novel nor important, as she simply "relied on the extensive body of Title VII case law available in the D.C. Circuit" and did not "advance the body of case law under the Congressional Accountability Act or Title VII." (Def.'s Opp'n at 11.) And with respect to Sourgoutsis's argument that her lawsuit prompted significant changes to USCP's policies and practices, USCP insists that Sourgoutsis lacks any evidence or support for that assertion. (*See id.* at 14.)

The parties' contentions concerning Sourgoutsis's entitlement to a fee award under the circumstances presented here are ripe for this Court's review.

## II.   LEGAL STANDARDS

Under Title VII, when a plaintiff establishes that her sex was a motivating factor in the defendant's employment decision, but the defendant proves that it would have

8

taken the "same action in the absence of the impermissible motivating factor," 42 U.S.C. § 2000e-5(g)(2)(B)—a situation hereinafter referred to as a "same-action" case—"the court . . . may grant" an award of "attorney's fees and costs[,]" *id.* § 2000e-5(g)(2)(B)(i). The D.C. Circuit has yet to address the legal standards that govern motions for attorneys' fees and costs in this context, but every circuit to reach the issue has pegged attorneys' fees and costs under section 2000e-5(g)(2)(B)(i) to the plaintiff's overall success in the litigation. *See, e.g.*, *Garcia v. City of Houston*, 201 F.3d 672, 679 (5th Cir. 2000); *Norris v. Sysco Corp.*, 191 F.3d 1043, 1051 (9th Cir. 1999); *Akrabawi v. Carnes Co.*, 152 F.3d 688, 696 (7th Cir. 1998); *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1085 (10th Cir. 1998); *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1444 (11th Cir. 1997); *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1336 (4th Cir. 1996). Circuits diverge, however, in the method they use to assess fee motions under section 2000e-5(g)(2)(B)(i), as well as the factors to be considered when evaluating a plaintiff's success.

For instance, a plurality of circuits have adopted a multi-factor approach that differentiates same-action cases that warrant a fee award from those that do not. Under this approach, courts look to a common set of considerations that are often referred to as the "*Sheppard* factors" to determine whether (and to what extent) attorneys' fees and costs are justified in a given case. *See, e.g.*, *Sheppard*, 88 F.3d at 1336; *Norris*, 191 F.3d at 1051–52; *Akrabawi*, 152 F.3d at 696; *Canup*, 123 F.3d at 1444; *see also Garcia*, 201 F.3d at 679 (applying the approach outlined in *Sheppard* without formally adopting it). The *Sheppard* factors measure a plaintiff's overall degree of success in the litigation, and they include such considerations as the nature and extent of the relief

9

obtained by the plaintiff; the "public purposes served by resolving the dispute"; and whether the evidence presented in the case demonstrated that the defendant exhibited egregious and pervasive discrimination, or "illustrate[d] primarily" that the plaintiff engaged in "unacceptable conduct" that "justified" the defendant's adverse employment action.  *Sheppard*, 88 F.3d at 1336; *see also Garcia*, 201 F.3d at 678.  Moreover, ultimately, the *Sheppard* approach holds that the amount of fees awarded (if any) must be proportional to the plaintiff's success—meaning that, in same-action cases where the plaintiff achieves only minimal success, courts may "forego awarding fees" altogether.  *Akrabawi*, 152 F.3d at 696; *see also Sheppard*, 88 F.3d at 1336 (noting that "Congress was wary of enacting legislation whose benefit inures primarily to lawyers in the form of a substantial fee recovery, even if relief to the plaintiff is otherwise trivial and the lawsuit promotes few public goals").

The Tenth Circuit, by contrast, has opted for a different approach in same-action cases, employing a presumption in favor of a fee award.  *See Gudenkauf*, 158 F.3d at 1081.  According to the Tenth Circuit, attorneys' fees and costs should "ordinarily be awarded" in civil rights cases whenever a prevailing plaintiff's lawsuit serves an important public purpose, *id.* (internal quotation marks and citation omitted), and, in same-action cases, a plaintiff will almost always clear that hurdle because a jury's finding regarding the defendant's impermissible motive "vindicat[es] society's interest in a discrimination-free workplace[,]" *id.* at 1082.  Indeed, in the Tenth Circuit's view, a presumption in favor of fees is *especially* warranted in same-action cases, as a fee award is typically "the only form of redress available" to make plaintiffs whole under section 2000e-5(g)(2)(B)(i), given that the statute precludes such plaintiffs from

10

receiving damages or reinstatement.  *Id.*; *see also* 42 U.S.C. § 2000e-5(g)(2)(B)(ii) (prohibiting courts from awarding damages, back pay, or reinstatement in same-action cases).

That said, while the Tenth Circuit's approach virtually guarantees that same-action plaintiffs will receive at least some fee award, the amount of any such award must still be proportional to the plaintiff's degree of success on the merits.  *See id.* at 1084–85.  And although the Tenth Circuit has not provided a definitive list of factors to consider when measuring a plaintiff's success, it has made clear that courts should account for the fact that a same-action plaintiff failed to demonstrate that an impermissible motivating factor *caused* the adverse employment action, given that the employer necessarily will have proven its affirmative defense that it would have taken the same action regardless of the impermissible motive.  *See id.* (affirming the district court's reduction of a same-action plaintiff's requested fee award by fifty percent to reflect the fact that the employer proved its affirmative defense).  Nevertheless, the Tenth Circuit appears to reject any focus on the extent of the relief the plaintiff obtained, *see id.* at 1081–82, unlike the approach adopted by the plurality of circuits, *see Sheppard*, 88 F.3d at 1336.

In any event, whether a court applies the Tenth Circuit's approach or the plurality's approach, plaintiffs seeking a fee award under section 2000e-5(g)(2)(B)(i) must offer sufficient evidence to support their requested fees and costs, *see Norris*, 191 F.3d at 1052; *Gudenkauf*, 158 F.3d at 1082–83, and the court may award only those attorneys' fees and costs "demonstrated to be directly attributable . . . to the pursuit of

[the plaintiff's] claim" regarding the defendant's impermissible motive, 42 U.S.C. § 2000e-5(g)(2)(B)(i).

### III. DISCUSSION

To assess Sourgoutsis's entitlement to a fee award, this Court must determine, first, what legal standards should govern Sourgoutsis's request for attorneys' fees and costs, and second, what amount of fees, if any, are warranted under the circumstances presented in this case. For the reasons explained fully below, this Court will follow the plurality of circuits and apply the *Sheppard* factors to resolve these inquiries. And, applying those factors here—*i.e.*, examining, specifically, the extent of relief Sourgoutsis obtained, the public purposes served by her lawsuit, the nature of USCP's discrimination, and Sourgoutsis's role in her termination—the Court finds that no fee award is warranted.

> **A.    The Court Will Decline To Adopt The Tenth Circuit's Presumptive-Award Approach, Which Appears To Be Inconsistent With The Text And Function Of Section 2000e-5(g)(2)(B)'s Fee Award Provision**

Beginning with the threshold question of which standard to apply, Sourgoutsis—unsurprisingly—implores this Court to adopt the Tenth Circuit's method of analysis, contending that a presumption in favor of a fee award is more consistent with the remedial purpose of Title VII. (Pl.'s Mot. for Fees at 2–4.) In particular, Sourgoutsis emphasizes Congress's determination that "'[e]ven the smallest victory'" furthers the public's interest in eradicating unlawful discrimination from the workplace (*id.* at 4 (quoting H.R. Rep. No. 102-40, pt. 1, at 47 (1991))), and she further insists that fee awards in same-action cases are necessary to advance Congress's anti-discrimination goals (*id.*). This Court disagrees, for the reasons that follow.

12

As an initial matter, the text of section 2000e-5(g)(2)(B)(i) does not suggest that a fee award should be considered presumptive in same-action cases. Quite to the contrary, the statute provides that courts "may" award attorneys' fees and costs in same-action cases, 42 U.S.C. § 2000e-5(g)(2)(B)(i), and the provision thereby leaves courts with discretion to decide whether fees are appropriate on a case-by-case basis. Congress's clear intent to confer such broad discretion makes good sense in light of the substantial differences that exist from one same-action case to the next: as other courts have explained, "[s]ome [same-action] cases will evidence a widespread or intolerable animus on the part of a defendant[,]" while "others will illustrate primarily the plaintiff's unacceptable conduct which . . . will have justified the action taken by the defendant." *Canup*, 123 F.3d at 1444 (quoting *Sheppard*, 88 F.3d at 1336). In this Court's view, the multi-factor approach that the plurality of circuits have adopted fully accounts for these complexities by empowering courts to decline awarding fees when a plaintiff has achieved very minimal success in the litigation, while the Tenth Circuit's strict presumption in favor of fees obscures important variations insofar as it appears to require courts to issue some fee award in almost every same-action case.

The near-dispositive weight that the Tenth Circuit's approach places on the public purpose that a plaintiff's lawsuit serves also strikes a discordant note when the discretionary theme of section 2000e-5(g)(2)(B)(i) is considered. Again, the statute does not *mandate* an award of fees. Thus, it simply cannot be the case that a plaintiff's vindication of society's interest in eliminating discrimination is entirely sufficient to warrant fees, as the Tenth Circuit suggests, since, by definition, *every* plaintiff in a same-action case will have proven that the defendant engaged in unlawful

13

discrimination.  *See* 42 U.S.C. § 2000e-5(g)(2)(B).

Of course, this by no means suggests that a lawsuit's vindication of the public's interest against discrimination is unimportant or irrelevant.  Rather, courts have found that such vindication is only one indication of a plaintiff's success, *see, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, J., concurring), and, in this Court's view, a plaintiff's entitlement to fees should also be determined based on other pertinent factors, such as the nature and extent of relief that the plaintiff obtained in the context of the legal action, and the degree to which "a plaintiff succeeds in showing that an employer's discrimination, and not the employee's own misconduct, drove the employment decision[,]" *Sheppard*, 88 F.3d at 1339.  And while the Court acknowledges that plaintiffs in same-action cases will often obtain more limited relief than plaintiffs in other civil rights cases—given that section 2000e-5(g)(2)(B)(ii) prohibits plaintiffs from receiving damages, back pay, or reinstatement—the remedies (or lack thereof) that a plaintiff has obtained is still a relevant marker of success, and that is especially true considering that plaintiffs in same-action cases *are* eligible to receive nonmonetary relief in the form of declaratory judgments or injunctions.  *See* 42 U.S.C. § 2000e-5(g)(2)(B)(i); *see also Canup*, 123 F.3d at 1444 & n.5.[4]

In short, this Court agrees with the plurality of circuits, which appear to have concluded that section 2000e-5(g)(2)(B)(i) allows courts to consider all of the relevant

---

[4] In her motion, Sourgoutsis contends that the D.C. Circuit has expressed general antipathy toward "a firm rule on proportionality" when awarding attorneys' fees, as if to suggest that courts should put little to no weight on the extent of relief obtained.  (Pl.'s Mot. for Fees at 9 (first citing *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1129 (D.C. Cir. 2001); then citing *Robinson v. District of Columbia*, 341 F. Supp. 3d 97, 119–20 (D.D.C. 2018)).)  But the cases upon which Sourgoutsis relies stand solely for the proposition that an award of attorneys' fees may exceed an award of compensatory damages in appropriate circumstances, *see, e.g.*, *Thomas*, 273 F.3d at 1129; *Robinson*, 341 F. Supp. 3d at 119–20, and thus do not establish that the D.C. Circuit disfavors considering the relief sought and obtained by the plaintiff when deciding the amount (if any) of attorneys' fees and costs to award.

circumstances of a plaintiff's lawsuit. And because the approach adopted by the plurality of circuits is consistent with this Court's understanding of section 2000e-5(g)(2)(B)(i)—and the Tenth Circuit's presumption-based standard is not—the Court will apply the *Sheppard* factors to assess Sourgoutsis's motion for fees.

### B. The *Sheppard* Factors Weigh Against An Award Of Attorneys' Fees And Costs In This Case

#### 1. Sourgoutsis Did Not Obtain The Relief She Sought In The Litigation

In her complaint, Sourgoutsis requested back pay, compensatory damages, and reinstatement (*see* Compl., Prayer for Relief, ¶¶ a–c), but because the jury found that USCP would have fired her even in the absence of an impermissible motive, she was statutorily ineligible to receive those remedies, *see* 42 U.S.C. § 2000e-5(g)(2)(B)(ii). Thus, Sourgoutsis failed to achieve the relief she sought at the outset of this litigation.

It is also clear that Sourgoutsis failed to obtain the remedies she sought in her *post*-trial motions as well: for instance, the Court denied Sourgoutsis's motion to amend the judgment, given that the Clerk's judgment accurately reflected the jury's verdict (*see* Mem. Op. & Order Denying Pl.'s Mots. for Decl. J. & for Amendment of Clerk's J. at 5–7), and the Court also denied Sourgoutsis's motion for a permanent injunction, because Sourgoutsis had neither presented evidence of widespread discrimination at USCP, nor shown that there was a reasonable likelihood that USCP would discriminate against her in the future (*see* Mem. Op. Denying Pl.'s Req. for Permanent Inj. Relief at 6–11). Consequently, Sourgoutsis did not receive *any* form of relief.

#### 2. Sourgoutsis's Resolution Of The Dispute Served A Public Purpose, But Only To A Limited Extent

As for the "public purposes served by resolving the dispute[,]" *Sheppard*, 88

F.3d at 1336, the Court acknowledges that Sourgoutsis advanced the public's interest to some degree, by proving that USCP impermissibly considered her sex as a motivating factor in its termination decision, *see, e.g.*, *Stevens v. Gravette Med. Ctr. Hosp.*, 998 F. Supp. 1011, 1021 (W.D. Ark. 1998) (finding that plaintiff's proof of defendant's discrimination in a same-action case served a public purpose). However, the magnitude of this public benefit is far less pronounced than Sourgoutsis claims. For example, Sourgoutsis emphasizes in her motion that the Congressional Accountability Act is a new statute "with limited legal authority" (Pl.'s Mot. for Fees at 13), and that she was "the first USCP employee to litigate her case to a jury trial in federal district court in USCP's history" (*id.* at 5). Those assertions may very well be true, but they do not demonstrate, on their own, that Sourgoutsis's lawsuit advanced the body of law concerning discrimination claims under the Congressional Accountability Act, *see Marsal v. E. Carolina Univ.*, No. 4:09-cv-126-FL, 2012 WL 3283435, at *3 (E.D.N.C. Aug. 10, 2012), or that her lawsuit involved any "groundbreaking" legal claim or argument, *id.* at *5. Instead, as Sourgoutsis readily admits, her "claim of gender discrimination . . . [was] not novel" (Pl.'s Mot. for Fees at 13), and her legal arguments relied heavily on established Title VII case law (*see, e.g.*, Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 45, at 30–31). It is also worth noting that Sourgoutsis's legal claims involved allegations of isolated instances of discrimination against a single employee, not any institutionalized policy or practice that violated Title VII. (*See* Compl. ¶¶ 109–12.) Thus, even if Sourgoutsis happened to be the first USCP employee to present her claims to a jury, the jury's impermissible-motive finding was naturally limited to the specific instances of discrimination that Sourgoutsis alleged, and it did

not have any immediate effect on other employees at USCP or the organization as a whole. *See Canup*, 123 F.3d at 1444 n.5 (explaining that the "public purpose for [a] suit is greater" in cases where "a company-wide policy that violates Title VII contributed to a plaintiff's termination—yet, the jury still believed the termination would have occurred notwithstanding the discriminatory policy"); *Edwards v. Rosewood Care Ctr.*, No. 98-C-50373, 2002 WL 1972182, at *1 (N.D. Ill. Aug. 27, 2002) (similar).

In an effort to show that her litigation *did* have tangible effects on other USCP employees and/or the institution itself, Sourgoutsis maintains that her lawsuit prompted USCP to implement a number of "watershed changes" to address gender discrimination, such as requiring employees and supervisors to receive training on USCP's anti-discrimination and anti-harassment policies, and hiring a female assistant chief of police for the first time in the police department's history. (Pl.'s Reply in Supp. of Mot. for Fees at 3; *see also* Pl.'s Mot. for Fees at 6–7.) But these changes appear to have taken place before the jury reached its verdict in this case (*see* Pl.'s Mot. for Fees at 6–7 (stating that the changes were instituted between 2016 and September of 2019); Verdict Form at 2 (noting that the jury reached its verdict on November 18, 2019)), and Sourgoutsis has offered no evidence to support her assertion that the steps she took to begin "litigating her case administratively and in federal court" *caused* USCP to make these policy decisions. (Pl.'s Reply in Supp. of Mot. for Fees at 3; *see also* Pl.'s Mot. for Fees at 6–7.)

In any event, it is not clear to the Court whether an award of attorneys' fees and costs in same-action cases must be based upon a jury's verdict or judgment, as opposed

17

to merely the initiation or prosecution of a lawsuit.  *See Sheppard*, 88 F.3d at 1336 (asking "whether the public purposes served by *resolving* the dispute justifies the recovery of fees" (emphasis added)); *see also Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring) (focusing on the impact that a *judgment* may have on deterring misconduct when discussing the public purpose of a lawsuit).  Moreover, even if the initiation of a lawsuit suffices—and assuming further that the mere temporal proximity between the implementation of such changes and the initiation and prosecution of Sourgoutsis's lawsuit is enough to create a reasonable inference that the lawsuit triggered such reforms—Sourgoutsis's own filings in this case undermine her suggestion that USCP instituted positive or meaningful changes *in response to* her legal action.  Sourgoutsis urged the Court to order USCP to adopt mandatory diversity trainings in her post-trial motion for a permanent injunction, and she insisted that USCP's existing training programs were inadequate and ineffective.  (*See* Pl.'s Mem. in Supp. of Mot. for Inj. Relief at 3.)  This suggests that the lawsuit itself was not sufficient to provoke the changes that Sourgoutsis now maintains were effected in its wake.  What is more, Sourgoutsis casually dismissed USCP's "actions taken after being sued" as disingenuous efforts to eliminate discrimination in the workplace.  (Pl.'s Reply in Supp. of Mot. for Inj. Relief, ECF No. 148, at 3.)  How, then, can the Court conclude that Sourgoutsis's lawsuit alone induced "watershed changes" at USCP that helped prevent future discrimination?  (*See* Pl.'s Reply in Supp. of Mot. for Fees at 3.)

In sum, there is no record evidence that Sourgoutsis's legal action actually prompted any policy changes at USCP, and therefore, this Court finds that the public purpose that Sourgoutsis's lawsuit served was limited to the jury's finding that USCP

discriminated against her on the basis of sex.

### 3. There Was No Evidence Of Widespread Or Institutionalized Discrimination In This Case, And Sourgoutsis's Own Behavior Played A Role In Her Termination

Finally, the Court must consider whether the evidence presented at trial demonstrated "widespread or intolerable animus on the part" of USCP, and whether Sourgoutsis's own conduct "justified" USCP's decision to terminate her. *Sheppard*, 88 F.3d at 1336; *see also id.* at 1339 (explaining that courts should evaluate "the extent to which a plaintiff succeeds in showing that an employer's discrimination, and not the employee's own misconduct, drove the employment decision"). This evaluation need not detain the Court for long, because, as previously mentioned, Sourgoutsis's claims involved allegations of discrimination against a single individual, not any department-wide policy or practice of discrimination against female employees. *See supra* Part III.B.2. And while Sourgoutsis presented evidence at trial suggesting that USCP had applied its internal policies inconsistently in relation to her misbehavior, and that male officers who violated USCP's rules during their probationary periods were not necessarily terminated in like fashion, the evidence she presented did not indicate extensive, systematic, or egregious discrimination on the part of USCP. (*See* Trial Tr. 1545:14–1550:4; *see also* Mem. Op. Denying Pl.'s Req. for Permanent Inj. Relief at 10–11.)

On the other hand, what the evidence *did* show is that Sourgoutsis incurred an excessive number of disciplinary infractions during her probationary period. (*See* Trial Tr. 148:14–150:6.) Indeed, multiple witnesses testified to Sourgoutsis's repeated failure to follow USCP's rules, and they surmised that these infractions not only demonstrated poor performance on the job but also put the safety of others in jeopardy. (*See id.* at 163:7–20, 759:19–24, 1420:3–24.) Consequently, although Sourgoutsis's actions were not the *sole*

19

reason she was fired—and USCP's impermissible consideration of her sex evidently played a role in her termination—she was by no means an "'innocent'" employee who was terminated through no fault of her own. *See Canup*, 123 F.3d at 1444; *see also Akrabawi*, 152 F.3d at 696 (affirming a district court's denial of a fee award where the employee's own actions substantially contributed to the employment decision and where there was no evidence of widespread or pervasive discrimination).

## IV.  CONCLUSION

For the reasons explained above, Sourgoutsis's degree of success in this litigation was extremely minimal insofar as she obtained none of the relief she sought, and her lawsuit served a limited public purpose. There was also no evidence of extensive or blatant discrimination by USCP, and Sourgoutsis's own actions played a prominent role in USCP's decision to terminate her employment. Thus, after applying the legal standard that a plurality of circuit courts have adopted to evaluate fee motions in similar circumstances, this Court concludes that a fee award is not warranted under 42 U.S.C. § 2000e-5(g)(2)(B)(i), and it therefore declines to exercise its discretion to award Sourgoutsis attorneys' fees and costs.[5]

Accordingly, as set forth in the accompanying Order, Sourgoutsis's Motion for Attorneys' Fees and Costs (ECF No. 176) will be **DENIED**.

DATE:  July 20, 2021

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States Circuit Judge
*Sitting by Designation*

---

[5] The Court also rejects Sourgoutsis's suggestion that the Court may award costs pursuant to D.C. Appellate Rule 39(a)(4). (*See* Pl.'s Mot. for Fees at 18.) That rule is entirely inapplicable in this case, as it governs disputes in the D.C. Court of Appeals, *not* federal district courts. *See* D.C. Ct. App. R. 1(a)(1).